RECEIVED
SDNY DOCKET UNIT

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK 2018 AUG -1 PM 3:27

------------------------------------------------X

SANTIAGO GOMEZ,

Plaintiff,

v.

WESTCHESTER COUNTY; WESTCHESTER COUNTY DEP-
ARTMENT OF CORRECTIONS EX-COMMISSIONER KEVIN
M. CHEVERKO; WESTCHESTER COUNTY DEPARTMENT
OF CORRECTIONS COMMISSIONER JOSEPH K. SPANO;
ARAMARK CORRECTIONAL SERVICES, LLC; ASSISTANT
WARDEN FRANCIS DELGROSSO; ASSISTANT WARDEN
MIDDLETON; GRIEVANCE COORDINATOR/ WESTCHEST-
ER COUNTY D.O.C. DISCIPLINARY HEARING OFF-
ICER CAPTAIN ROBERTS; ARAMARK CORRECTIONAL
SERVICES FOOD DIRECTOR MANUEL MENDOZA;
CHARLES BUTLER ARAMARK FOOD LINE SUPERVISOR;
COFFEY KOHLI ARAMARK FOOD LINE SUPERVISOR;
PENNY STEWART ARAMARK FOOD LINE SUPERVISOR;
DARNELL FLAX ARAMARK FOOD SERVICE MANAGER;
CRAIG BOISSY ARAMARK FOOD LINE SUPERVISOR;
DONNA BLACKMAN ARAMARK DIRECTOR; SERGEANT
MATTHEW KITT; SERGEANT ASHTERMAN; CORRECT-
TIONAL OFFICER CASTRO; CORRECTIONAL OFFICER
MACDONALD; LAW LIBRARIAN KESEMETHIA HEWITT;
ASSISTANT WARDEN LA FONDA SPAULDING; acting
DEPUTY COMMISSIONER LEANDRO DIAZ; AND
CORRECTIONAL OFFICER PARCHMENT,

                              Defendants.

------------------------------------------------X

VERIFIED AMENDED

COMPLAINT


18 Cv. 244 (NSR)


JURY TRIAL

DEMANDED

Plaintiff pro se states as follows:

## PRELIMINARY STATEMENT

1. This is a federal civil rights and combined state law
action being brought pursuant to 42 U.S.C. §§ 1983, 1981 arising
out of defendants violation of plaintiffs rights as secured by
the Civil Rights Act of 1871, 42 U.SC. § 1983, and the First,
Eighth, and Fourteenth Amendments to the United States of Americas'

Constitution.  The above defendant's did while acting in
concert with each other, and aiding and abetting with one
another did knowingly, and deliberately cause and/or allow for
Plaintiff to be offered rotted, stale, under cooked, molded,
cold, substandard foods for an extendended duration causing
Plaintiff to suffer from a constellation of physical ailments.
Plaintiff further asserts, that defendant's minimized food
rations, and collaterally deprived Plaintiff of essential
nutrients, further contributing to the injuries cited infra.

Moreover, Plaintiff avers that defendant's retaliated
against Plaintiff through the filing of false Disciplinary
reports, and offered him unconstitutional prison conditions
all in violation of the First, Eighth, and Fourteenth Amend-
ments to the U.S. Const.

In addition, Plaintiff avers that defendant's "collectively"
interferred with his religous beliefs in violation of the Religi-
ous Land Use and Institutionalized Act of 2000 ("RLUIPA"), and
the Freedom Restoration Act ("RFRA"), 42 U.S.C. Sec. 2000 cc-1
(2006); 42 U.S.C. Sec. 200 bb-1 (2006); the First, Eighth, and
Fourteenth Amendments to the U.S. Const.

Furthermore, Plaintiff hereby asserts Monell claims
against Westchester County based on the theory of failure
to train and Supervise Aramark inmate and civilian kitchen
workers. Further, Westchester County has been on notice of

the complaints (food related) herein, and the widespread practice of serving inmates of the Westchester County Jail ("WCJ") substandard foods while consciously aware, that the foregoing deprivations and/or violations were causing massive numbers of inmates at WCJ to become ill/ The constitutional short comings of WCJ continue to cause inmates to fall ill and suffer from various maladies. The conduct described herein has been in existence for the last 15 years, and has been alerted to WCJ officials through present and previous litigation, grievances, reports and daily meetings between defendants where grievances, and concerns are discussed.

## PARTIES TO THE ACTION

2. Plaintiff Santiago Gomez, was at all times relevant a pretrial detainee confined to WCJ, and a citizen of the United states of America.


3. Westchester County, is and was at all times relevant herein a municipal entity created and authorized under the laws of the State of New York. It is authorized by law to maintain a Department of Correction for which it is ultimately responsible. Defendant Westchester County, was further responsible for the policy, customs, and usages within the WCJ.


4. Defendant Kevin M. Cheverko, was at all times relevant the Commissioner of the WCJ. He was responsible for supervising subordinates, and protecting the constitutional rights of prisoners of WCJ. Moreover, he was responsible for supervising

contractors i.e. Aramark to ensure constitutional compliance while performing a governmental function.

5. Defendant Aramark Correctional Services, LLC, was at all times relevant a private company acting through contract with defendant Westchester County, to prepare inmate meals, and sell commissary at the Westchester County Jail, thus performing a governmental function.

6. Defendant Joseph K. Spano, was at all times relevant the commissioner of the WCJ predecessor to Kevin M. Cheverko. Defendant Spano is responsible for supervising subordinates at WCJ, and protecting the rights of prisoners at WCJ. More-over, he is responsible for supervising contractors at WCJ to monitor for constitutional compliance.

7. Defendant Karl Vollmer, was at all times relevant an Assistant Warden at the WCJ responsible for the customs, usages, and Policies within the WCJ. Moreover, he was res-ponsible for investigating grievances, and for the conduct of contractors within the WCJ.

8. Defendant Francis Delgrosso, was at all times relevant an assistant warden at the WCJ responsible for supervising subordinates i.e. Aramark kitchen staff, and inmate workers. In addition, he is responsible for implementing, and creating policies within WCJ kitchen .

9. Defendant Captain Roberts, was at all times relevant the grievance coordinator and the sole Disciplinary Hearing officer at WCJ. He is responsible for grievance filings, investigations, and appeal documentation preparation.

10. Defendant Roberts also conducts personal investigations of grievances.

11. Defendant Food Service Director Manuel Mendoza, was at all times relevant an employee of Aramark Correctional Services, LLC assigned to Westchester County Jail as the Food Service Director ("FSD") responsible for overseeing Kitchen workers at WCJ, to ensure food safety, proper food temp., fresh foods, ensure that extermination occurred, and that adequate foods with sufficient nutritional value were served at WCJ on mold free meal trays.

12. Defendant Charles Butler, was at all times relevant an employee of Aramark Correctional Services, LLC assigned to the WCJ as a food line Supervisor who was responsible for the supervision of inmates who prepared inmate meals prior to the meal trays long journey to distribution.

13. Defendant Coffey Kohli, was at all times relevant an employee of Aramark Correctional Services, LLC assigned to the WCJ as a food line supervisor who was responsible for the supervision of inmates who prepared inmate meals prior to the meal trays long journey to distribution.

14. Defendant Penny Stewart, was at all times relevant an employee of Aramark Correctional Services, LLC assigned to the WCJ as a food line supervisor who was responsible for the supervision of inmates who prepared inmate meals prior to the meal trays long journey to distribution.

15. Defendant Craig Boissy, was at all times relevant an employee of Aramark Correctional services, LLC assigned to the WCJ as a food line supervisor who was responsible for the supervision of inmates who prepared inmate meals prior to the meal trays long journey to distribution.

16. Defendant Darnell Flax, was at all times relevant an employee of Aramark Corectional Services, LLC assigned to the WCJ as a food line Supervisor who was responsible for the over all operation of the kitchen i.e. food storage, food preparation, cleansiness, disposing of old meal trays, disposing of old foods, supervising subordinates, and ensuring that insects did not invade inmate meals prior to distribution.

17. Defendant Matthew Kitt, was at all times relevant

a correctional Sergeant assigned to the Westchester County
Jail who was assigned to the visit room, and its search area.
Moreover, he is a supervisor responsible for accepting and
investigating inmate grievances.

18. Defendant Donna Blackman, was at all times relevant an
Aramark Correctional Services, LLC employee holding the title
of Director, who is responsible for the hiring and training of
Aramark employee's at WCJ.

19. Defendant Law Librarian K. Hewitt, was at all times
relevant the Law Librarian at the WCJ responsible for providing
indigent inmates with typing and/or writing paper to draft legal
pleadings, pens, pencils, photo copies, notary services, and
envelopes to mail out oversized legal documents challenging
prison condition.

20. Defendant Sergeant Ashterman, was at all times relevant
a Correctional Sergeant assigned to the WCJ responsible for the
WCJ mail room.

21. Defendant Correctional Officer Macdonald, was at
all times relevant a Correctional officer assigned to the WCJ.

22. Defendant Correctional Officer Castro, was at all times
relevant a correctional officer at WCJ assigned to the male
visit search area.

23 . Defendant Parchment, was at all times relevant a correctional Officer assigned to the WCJ, and further stationed at the WCJ Law Library.

24 . Defendant Assistant Warden La Fonda Spaulding, was at all times relevant an assistant warden assigned to the WCJ responsible for investigating inmate grievance appeals, creating policy.

25 . Defendant Leandro Diaz, was at all times relevant the acting Deputy Commissioner of the WCJ responsible for the customs, usages, policies within the WCJ. He is also responsible for the entire WCJ, supervising contractors, and correctional staff to ensure constitutional compliance.

26 . All defendants were acting **under color of law.**

28. . All defendants are being sued in their individual and official capacities.

## JURISDICTION AND VENUE

29. This Court has federal Jurisdiction over Plaintiff's claims pursuant to 42 U.S.C. Sec.'s 1983; 28 U.S.C. Sec.'s 1331, 1343, 1367; and Section 504 of the Americans with Disabilities Act ("ADA"); 42 U.S.C. Sec. 12132, 42 U.S.C. Sec. 2000 cc-1 (2006); 42 U.S.C. Sec. 2000 bb-1 (2006); and Plain-

tiff's claims arising out of defendants violations of the
First, Eighth, and Fourteenth Amendments to the U.S. Const.

30. Plaintiff has filed Notices of claim against
Westchester County Pursuant to General Municipal Law 50-e,
30 days have elapsed since the filing and the underlying claims
have yet to be disposed of or otherwise settled.

31. The Venue is proper in the Southern District of
New York Pursuant to 28 U.S.C. Sec. 1391 (b) and (c) in that
the events giving rise to this claim occurred within this
district.

## BACKGROUND OF WCJ

The WCJ is a County Correctional Center located in the town
of Valhalla, New York. WCJ is used to house: pre-trial detainee's
under federal or state custody inter alia. The County of West-
chester has delegated their responsibility to provide inmates
of WCJ with three daily meals, and offer when applicable
religious diets to a private company "Aramark Correctional
Services, LLC" ("hereinafter Aramark") Defendant's Westchester
County, Kevin M. Cheverko, Donna Blackman, and Leandro Diaz
have previously been the subjects of multiple civil rights
actions that included depositions with respect to Aramark
offering inmates of WCJ substandard meals, and their over all
deliberate indifference, and their failure to properly supervise

subordinate(s) especially Aramark kitchen workers at WCJ.

Westchester County Jail has received over 100 inmate grie-
vances with respect to substandard foods being offered to in-
mates i.e. under-cooked meats, rotted salads, old foods being
served, human hair within foods, insects within foods, and
water-mold scattered through the meal trays. In addtion,
some of the aforesaid grievances allege that Aramark has and
continues to interfere with certain inmates religious beliefs
by way of offering foods that do not conform to their reli-
gions and/or defendant's are substituting foods that initially
conformed to the inmates religious beliefs, but were sub-
standard with food that contradict their religious beliefs.

The constitutional shortcomings of WCJ have caused a
constellation (steadly increasing) of its inmates to become ill
and seek medical treatment.

Plaintiff requests that the honorablé court take
judicial notice of the following case(s) /common law: Ackridge V. West.
Pagan et al., V. Westchester County, et al. S.D.N.Y. 2012
12-Cv. 7669(PAE)(SN); Henry Perez, et al., V. Westchester S.D.N.Y
County; Barnett Vs. Westchester County, 2018 S.D.N.Y.;
Mateo Vs. Westchester County, 2018 S.D.N.Y. 2018;  Rutherford
Vs. Westchester County, S.D.N.Y. 2018; Quick V. Westchester
County, 2018 S.D.N.Y.; Bethune V. Westchester County, S.D.N.Y.
2018; McCray V. Westchester County, S.D.N.Y. 2018; Ross V.
Westchester County et al., S.D.N.Y. 2018; Carla Scott V. West.
Co. and countless

other actions have been filed in this very courthouse
relating to the substandard foods that Aramark is knowingly
distributing to WCJ inmates including Plaintiff.

Nevertheless, defendant's inter alia grossly supervise
subordinates collaterally causing WCJ to be harmed.

Plaintiff request that the Court note that he judicial not-
ice, that Plaintiff was also a Plaintiff in Pagan et al., V.
Westchester County, et al., 12-Cv.7669 (PAE)(SN); however, those
claims are similar to the allegations in the instant matter,
but the claims in Pagan were settled and arise out of different
facts, dates, and times.

In addition, to the aforementioned deprivations WCJ has
several policies that violate its inmates civil rights to wit:
indigent inmates are forced to pay for writing or typing paper
to perfect legal work challenging prison conditions; WCJ refuses
to mail out legal mail to the U.S. District Court unless defen-
dant Hewitt reads through it and verifies that its a 42 U.S.C.
Sec. 1983.

Accordingly, WCJ will only pay for legal mail addressed to
the U.S. District Court-by a pro se inmate, that challenges
prison conditions despite the fact that actions can be filed
in State court challenging prison conditions.

Moreover, indigent inmates are only allowed to make 12

photocopies a week.

WCJ further, offers its inmates unconstitutional prison
conditions in several respects i.e. cells have poor ventilation
and/or no ventilation, cells have several leaks (from the rain),
flooring is cracked, chipped, and missing portions in cells, and
general walk ways, showers do not have adequate lighting, and
the WCJ is not in compliance with the ADA as they are not equipp-
ed with reasonable accomodations to search handicap prisoners
after visits and/or during court trips-intake process i.e.
rails, and benches.

## FACTS SPECIFIC TO MR GOMEZ-PLAINTIFF

32. Plaintiff Gomez avers that he initially arrived at the
WCJ in or around October 25th, 2017 as a pre-trial detainee.
Upon his admission to WCJ he was immediately informed by fellow
inmates that the foods being offered by Aramark, and Aramark
kitchen defendant's were still substandard despite previous
litigation alerting defendant's to said deprivation(s). Spec-
ifically, inmates alleged that the foods were under cooked,
rotted, stale, the meal trays contained mold from within as
a result of dishwater entering the meal tray through cracks
during the cursory cleaning phase and subsequently beings to rot.

33. After learning this Plaintiff misrepresented his
religious affiliation to WCJ and claimed to be "Jewish"
despite the fact, that he was actually Catholic, and has

been since birth. Plaintiff made this misrepresentation to correctional authorities because he recalled from previous confinements at WCJ that Jewish inmates received their meals fresh, and in adequate amounts. The Jewish meals generally consisted of T.V. dinner style halal dinners, that were factory sealed and microwavable.

34. However, Plaintiff did not immediately submit a WCJ "Change of Diet form" he waited until he personally witnessed, and experienced the aforesaid misconduct.

35. Plaintiff was subsequently, assigned to the New Jail section of WCJ, specifically the 3NW housing unit. Whereas, Plaintiff took instant notice that the meal trays still maintained a foul rotten odor upon arrival, and the food was extremely cold.[1]

---

1. Meals are prepared in the New Jail section of WCJ - basement then stacked, loaded onto a transport cart, and lodged until all the carts are ready for transport. The carts are transported under-ground through insect and vermin infested tunnels. The Meals are then brought to specific floors via the elevator, and lodged again within the center of the floor, where officers count the meal trays upon arrival (if they're not busy when they arrive), then they ensure that religious diets, and medical diets arrived for specific inmates. The officer then calls each housing unit for a count. Then the inmate worker arrives, and removes a specific amount of meal trays, and return to his assigned housing unit. Then the housing unit officer recounts the meal trays, and awaits his inmate worker to distribute the meal trays which are obviously cold.

36. Plaintiff avers that the meal trays were also peeling plastic which always collided and mixed with the food.

37. In or around October 26, 2017 Plaintiff while devouring his dinner meal made a disgusting discovery his meatballs were internally pink, and under-cooked. Plaintiff presented this discovery to the correctional officer on post who witnessed the under-cooked meat and duly logged such in the 3NW housing unit complaint book.

38. Plaintiff subsequently requested urgent medical treatment through sick call because he started to vomit, and was suffering from severe stomach cramps, diarrhea, and severe nausea. Medical authorities prescribed Plaintiff with medications as described more fully _infra_.

39. Plaintiff avers that his meals continued to arrive as described _supra_ until he received his first religious Kosher meal.

40. In or around October 30, 2017 Plaintiff's request for a religious meal was approved, however he did not receive his Kosher meal for approximately 1 month.

41. In or around October 29, 2017 Plaintiff discovered human hair within his meal (long strains).

42. In or around November 14, 2017 Plaintiff was served under-cooked meat balls that were obviously pink within.

43. Plaintiff avers that fellow inmate Angel Arocho, informed him that he was a kitchen worker in or around August 2017, and he personally observed and/or directly part-icipated in the following improper conduct: Defendant's Butler, Stewart, Kohli, Flax, Boissy, Blackman, and Mendoza allow inmate kitchen workers to scream amongst themselves, and across the food preparation table to each other while preparing inmate meals. They (above defendants) fail to enforce proper food temp., fail to ensure that inmate workers are wear-ing protective- equipment i.e. hair nets, gloves, beard mask etc., they further fail to ensure that inmate are properly cleaning the meal trays and/or allow for inmate meals to be served on dirty meal trays. In addition, they allow for juice containers (used to serve inmate juice) to remain out in open areas where vermin-Rats seem to always find their way into, and leave behind their fecal matter which is usually rinsed out, but not properly disinfected and then used to serve inmate(s) juice.

44. Plaintiff avers, that this affects the entire WCJ population and/or those inmates who consume(d) WCJ juice.

45. Plaintiff Gomez states that he was subsequently

transferred to A-Block housing unit within WCJ Pen.-Side. There, Plaintiff began to receive his Religious diet meal "Kosher" however, unknown to Plaintiff prior to requesting a religious diet WCJ and Aramark felt that a vast majority of Jewish inmates at WCJ were not actually Jewish, and in effort to combat the increasingly growing Jewish population defendant's reduced Kosher meals drastically, by way of minimizing meal portions, eliminating one of the two T.V. meals (lunch meal), eliminated boiled eggs, butter, sardines, quaker oatmeal, onions, clery without a substitute, and began serving re-petitive meals:

**Breakfast**: two handfuls of corn cereal, three (3) slices of bread wrapped in Plastic (and usually arrived stale), 1 pea-nut butter packet, 1 jelly packet, a fruit (the fruit is usually mushy, rotted, molded). **Note**: the peanut butter, and jelly packets resemble ketchup packets, and one lipton tea bag. A picture of the Jelly, and peanut butter packets are annexed hereto.

**Lunch:** Gefilte fish (small pieces "two or three") in a tray, handful of lettuce (Most of the time it's not even a handful, and it typically arrives soggy, and browned). **Note:** Plaintiff is allergic to fish, so Aramark defendant's simply provide him with Peanut Butter, and Jelly again. (Accordingly, Plaintiff's meal(s) lunch and breakfast (Main meals) are peanut butter and Jelly).

On information and belief, serving the aforementioned meals to Plaintiff were approved and authorized by defendant Middleton.

**Dinner:** T.V. dinner called "My Own Meal" that is Kosher, three slices of bread, a handful of salad, a fruit, and a juice packet.

46. Plaintiff Gomez avers that a vast majority of the time his bread arrives stale and/or molded.[2]

47. As a result of being served/offered molded stale bread Plaintiff was collaterally forced to eat his peanut butter and Jelly by sucking it out of the packets (because he had no bread to put it on).

48. Moreover, Plaintiff avers that his meals were always missing items.

49. On numerous occasions Correctional Officers have

---

2. The bread becomes molded when it's pre-wrapped in plastic and stored within the refridgerator; whereas, water and/or frost causes mold.

personally observed the misconduct described <u>supra</u>, i.e.
Plaintiff's meals to be: under-cooked, breads to be molded and/or
stale, salads to be rotten, browned, and soggy. Meal trays to
contain mold. Correctional Staff has made note of these observations
in the <u>3NW</u> housing unit complaint and log book on October 26,
2017, October 27, 2017, October 28, 2017; A-Block Pen. Side:
November 5, 2017, November 6, 2017, November 9, 2017; 4SW-
RSVP Housing Unit New Jail November 13, 2017, November 14, 2017,
November 16, 2017, November 19, 2017 December-January 20, 2018

50. Plaintiff avers, that on November 16, 2017, and Nov-
ember 19, 2017 while eating his meals he discovered live insects
within his meals. In one instance Plaintiff was personally
speaking with Correctional officer Miller when he made this
disgusting discovery (Plaintiff was eating and simultaneously
speaking with officer Miller).

51. Plaintiff avers, that when he complains of being served
under-cooked meats, officers call the kitchen for replacements,
but are told to tell Plaintiff to further cook out the meat
in the microwave.

52. Plaintiff avers that he has filed grievances with
respect to the deprivations, and unjust conditions at WCJ.
In fact, Plaintiff states that the grievances regarding him
finding live insects in his food were accepted/granted by
the investigating sergeant, but defendant Vollmer, and

Delgrosso, engages in obstruction by way of over-turning approved grievances and claiming the inmate is lying, or misrepresnting that the Claims being raised are rare when in fact, they are prevalent through out WCJ.

Defendant's Delgrosso, Vollmer, Roberts, Spaulding, and Diaz have responded to several food related grievances, and have all falsely stated to WCJ inmates "insects in foods are rare. Hair inside meals at WCJ is uncommon, Your claims seem suspicious, and/or your copying/riding the coat tails of other inmates who have filed substantiated grievances." This practice and/or widespread custom, and usage has allowed for the afore-mentioned deprivations to permeate WCJ without impunity as no one seems to be held accountable for the misconduct.

53. Plaintiff avers that most of the day he feels fatigue, extremely hungry, nauseated, dehydrated,

54. Despite the fact that correctional officers observe Plaintiff's meals to arrive substandard most of the time defendant's do not provide a replacement or a supplement; thus, forcing Plaintiff to eat substandard meals. As a result Plaintiff has loss approximately 20 pounds.

55. Plaintiff further avers that the foregoing deprivatins are on-going, and occur daily. Correctional staff are annoyed with the fact, that they must log Plaintiff's foreseeable food

complaints, and they (Correctional Staff) give Plaintiff attitude when he request that they logg his food related complaints within the "Complaint Book"[3]

56. In or around November 14, 2017 Plaintiff was informed by sergeant Deltreste, that Aramark staff including defendant's were annoyed by his food related complaints, and angered by his previous lawsuit Pagan et al., Vs Westchester County, et al., 12 Cv. 7669 (PAE)(SN), and most of the act(s) or omissions were being done deliberately. Plaintiff was further informed that defendant Blackman was the main person spreading rumors about him within the kitchen clan.

57. Plaintiff avers that defendant's Diaz, Cheverko, and Westchester County have been on notice of the food related issues at bar for an extended duration, but yet fail to intervene to prevent further injury to Plaintiff inter alia.

58. Plaintiff avers that he has filed complaint letters with defendant's Cheverko, and Mendoza, but to no avail.

59. Plaintiff further avers that several high ranking

---

3. Every housing unit in WCJ has a complaint book (for officer use only) where detainee's can inform an officer of an issue and request that such complaint be logged within said book. The Complaint Book is reviewed three times a day by supervisors.

officials of WCJ were deposed in <u>Pagan</u> and made aware of similar
if not identical food related complaints, but they failed to
take any investigatory, and/or corrective action; therefore,
evidencing a reckless regard for Plaintiff's healtn.

60. As a result of the foregoing Plaintiff could no
longer attend Catholic Mass, and was forced to eat,cold, molded,
stale, under-cooked, insect infested foods, that were less than.

61. In or around January 2018 Plaintiff Gomez was issued
a false misbehavior report by defendant Macdonald shield No.
1796 alleging that he and several other inmates refused orders to
lock in to their cells, and confined Plaintiff for approximately
30 days.

62. On information and belief, defendant Roberts ordered
defendant Macdonald to file said false misbehavior report out
of retalitory animus, because of the voluminous number of
grievances, that Plaintiff filed at WCJ caused massive work for
Roberts i.e. file grievance numbers, file answers and/or conduct
investigations into his claims.

63. During plaintiffs Disciplinary Hearing Captain Roberts
stated to Plaintiff "if I could of kept you confined longer I
would have . Hopefully this slows down your grievances."

64. Plaintiff understood this to mean that defendant delib-
erately delayed conducting his hearing until the maximum

time frame.

65. On beilef, every other inmate who was issued a false
Disciplinary Report with Plaintiff was released from Keeplock,
and given a hearing within 3-7 days.

66. In or around January 25, 2018 Plaintiff was transferred
as a result of said Disciplinary Report to 1-West housing unit
whereas, the conditions were deplorable. The shower did not have
a working light (which was out for approximately 2-weeks). The
shower in1 -West is approximately 2½ feet step up, and extremely
dark (Plaintiff had to feel around in the dark to find the shower
knob). The shower was littered with old WCJ soap (left behind by
other inmates), as a result Plaintiff fell while showering causing
him to suffer excruciating pain in his elbow, and back. Moreover,
the general walk ways in 1-West and within plaintiffs cell; i.e.
flooring was cracked, chipped, broken, and missing portions.
As a result, Plaintiff fell [] causing further injury to his ba-
ck. Maintenance subsequently, examined the flooring, and identi-
fied several hazardous conditions.

67. The conditions in 1-West were extremely dusty making
it hard to breath from dust accumalation as workers (inmates)
do not sweep or mop.

68. Plaintiff states that WCJ engages recreation periods
during meal times as a result; upon returning from recreation
plaintiff meal et al., were/are continuously cold, and left
uncovered within inmates cells .

69. Plaintiff further avers, that he previously [and presently] filed a grievance with respect to WCJ serving meals during recreation periods, thus forcing Plaintiff to eat cold foods. Plaintiff's grievances gave WCJ officials adequate notice, that recreation periods during meals forced inmates to eat cold foods, and left inmate meals within their cells uncovered.[4]

70. Plaintiff further avers, that the meal trays he received were old, rotten, contained mold, and were peeling plastic.

71. The plastic peeling from the meal trays was peeling into the food.

72. Plaintiff states, that several correctional officers within the New Jail, and Old Jail have observed plaintiffs meal trays to be peeling plastic, and recorded their observations within into the Complaint books in 1-West, and 4SW housing units.

_____

4. The cells through out the Old Jail consist of bars and are open to anyone walking by the main tier i.e. inmates who did not sign up for recreation.

73. Plaintiff also states that he properly filed a grievance with respect to his trays peeling plastic, and it was investigated by defendant Roberts who responded to Plaintiff's grievance by alleging that he personally inspected approximately 2,000 meal trays (which is implausible), and none of the meal trays were peeling plastic despite several other inmates filing grievances regarding peeling meal trays, and other correctional officers observing (and noting), that Plaintiff's meal trays were peeling Plastic during the relevant times, and thereafter.

74. Defendant Roberts conduct amounts to obstruction, and contributes to the deprivation, by way of interferring with the investigation, and protecting defendant's through his misrepresentations.

75. Separately, Plaintiff avers that WCJ has an unconstitutional policies that violate its inmates civil rights. Indigent inmates who are seeking to file Parole Appeals, Article 78 challenging prison conditions, State torts challenging prison conditions etc. can not file the aforesaid actions--through WCJ as they have a policy that states, that WCJ will only pay for 42 U.S.C. § 1983 (after defendant Hewitt reads through it) to be mailed. If an inmate refuses to allow defendant Hewitt permission to read through their 42 U.S.C. § 1983 WCJ will not pay for the mailing fees for indigent inmates.

76. In or around December 2017 Plaintiff attempted to mail the instant action with the annexed exhibits, but WCJ officials returned the package to Plaintiff through defendant Hewitt and Ashterman, who both demanded that Plaintiff open the package to allow defendant Hewitt to read through it to ensure that Plaintiff was mailing a 42 U.S.C. § 1983. Plaintiff refused to allow defendant's to read through the instant action, and was subsequently refused postage to mail said papers.

77. As a result Plaintiff was forced to give other inmates portions of his substandard foods (through agreement) so that they would pay to mail the instant action through their accounts.

78. Moreover, WCJ only permits indigent inmates with either 12 pieces of paper a week to draft legal documents or 12 photocopies a week. This is obviously unreasonable.

79. In addition, indigent inmates are not provided the 12 pieces of paper free of charge, WCJ places a lien on the requesting inmates account through a special charge form.

80. Plaintiff avers, that defendant Parchment has denied Plaintiff access to typing and/or writing paper to draft legal pleadings, despite his indigent status unless Plaintiff agreed to place a lien on his inmate account for the 12 pieces of paper (she would of gave him if he

signed the special charge form).

81. Plaintiff avers, that as a result of being deprived
paper he is forced to file papers (at times) on the back of
WCJ forms.

82. Plaintiff also states that WCJ's law libraries are not
in compliance with Correctional Law 45 (6)(15) as their books
are old, torn, and missing sections.

83. On information and belief, WCJ did not order essential
books Pursuant to Correctional Law 45 (6)(15).

84. In or around February 2018 Plaintiff was transferred
to the Pen side of the facility specifically A-Block whereas,
his meals continued to arrive as described supra.

85. In or around February 16, 2018 Plaintiff was released
from WCJ and returned In or around April 25,2018.

86. Plaintiff states that he arrived at WCJ with a fibula
fracture of the Left ankle, and a fracture of the right hand
specifically the fourth metacarpal.

87. As a result of the foregoing injuries plaintiff was
handicap, and was subsequently ordered to a wheel chair by
Westchester Medical Center medical authorities with a no
weight bearing order.

88. Plaintiff was considered to be handicap Pursuant to the meaning of handicap see Americans with Disabilities Act (Amended 2008).

89. In or around June 13, 2018 Plaintiff was called to the WCJ visit room for the purpose of meeting with his mother. Upon completion of said visit Defendant's Castro and Kitt demanded that Plaintiff engage in a strip frisk. <u>Note</u>: Plaintiff has participated in several visits prior to while confined to a wheel chair, and defendant's have never attempted to force him to stand.

90. However, in the date in question defendant Castro directed Plaintiff to remove his shirt which he did while confined to his wheel chair. Defendant Castro and Kitt, then directed Plaintiff to stand and remove his underwear, and pants[5].

---

5. Prior to defendant's Kitt's arrival defendant Castro called him and misrepresented that Plaintiff was refusing to comply with the search (which is contradicted by video surveillance footage) When in fact, Plaintiff was requesting a reasonable accomodation, i.e. hand rails or benches to sit on while undressing.

91. Plaintiff requested a rail and/or bench to assist him with his undressing as he has trouble grabbing things, and standing/shifting his weight onto his fractured ankle. Nevertheless defendant's forced Plaintiff to stand or physical force would be applied. Plaintiff attempted to stand, and fell face first as he tripped with the wheel chair leg, causing excrucitaing pain in his back, hand, and leg. Defendant's and other officers simply starred at Plaintiff and did not call for medical assistance.[6]

92. Plaintiff was finally able to stand on his own accord, and get into his wheel chair. Defendant Kitt then took Plaintiff to the Booking Search area, (which is not equipped with rail(s) or benches for assistance) confiscated Plaintiff's wheel chair, forced him to strip, and removed his gutted splint cast off his right hand against medical orders, causing Plaintiff severe pain in his Right hand, and Left leg (both fractured).

6. Medical assistance is called at WCJ through a "Signal 3" which the officer request via Control.

93. Plaintiff was then transported to his housing unit I-Block (Infirmary housing) where medical staff ordered an x-ray which subsequently confirmed a fracture-healing to Plaintiff's Left leg.

94. Plaintiff filed a grievance with respect to this ordeal and defendant Castro filed a false misbehavior report against Plaintiff alleging disorderly conduct.

95. Defendant Delgrosso, subsequently mailed Plaintiff a letter threatening to take his contact visits and place him on booth (Non-contact visits) visits if he requested a reasonable accomodation again.

96. Defendant Kitt, also responded to Plaintiff's grievance by misrepresenting that Plaintiff did not require a wheel chair, and that Plaintiff only needed a wheel chair for long distances. This misrepresentation is false and an obvious attempt to cover his misconduct during the seraches stated supra. In fact, Plaintiff's medical records contained no such statement or order.

97. Plaintiff's medical records did however state that Plaintiff had a weight bearing as tolerated order. Nevertheless, Plaintiff's medical file was amended to say that Plaintiff needed a wheel chair for long distances only in or around July 6, 2018 after the aforesaid ordeal.

98. Plaintiff states that defendant Westchester County, defendants Spano, Diaz, and spaulding are all in violation of the Americans with Disabilities Act.

99. Plaintiff avers, that while housed in the WCJ infirmary nursing his fractures he was housed in a room that was constantly flooded with rain water, that filled most of the room's floor, and landed on Plaintiff's bed.

100. On information and belief, the aforesaid flooding occurs everytime it rains, and been in existence for years, but officials of WCJ refuse to fix such, and use garbage pails, and inmate blankets as a remedy. Defendant Diaz has personally observed said flooding during rounds, and was personally made aware of the flooding and ventilation by Medical Director Raul Ulloa, and nurse Veronica during his rounds on numerous occasions, but to no avail.

101. Plaintiff was forced to sleep on a wet soaked bed on numerous occasions. In addition, said room had no windows, and the central air system, and exhaust was broken, and had been for years. Plaintiff was locked in said room for approx. 2 months for 23 hours a day with temp.'s reaching almost 100° in June 2018. Officers assigned to I-Block i.e. Stasiak, Braig, Clifford submitted dozens of work orders regarding the air system.

102. In or around July 18, 2018 Plaintiff attempted to file a grievance regarding the rain, and air system to defendant Kitt,

but he refused to accept the grievance stating "that's out of
D.O.C. reach you have to file that grievance with Correct Care
Solutions."  And he refused to take Plaintiffs grievance.

103. On information and belief, defendant Kitt's statement
is a direct contravention to policies and regulations governing
the WCJ grievance program.

104. In or around July 20, 2018 Massive rain floods invaded
WCJ infirmary "I-Block" housing unit specifically rooms 5-6
causing large portions of the ceilings to collapse forcing
approximately a dozen handicap inmates to be relocated to general
housing units not equipped to address their medical needs.

105. Returning to Plaintiffs food claims, in or around
Februray 2018 approximately 30 inmates in WCJ A-Block fell ill
to Aramark's food specically Chilli & Beans, causing several
inmates to seek medical treatment.

106. The alarming number of inmates seeking medical treat-
ment due to sypmtons associated with eating old foods, prompted
medical officials to Email Aramark officials (see Email of NP
Adjere) with respect to serving inmates spoiled foods. Plaintiff
was one of those inmates who fell ill and sought treatment.

107. WCJ senior officials took no action with regard to said
spoiled foods and/or made no inquires.

108. The meal trays in on the date in question smelled horrible, rotted and had a strong rotten food odor. However, the Sergeant assigned to A-Block (Sgt. Hogue) created the mirage scenario, that inmates were simply complaining of chilli and beans meal, because they wanted something else however that was not the case.

109. A-Block housing unit was not offered or provided any other foods or a replacement.

110. As a result of plaintiff being indigent he was forced to suffer hunger pangs.

111. Returning to WCJ infirmary I-Block housing unit prison conditions. In or around July 22, 2018 I-Block infirmary was closed in part, specifically rooms 5-6 (plaintiff was previously assigned to room 6) as severe rain invaded said rooms and caused the ceilings to cave in and collapse forcing inmates to be relocated.

112. Returning to Plaintiffs food related complaints he further avers, that in or around February 12, 2018 approximately 30 inmates of WCJ (including plaintiff) became ill after consuming Aramark Chilli & Beans, that consisted of old spoiled foods. The aforesaid inmates (including plaintiff) sought medical treatment therafter, giving Westchester County Jail defendant's ample notice, that WCJ inmates are/were being served old foods. Moreover, the treating Nurse Practitioner Adajere personall sent Aramark officials and Email explaining same. However, no defendant conducted an independant investigation into the facts.

113. Plaintiff states that he was prescribed the following medications to treat the injuries and ailments complained of herein:

- Tums;
- Zantac;
- Meclizine;
- Zofran;
- Loperclimide;
- Ibuprofen;
- Tylenol;
- Motrin;
- Cycloben;
- Zaprine;
- Ondansetron.

**NOTE:**  Plaintiff further avers, that in or around July 20, 2018 he was transferred from the WCJ infirmary to A-Block housing unit whereas, in or around July 21, 2018 the entire A-Block (Approx. 60 inmates) refused to accept and eat their dinner meals, and returned all of the meals untouched, because the meal consisted of old beans & chilli.

**INJURIES SUFFERED BY PLAINTIFF**

- Vomiting, nausea, stomach pains, weight loss, diarrhea, headaches;
- Twisted ankle on January 25, 2018;
- Severe back pain, and elbow pain from falling in the 1-West shower on January 31, 2018;
- Stomach cramps;
- Violation of rights as secured by the First, Eighth, Fourteenth Amendments to the U.S. Const.
- Physical & psychological pain and suffering;
- Mental disturbance;
- Needless pain and suffering;
- Violation of Plaintiff's rights as secured by the ADA;
- Heavy breathing, and lack of oxygen;
- Debilitating headaches.

114. as a direct and proximate result of defendant's conduct Plaintiff has or will suffer the injuries cited supra.

## COUNT I CLAIMS OF MONELL AGAINST WESTCHESTER COUNTY,
## AND ARAMARK CORRECTIONAL SERVICES, LLC

115. Plaintiff hereby incorporates and references all of the foregoing paragraphs and further alleges as follows:

116. Defendant Westchester County, and Aramark directly caused the constitutional violations suffered by plaintiff, and is liable for the damages suffered by plaintiff as a result of the conduct of defendants. The conduct of defendants was the direct consequence of inadequate training and supervison of Aramark employees by defendants Westchester County, and Aramark and its agent(s).

117. At all times relevant to this complaint defendants Westchester County, Aramark, through its agents: Manual Mendoza, Captain Roberts, Coffey Kohli, Penny Stewart, Darnell Flax, Craig Boissy, Leandro Diaz, Donna Blackman had in effect policies, and customs that allowed for kitchen staff and correctional officers to serve food to plaintiff et al., without impunity for an extended duration.

118. At all times relevant to this Amended Complaint it was the policy and/or custom of Westchester County, and Aramark to inadequately train, supervise, and discipline its kitchen workers thereby failing to adequately discourage the misuse

depravations of the sort described in this Amended Complaint.

119. As a result of the policies and customs of Westchester County Department of Corrections/WCJ defendants believe that their unconstitutional actions will not result in discipline but will in fact be tolerated.

120. The wrongful policies, practices, and customs complained of herein demonstrate indifference on the part of policymakers of WCJ.

121. Moreover, WCJ has a longstanding pattern of serving inmates substandard foods, see the following case(s) filed in the Southern District of New York Court-house

- Ackridge v. Aramark S.D.N.Y. 16Cv6301;
- Carla Scott v. Westchester County;
- White v. Westchester County, et al.,
- Haslinger v. Westchester County, et al.,
- Osorio v. Westchester County, et al.,
- Rutherford v. Westchester County, et al.
- Mateo v. Westchester County, et al.,
- Bethune v. Westchester County, et al.,
- McCray v. Westchester County, et al.,
- Spotard v. Westchester County, et al.,
- Pagan et al., v. Westchester County, et al.,;
- Henry Perez et al., v. Westchester County,;
- Barnett v. Westchester County, et al.,

• Ross et al., v. Westchester County;
and several females of WCJ filed suit.

**COUNT II CLAIMS OF FIRST AMENDMENT VIOLATION AGAINST
DEFENDANTS WESTCHESTER COUNTY, VOLLMER, DELGROSSO, DIAZ,
CHEVERKO, SPANO, ROBERTS, ASHTERMAN, SPAULDING
AND HEWITT**

122. Plaintiff hereby incorporates and references all of
the foregoing paragraphs and further alleges as follows:

123. Defendants hereby placed an unnecessary burden on
plaintiffs regligious belief, deprived him access to writing
paper, and a properly stocked law library. Retaliated against
plaintiff, refused to mail his federal lawsuit unless defendant
Hewitt read through it, and falsely confined him out of retalit-
ory anmus.

124. As a result Plaintiff was damaged and seeks redress.

**COUNT III CLAIMS OF RLUIPA AGAINST DEFENDANTS WESTCHESTER COUNTY
VOLLMER, DIAZ, HEWITT, PARCHMENT, SPANO, DELGROSSO, ROBERTS,
ASHTERMAN, CHEVERKO, AND SPAULDING**

125. Plaintiff hereby incorporates and references all of
the foregoing paragraphs and further alleges as follows:

126. Defendant Westchester County, receives federal aid
to accomplish its goals, and WCJ houses federal prisoners.

127. Defendants Placed an unnecessary burden on his pract-
ice of religion without a penological interest.

128. As a direct and proximate result of defendants actions
and/or omissions plaintiff was damaged.

## COUNT IV CLAIMS OF RFRA VIOLATION AGAINST DEFENDANTS BLACKMAN, (ARAMARK DEFENDANTS) MIDDLETON, VOLLMER, DIAZ, DELGROSSO, WESTCHESTER COUNTY, CAPATIN ROBERTS

129. Plaintiff hereby incorporates and references all of
the foregoing paragraphs and further alleges as follows:

130. Here defendants collectively violated plaintiffs
religious freedom as described _supra_, and such violation
contradict RFRA.

131. As a direct and proximate result of defendants actions
and/or omissions plaintiff was damaged and seeks redress.

## COUNT V CLAIMS OF EIGHTH AMENDMENT VIOLATION: CRUEL & UNUSUAL PUNISHMENT, DELIBERATE INDIFFERENCE AGAINST WESTCHESTER COUNY, CHEVERKO, SPANO, MIDDLETON ROBERTS, DIAZ, CASTRO, KITT

132. Plaintiff hereby incorporates and references all of
the foregoing paragraphs and further alleges as follows:

133. Defendants here acted recklessly, demonstrated
_mens rea_, evidenced deliberate indifference to plaintiff's health
cruelly forced him to eat substandard foods, forced him to
stand on his fracture, and removed his gutted castfrom his hand.

134. As a result Plaintiff was damaged and seeks redress.

## COUNT VI § 1983 CLAIMS OF PRISON CONDITIONS
## AGAINST ALL DEFENDANTS

135 Plaintiff hereby incorporates and references all of the foregoing paragraphs and further alleges as follows:

136. Defendants here forced Plaintiff to live in hazardous areas as described _supra_, and eat foods that were substandard in violation of the Eighth Amendment to the U.S. Const.

137. As a result of defendants actions and/or omissions Plaintiff was damaged and seeks redress.

## COUNT VII § 1983 CLAIMS OF FAILURE TO INTERVENE
## AGAINST ALL DEFENDANTS

138. Plaintiff hereby incorporates and references all of the foregoing paragraphs and further alleges as follows:

139. Defendants here had sufficient present, and prior notice that the aforementioned constitutional violations were occurring at WCJ, but failed to intervene and/or take any preventive or corrective actions to cease the foregoing depri- vations; especially, the food related complaints. Supervisory defendants failed to properly supervise inmate workers, and

civilian kitchen staff with respect to constitutional violations.

140. Consequently, Plaintiff was hungry, and constantly fatigue, which interferred with daily activities such as exercising, and the overall operation of the body.

141. Note: in response to Plaintiffs food related complaints defendants on numerous occasions suggested that Plaintiff cook out his under-cooked meats in the facility microwave; however, this course of action does not address the fact that under-cookedfoods are being served. Take further note, that Correctional staff has noted within the housing unit complaint book, that plaintiffs meat arrived undercooked, and kitchen staff refused to send a replacement, and further suggested he cook out food in the microwave.

142. As a result of the foregoing plaintiff was damaged and seeks redress.

143. Plaintiff further avers, that defendant Westchester county deliberately turned the blind eye to the aforementioned misconduct and/or demonstrated a complete disregard, because they could never be held accountable for the food related misconduct due to an indemnification clause within Aramark and westchester Countys contract.

144. On belief, the aforesaid contract states that Aramark

will pay any and all monies to settle and/or to dissolve all litigation brought against the County arising out of inmate meals, thus sheilding Westchester County from liability from a liability that is ultimately their responsibility, but by outsourcing WCJ inmate meals Westchester County, has cleverly avoided liability.

145. As a result Plaintiff was damaged.

**COUNT VIII § 1983 CLAIMS OF DISCRIMINATION AGAINST ALL DEFENDANTS**

146. Plaintiff hereby incorporates and references all of the foregoing paragraphs and further alleges as follows:

147. Defendant's here deliberately targeted a specific class of people, and deprived them of foods in accordance with their religious beliefs, but did however serve other religions foods in accordance with their religious beliefs.

148. As a result plaintiff was damaged and seeks redress.

**COUNT VIIII § 1983 CLAIMS OF SUBSTANTIAL DUE PROCESS AGAINST ALL DEFENDANTS**

149. Plaintiff hereby incorporates and references all of the foregoing paragraphs and further alleges as follows:

150. Defendants here deprived plaintiff of the foregoing rights, immunities, and priviliges without due process.

151. As a result of the foregoing Plaintiff was damaged.

**COUNT X § 1983 CLAIMS OF CONSPIRACY AGAINST ALL DEFENDANTS**

152. Plaintiff hereby incorporates and references all of the foregoing paragraphs and further alleges as follows:

153. Defendants here conspired amongst each other to supress and minimize/contort food related grievances, complaints <u>inter alia</u> filed at WCJ.

154. As a result of the foregoing plaintiff was damaged.

**COUNT XI § 1983 CLAIMS OF RETALIATION AGAINST DEFENDANTS ROBERTS, DELGROSSO, MACDONALD, WESTCHESTER COUNTY ARAMARK CORRECTIONAL SERVICES, LLC, DONNA BLACKMAN AND ALL ARAMARK KITCHEN DEFENDANTS**

155. Plaintiff hereby incorporates and references all of the foregoing paragraphs and further alleges as follows:

156. Defendants here retaliated against Plaintiff due to the filing of grievances and previous litigation as described <u>supra.</u>

157. As a result Plaintiff was damaged and seeks redress.

COUNT XII § 1983 CLAIMS OF INTERFERENCE WITH ACCESS TO THE COURT

IN VIOLATION OF THE FIRST AMENDMENT AGAINST

DEFENDANTS HEWITT

WESTCHESTER COUNTY, DIAZ, PARCHMENT, ROBERTS, SPANO, CHEVERKO,

SPAULDING, AND ASHTERMAN

158. Plaintiff hereby incorporates and references all of the foregoing paragraphs and further alleges as follows:

159. Defendants hereby created and enforced policies that infringed upon Plaintiffs First Amendment rights to access the Court as described supra.

160 As a result Plaintiff was damaged and seeks redress.

COUNT XIII STATE LAW CLAIMS OF GROSS NEGLIGENCE AGAINST

WESTCHESTER COUNTY, VOLLMER, DELGROSSO, CHEVERKO, AND ROBERTS

161. Plaintiff hereby incorporates and references all of the foregoing paragraphs and further alleges as foolows:

162. Here defendants had a duty to provide Plaintiff with adequate healthy foods, served in accordance with federal and state laws' Defendants further had a duty to maintain and promptly replace a blown light in 1-West Shower, and maintain a safe walk way in 1-West. However, defendants breached their duty causing Plaintiff the injuries cited supra.

163. As a direct and proximate result of defendants actions and/or in actions Plaintiff was damaged and seeks redress.

## COUNT XIIII STATE LAW CLAIMS OF RESPONDEAT SUPERIOR AGAINST WESTCHESTER COUNTY, AND ARAMARK CORRECTIONAL SERVICES

164. Plaintiff hereby incorporates and references all of the foregoing paragraphs and further alleges as follows:

165. Defendants here were at all times relevant responsible for the tortious act(s) of their employees, and are thus liable to plaintiff for the complaints raised herein.

## COUNT XV STATE LAW CLAIMS OF INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS AGAINST DEFENDANTS

166 . Plaintiff hereby incorporates and references all of the foregoing paragraphs and further alleges as follows:

167. Plaintiff avers, that defendants conduct as described supra is/was extreme, outrageous, and shocks the conscious.

168.. As a result Plaintiff was damaged and seeks redress.

## COUNT XVI 42 U.S.C. § 1983 SUPERVISORY LIABILITY

169 . Plaintiff hereby incorporates and references all of the foregoing paragraphs and further alleges as follows:

170 . Here defendants: Cheverko, Spano, Diaz, Vollmer, Kitt, Blackman, Mendoza, Delgrosso, Middleton are all supervisors who were personally involved with the aforementioned claims.

COUNT XVII CLAIMS OF NEGLIGENT RETENTION AND HIRING AGAINST WESTCHESTER COUNTY, AND ARAMARK CORRECTIONAL SERVICES, LLC

171. Plaintiff hereby incorporates and references all of the foregoing paragraphs and further alleges as follows:

172. Defendants are vicariously liable for the conduct of their employees, as their employees are the direct and proximate cause of the injuries plaintiff suffered.

173. As a result plaintiff was damaged.

### RELIEF

**WHEREFORE,** Plaintiff request the following relief:

Award the following:

a. Declaratory judgment that Plaintiffs rights were violated under the First, Eighth, and Fourteenth Amendments to the U.S. Const.;

b. Compensatory damages against all defendants in the amount of $ 250,000.00; or as a jury may determine, but no less than $250,000.00;

c. Punitive damages against all defendants in the amount of $2,000,000.00 or as a jury may determine, but no

less than $2,000,000.00;

    d. Nominal damages;

    e. Presumbed damages;

    f. Special damages in the amount of $40,000.00.

    g. Court assistance identifying further causes of action.

## DECLARATION UNDER PENALTY OF PERJURY

I Santiago Gomez, state that I have read the Amended Verified Complaint and state that the contents are true and correct pursuant to 28 U.S.C. § 1746, except for the matters that I alleged to be on information and belief, and even those matters I believe them to be true. The foregoing Amended Complaint was executed on July 3O, 2018.

Dated: Valhalla, New York

    July 3O, 2018

                              Santiago Gomez, did 173518
                              Westchester County Jail
                              P.O. Box 10
                              Valhalla, New York 10595
                              Pro se Plaintiff

# Exhibit 1

**HEALTH SERVICE REQUEST**
**SOLICITUD DE SERVICIO DE SALUD**



New York
Correct Care Solutions
Medical Services

| Patient Name: Santiago Gomez | Patient Number: | Booking Number: | Date of Birth: | Today's Date: |

NAME (NOMBRE) S. Gomez                Date of Request (Fecha de solicitud) 10/30/17
ID # (N° de identificación) 173518        DOB (Fecha de nacimiento)
Site (Sitio) New Jail                      Unit (Unidad) 4SW #9

Nature of Problem or Request (be specific) Naturaleza del problema o solicitud (sea específico): I having
Stomach pains, from eating food that I was
provided for lunch by Aramark. I vomited
x2, and I have stomach cramps along with
nausea. I believe the food was possibly spoiled.

List Allergies (Nombre las alergias): NA

I consent to be treated by Health Care Staff for the condition described (Doy mi consentimiento para que la condición descrita sea
tratada por el Personal de Asistencia Médica).

Inmate Signature and Date (Firma y fecha del recluso) Santiago G

**PLACE THIS SLIP IN MEDICAL BOX OR DESIGNATED AREA**
COLOQUE ESTE FORMULARIO EN LA CASILLA MÉDICA O EN EL ÁREA DESIGNADA

### Do Not Write Below This Line

Received/Triage Date: DEC 31 2017   Time: 0014   Signature: _____ **JESSICA ASENCIO**
                                                                **REGISTERED NURSE**
Refer to: ✓ Provider ___ Mental Health ___ Nursing ___ Dental ___ Administrator

### HEALTH CARE DOCUMENTATION

**Response to Inmate:**

Sara George
Nurse Practitioner                    Addressed 1/3/17

Nurse Signature: Sara                Date/Time 1/4/18 2:51pm

Westchester

*02147009P52374P*

# HEALTH SERVICE REQUEST
## SOLICITUD DE SERVICIO DE SALUD



New York
Correct Care Solutions
Medical Services

| Patient Name | Patient Number | Booking Number | Date of Birth | Today's Date |
|---|---|---|---|---|
| Santiago Gomez | | | | |

NAME (NOMBRE) Santiago Gomez          Date of Request (Fecha de solicitud) 1/25/17
ID # (Nº de identificación) 1735'18          DOB (Fecha de nacimiento)
Site (Sitio) New Jail          Unit (Unidad) 7-west D1

Nature of Problem or Request (be specific) Naturaleza del problema o solicitud (sea específico):
Having Stomach pains received my lunch tray
and it contained ~~bad~~ undercooked food through out the tray.
Please also have me evaluated for Asthma / difficulty breathing

List Allergies (Nombre las alergias):

I consent to be treated by Health Care Staff for the condition described (Doy mi consentimiento para que la condición descrita sea tratada por el Personal de Asistencia Médica).

Santiago
Inmate Signature and Date (Firma y fecha del recluso)

PLACE THIS SLIP IN MEDICAL BOX OR DESIGNATED AREA
COLOQUE ESTE FORMULARIO EN LA CASILLA MÉDICA O EN EL ÁREA DESIGNADA

### Do Not Write Below This Line

Received/Triage Date: 1/26/18          Time: 12A          Signature: C. Walters

Refer to: ✓ Provider ___ Mental Health ___ Nursing ___ Dental ___ Administrator

---

### HEALTH CARE DOCUMENTATION

Response to Inmate:

Nurse Signature: _____ 1/26/18          Date/Time: _____

Westchester

*021470DP52374P*



**HEALTH SERVICE REQUEST**
SOLICITUD DE SERVICIO DE SALUD

NAME (NOMBRE) Santiago Gomez

ID # (N° de Identificación) 1235189~~~~~~

Date of Request (Fecha de solicitud) 1/25/18

Site (Sitio) OLD Jail

DOB (Fecha de nacimiento) ~~~~~~

Unit (Unidad) 1-WEST DT

Nature of Problem or Request (be specific) Naturaleza del problema o solicitud (sea específico):

Pain left Ankle twisted on Broken floor cell

List Allergies (Nombre las alergias): NA     SG

I consent to be treated by Health Care Staff for the condition described (Doy mi consentimiento para que la condición descrita sea tratada por el Personal de Asistencia Médica).

Santiago G

Inmate Signature and Date (Firma y fecha del recluso)

PLACE THIS SLIP IN MEDICAL BOX OR DESIGNATED AREA
COLOQUE ESTE FORMULARIO EN LA CASILLA MÉDICA O EN EL ÁREA DESIGNADA

Do Not Write Below This Line

Received/Triage Date: 1/26/18     Time: 124     Signature: C. Walter

Refer to: ✓ Provider __Mental Health __Nursing __Dental __Administrator

**HEALTH CARE DOCUMENTATION**

Response to Inmate:

Nurse Signature:          Date/Time:

| Inmate Name | ID# | DOB | Date |
|---|---|---|---|

CCS-SC0163 (formerly CCS-002)          revised 1/23/06          NOTE: This is a 2-part form

**HEALTH SERVICE REQUEST**
SOLICITUD DE SERVICIO DE SALUD



New York
Correct Care Solutions
Medical Services

| Patient Name. Santiago Gomez | Patient Number | Booking Number | Date of Birth | Today's Date |

NAME (NOMBRE) Santiago Gomez          Date of Request (Fecha de solicitud)  1/31/18

ID # (N° de identificación)  17358          DOB (Fecha de nacimiento)

Site (Sitio)  Old Jail          Unit (Unidad)  1 West D1

Nature of Problem or Request (be specific) Naturaleza del problema o solicitud (sea específico):
I'm having lower back pain, and pain near my elbow, I as I fell in the shower yesterday can I have something for pain.

List Allergies (Nombre las alergias):  NA

I consent to be treated by Health Care Staff for the condition described (Doy mi consentimiento para que la condición descrita sea tratada por el Personal de Asistencia Médica).

Inmate Signature and Date (Firma y fecha del recluso)

PLACE THIS SLIP IN MEDICAL BOX OR DESIGNATED AREA
COLOQUE ESTE FORMULARIO EN LA CASILLA MÉDICA O EN EL ÁREA DESIGNADA

**Do Not Write Below This Line**

Received/Triage Date:  FEB 01 2018    Time: 0232    Signature: HBishop RN

Refer to: ✓ Provider  ___ Mental Health  ___ Nursing  ___ Dental  ___ Administrator

Helene Bishop
Registered Nurse

## HEALTH CARE DOCUMENTATION

Response to Inmate:

ELBOW  133/81

BILAL  97  661

76

Nurse Signature: Veronica O'Meally-Tully FNPBC    Date/Time: 10⁴⁰ am 24/18

Westchester

*D21470DP38385P*

HEALTH SERVICE REQUEST   173518
SOLICITUD DE SERVICIO DE SALUD

**CCS**
New York
Correct Care Solutions
Medical Services

Patient Name: Santiago Gomez   Patient Number: ~~████~~   Booking Number:   Date of Birth: ~~████~~   Today's Date: 2/6/18

NAME (NOMBRE): Santiago Gomez
ID # (Nº de identificación): 173518
Site (Sitio): Old Jail

Date of Request (Fecha de solicitud): Feb 6, 2018
DOB (Fecha de nacimiento): ~~████~~
Unit (Unidad): 1 West BI

Nature of Problem or Request (be specific) Naturaleza del problema o solicitud (sea específico): I having stomach pains, nausea, and vomiting

List Allergies (Nombre las alergias): NA   S-G

I consent to be treated by Health Care Staff for the condition described (Doy mi consentimiento para que la condición descrita sea tratada por el Personal de Asistencia Médica).

Inmate Signature and Date (Firma y fecha del recluso): Santiago Gomez

PLACE THIS SLIP IN MEDICAL BOX OR DESIGNATED AREA
COLOQUE ESTE FORMULARIO EN LA CASILLA MÉDICA O EN EL ÁREA DESIGNADA

**Do Not Write Below This Line**

Received/Triage Date: FEB 07 2018   Time: 0157   Signature: [signature]

Refer to: ✓ Provider  ___Mental Health  ___Nursing  ___Dental  ___Administrator

Jessica Asencio
Registered Nurse

## HEALTH CARE DOCUMENTATION

Response to Inmate:

[handwritten clinical notes]

Nurse Signature: Veronica O'Meally ____   Date/Time: 9am 2/8/18

Westchester

*02147.0  C  25662 P*

LA12

# HEALTH SERVICE REQUEST
## SOLICITUD DE SERVICIO DE SALUD



New York
Correct Care Solutions
Medical Services

| Patient Name | Patient Number | Booking Number | Date of Birth / Today's Date |
|---|---|---|---|

Patient Name Santiago Gomez

NAME (NOMBRE) Santiago Gomez                    Date of Request (Fecha de solicitud) 2/11/18

ID # (N° de identificación) V173518         DOB (Fecha de nacimiento)

Site (Sitio) Dev                            Unit (Unidad) A-Block pod

Nature of Problem or Request (be specific) Naturaleza del problema o solicitud (sea específico)

Dinner I consumed my meal tray in part but today for realized that the chilli beans were old and smelled rotted, the meal is essence was a collection of old food mixed with beans my stomach is in pain

N/A

List Allergies (Nombre las alergías):

I consent to be treated by Health Care Staff for the condition described (Doy mi consentimiento para que la condición descrita sea tratada por el Personal de Asistencia Médica).

                                            Inmate Signature and Date (Firma y fecha del recluso)

PLACE THIS SLIP IN MEDICAL BOX OR DESIGNATED AREA
COLOQUE ESTE FORMULARIO EN LA CASILLA MÉDICA O EN EL ÁREA DESIGNADA

### Do Not Write Below This Line

Received/Triage Date: FEB 1 2 2018   Time: 0147   Signature: JESSICA ASENCIO REGISTERED NURSE

Refer to: ✓ Provider ___ Mental Health ___ Nursing ___ Dental ___ Administrator

## HEALTH CARE DOCUMENTATION

Response to Inmate:

Chidiebere Ajaere
Nurse Practitioner

Nurse Signature: CA          Date/Time 2/14/18  9-06 am

Westchester

*D21470 0P25151P*

# Exhibit 2

Westchester County, NY
*Westchester DOC*
*10 Woods Road*
*Valhalla , NY10595*

**Progress Notes**



| Patient Name | Patient Number | Booking Number | Birth Date | Date Of Service |
|---|---|---|---|---|
| SANTIAGO GOMEZ | | | | 2/14/2018 |

*Patient Problems:*

| Observed Date | Category | Type | Problem | Confirmed By |
|---|---|---|---|---|
| 10-25-2017 | Acute | Symptoms | Nonspecific reaction to skin test w/o active tuberculosis | |
| 04-25-2017 | Acute | OTHER | Patient Reports No Problems | |

*Patient Allergies:*

| Observed Date | Type | Allergy | Reaction |
|---|---|---|---|
| 11-01-2017 | Allergy Items | Fish derived | Itching Difficulty Swallowing |
| 03-20-2013 | Specific Allergen | No Known Drug Allergies | |

☑ **Vital Signs Taken**

*Patient Vitals:*

| Observed Date | BP | Pulse | Resp | Temp | Pulse Ox | Weight | BMI | PF#1 | PF#2 | PF#3 | Waist |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 02-14-2018 08:50 AM EST | 136/82 | 75 | 16 | 98.00 | 100 | - | - | - | - | - | - |

**Notes / History:**

Added 02/14/2018 02:15 PM EST by ChAjaere Nurse Practitioner

*2/14/2018 8:50:45 AM*

*S*

*Sick call for stomach pain, nausea and vomiting. States it started after eating chills and beans for Sunday dinner. Reports 1 episode of vomiting and diarrhea yesterday. Denies any stomach pain, vomiting and diarrhea today. Denies any problem with eating after the incident.*

*O*

*AAOX3, NAD*

*CC + S1, S2. Stable V/S. Denies CP or SOB*

*Lungs. + Bilateral equal clear BS*

*Abdomen. denies pain, N/V/D. soft and non tender.*

**Westchester County, NY**
*Westchester DOC*
*10 Woods Road*
*Valhalla , NY10595*

**Progress Notes**



| Patient Name | Patient Number | Booking Number | Birth Date | Date Of Service |
|---|---|---|---|---|
| SANTIAGO GOMEZ | | 2017004758 | | 2/14/2018 |

*Abdomen. denies pain, N/V/D.  soft and non tender.*

*Skin. afebrile, (-) diaphoresis.*

*Musculoskeletal. + full rom*

*Neuro. Denies any neurological deficits at present.*

*A*

*Unspecified Stomach Discomfort.*

*P*

*Zofran and Loperamide ordered. Water hydration encouraged. Medically cleared. RTC PRN*

**Westchester County, NY**
*Westchester DOC*
*10 Woods Road*
*Valhalla , NY10595*

**Progress Notes**


**CCS**
**CORRECT CARE**
**SOLUTIONS**

| Patient Name | Patient Number | Booking Number | Birth Date | Date Of Service |
|---|---|---|---|---|
| SANTIAGO GOMEZ | ▓▓▓▓ | 2018001768 | ▓▓▓▓ | 1/21/2018 |

| Medication | Dose | Schedule | | Start Date | End Date |
|---|---|---|---|---|---|

*Exam*

*NAD*

*Afebrile*

*CV s1s2 RRR*

*Lungs CTA*

*GU: Reports no difficulty voiding*

*GI No N/V/D weight 240 lbs*

*Integ: + maceration and peeling feel*

*a/p*

*Rt inguinal pain – referred to Gen. Surg. pending approval (as explained to inmate)*

*Tinea Pedis – Clotrimazole pending approval*

*Foot hygiene discussed with pt*

**Westchester County, NY**
*Westchester DOC*
*10 Woods Road*
*Valhalla , NY10595*

**Progress Notes**



**CORRECT CARE**
S O L U T I O N S

| Patient Name | Patient Number | Booking Number | Birth Date | Date Of Service |
|---|---|---|---|---|
| SANTIAGO GOMEZ | ▓▓▓▓▓ | 2017004758 | ▓▓▓▓▓ | 1/3/2018 |

| Medication | Dose | Schedule | Start Date | End Date |
|---|---|---|---|---|

*Abdominal pain: Will place surgery consult pending approval.*

*Reflux: will order Tums and zantac pending approval. Hydration encouraged. Lifestyle modifications encouraged.*

*RTC as needed.*

# Exhibit 3

Westchester County, NY
*Westchester DOC*
*10 Woods Road*
*Valhalla, NY 10595*

**Medication Order**



| Patient Name | Patient Number | Booking Number | Birth Date | Date Of Service |
|---|---|---|---|---|
| GOMEZ, SANTIAGO | | 2017004758 | | 10/30/2017 |

## Order Overview

**Ordered By:** Stone-Edwards, Zoeth on 10/30/2017 11:29AM

| Start Date | Medication | Dose | UOM | Frequency | Durations (Days) | PRN | KOP |
|---|---|---|---|---|---|---|---|
| 10/30/2017 | amoxicillin 500 mg capsule: give 1 capsule PO TID 8AM,1PM, and 5PM for 10 days. | 1 | capsule | TID 8AM,1PM, and 5PM | 10 | No | No |

*Noted By: Stone-Edwards, Zoeth Nurse Practitioner 10/30/2017 11:29AM*

| Start Date | Medication | Dose | UOM | Frequency | Durations (Days) | PRN | KOP |
|---|---|---|---|---|---|---|---|
| 10/30/2017 | meclizine 12.5 mg tablet: give 1 tablet PO BID 8AM & 5PM PRN for 7 days. | 1 | tablet | BID 8AM & 5PM | 7 | Yes | No |

*Noted By: Stone-Edwards, Zoeth Nurse Practitioner 10/30/2017 11:29AM*

Westchester County, NY
*Westchester DOC*
*10 Woods Road*
*Valhalla, NY 10595*

**Medication Order**



| Patient Name | Patient Number | Booking Number | Birth Date | Date Of Service |
|---|---|---|---|---|
| GOMEZ, SANTIAGO | | 2017004758 | | 11/28/2017 |

### Order Overview

**Ordered By:** George, Sara on 11/28/2017 02:51PM

| Start Date | Medication | Dose | UOM | Frequency | Durations (Days) | PRN | KOP |
|---|---|---|---|---|---|---|---|
| 11/28/2017 | meclizine 12.5 mg tablet: give 1 tablet PO 5:00 PM PRN for 7 days. | 1 | tablet | 5:00 PM | 7 | Yes | No |

*Noted By: George, Sara Nurse Practitioner 11/28/2017 02:51PM*

**Westchester County, NY**
*Westchester DOC*
*10 Woods Road*
*Valhalla, NY 10595*

**Medication Order**



| Patient Name | Patient Number | Booking Number | Birth Date | Date Of Service |
|---|---|---|---|---|
| GOMEZ, SANTIAGO | | 2017004758 | | 1/3/2018 |

## Order Overview

Ordered By: George, Sara on 01/03/2018 02:35PM

| Start Date | Medication | Dose | UOM | Frequency | Durations (Days) | PRN | KOP |
|---|---|---|---|---|---|---|---|
| 1/3/2018 | Zantac (Ranitidine HCl) 150 mg tablet: give 1 tablet PO Daily 8 AM PRN for 10 days. | 1 | tablet | Daily 8 AM | 10 | Yes | No |

*Noted By: George, Sara Nurse Practitioner 01/03/2018 02:36PM*

| Start Date | Medication | Dose | UOM | Frequency | Durations (Days) | PRN | KOP |
|---|---|---|---|---|---|---|---|
| 1/3/2018 | Tums (Calcium Carbonate) 200 mg calcium (500 mg) chewable tablet: give 2 tablet,chewable PO BID 8AM & 5PM PRN for 10 days. | 2 | tablet,chewable | BID 8AM & 5PM | 10 | Yes | No |

*Noted By: George, Sara Nurse Practitioner 01/03/2018 02:36PM*

Westchester County, NY
*Westchester DOC*
*10 Woods Road*
*Valhalla, NY 10595*

**Medication Order**



| Patient Name | Patient Number | Booking Number | Birth Date | Date Of Service |
|---|---|---|---|---|
| GOMEZ, SANTIAGO | | 2017004758 | | 1/12/2018 |

### Order Overview

**Ordered By:** Park, Joon on 01/13/2018 12:27AM

| Start Date | Medication | Dose | UOM | Frequency | Durations (Days) | PRN | KOP |
|---|---|---|---|---|---|---|---|
| 1/13/2018 | Zantac (Ranitidine HCl) 150 mg tablet: give 1 tablet PO Daily 8 AM PRN for 14 days. | 1 | tablet | Daily 8 AM | 14 | Yes | No |

*Noted By: Park, Joon Provider 01/13/2018 12:27AM*

Westchester County, NY
*Westchester DOC*
*10 Woods Road*
*Valhalla, NY 10595*

**Medication Order**



| Patient Name | Patient Number | Booking Number | Birth Date | Date Of Service |
|---|---|---|---|---|
| GOMEZ, SANTIAGO | | 2017004758 | | 1/21/2018 |

## Order Overview

**Ordered By:** O'Meally-Tully, Veronica on 01/21/2018 02:58PM

| Start Date | Medication | Dose | UOM | Frequency | Durations (Days) | PRN | KOP |
|---|---|---|---|---|---|---|---|
| 1/21/2018 | Clotrimazole 1 % Topical Cream: give 1 cream TOP BID 8AM & 5PM PRN for 21 days. | 1 | cream | BID 8AM & 5PM | 21 | Yes | No |
| | *Noted By: O'Meally-Tully, Veronica Nurse Practitioner 01/21/2018 02:58PM* | | | | | | |
| 1/21/2018 | Motrin IB (Ibuprofen) 200 mg tablet: give 2 tablet PO BID 8AM & 5PM PRN for 10 days. | 2 | tablet | BID 8AM & 5PM | 10 | Yes | No |
| | *Noted By: O'Meally-Tully, Veronica Nurse Practitioner 01/21/2018 02:58PM* | | | | | | |

Westchester County, NY
*Westchester DOC*
*10 Woods Road*
*Valhalla, NY 10595*

**Medication Order**



| Patient Name | Patient Number | Booking Number | Birth Date | Date Of Service |
|---|---|---|---|---|
| GOMEZ, SANTIAGO | | 2017004758 | | 2/1/2018 |

## Order Overview

**Ordered By:** O'Meally-Tully, Veronica on 02/01/2018 10:45AM

| Start Date | Medication | Dose | UOM | Frequency | Durations (Days) | PRN | KOP |
|---|---|---|---|---|---|---|---|
| 2/1/2018 | cyclobenzaprine 10 mg tablet: give 1 tablet PO BID 8AM & 5PM PRN for 5 days. | 1 | tablet | BID 8AM & 5PM | 5 | Yes | No |

*Noted By: O'Meally-Tully, Veronica Nurse Practitioner 02/01/2018 10:45AM*

Westchester County, NY
*Westchester DOC*
*10 Woods Road*
*Valhalla, NY 10595*

**Medication Order**



| Patient Name | Patient Number | Booking Number | Birth Date | Date Of Service |
|---|---|---|---|---|
| GOMEZ, SANTIAGO | ▓▓▓▓ | 2017004758 | ▓▓▓▓ | 2/1/2018 |

## Order Overview

**Ordered By:** O'Meally-Tully, Veronica on 02/01/2018 10:46AM

| Start Date | Medication | Dose | UOM | Frequency | Durations (Days) | PRN | KOP |
|---|---|---|---|---|---|---|---|
| 2/1/2018 | ibuprofen 200 mg tablet: give 3 tablet PO BID 8AM & 5PM PRN for 7 days. | 3 | tablet | BID 8AM & 5PM | 7 | Yes | No |

*Noted By: O'Meally-Tully, Veronica Nurse Practitioner 02/01/2018 10:46AM*

**Westchester County, NY**
*Westchester DOC*
*10 Woods Road*
*Valhalla, NY 10595*

**Medication Order**



| Patient Name | Patient Number | Booking Number | Birth Date | Date Of Service |
|---|---|---|---|---|
| GOMEZ, SANTIAGO | ▓▓▓▓▓ | 2017004758 | ▓▓▓▓▓ | 2/14/2018 |

## Order Overview

**Ordered By:** Ajaere, Chidiebere on 02/14/2018 09:04AM

| Start Date | Medication | Dose | UOM | Frequency | Durations (Days) | PRN | KOP |
|---|---|---|---|---|---|---|---|
| 2/14/2018 | ondansetron HCl 4 mg tablet: give 1 tablet PO BID 8AM & 5PM for 3 days. | 1 | tablet | BID 8AM & 5PM | 3 | No | No |
| | *Noted By: Ajaere, Chidiebere Nurse Practitioner 02/14/2018 09:04AM* | | | | | | |
| 2/14/2018 | loperamide 2 mg tablet: give 1 tablet PO BID 8AM & 5PM for 2 days. | 1 | tablet | BID 8AM & 5PM | 2 | No | No |
| | *Noted By: Ajaere, Chidiebere Nurse Practitioner 02/14/2018 09:04AM* | | | | | | |

**CCS**

New York
Correct Care Solutions
Medical Services

## Refusal of Treatment

| Patient Name | Patient Number | Booking Number | Status: ☑ Adult  ☐ Juvenile |
| Santiago Gomez | | | Today's Date 2/13/18 |

I, _Santiago Gomez_ have, this day, knowing that I have a condition requiring
(Name of Patient)

medical care as indicated below:

✓ A. Refused medication      ___ F. Refused X-Ray service

___ B. Refused dental care      ___ G. Refused other diagnosis services

___ C. Refused an outside medical appointment      ___ H. Refused physical exam

___ D. Refused laboratory services      ___ I. Other (Please specify) _____

___ E. Refused PPD (Medical Keep Lock)      ___ J. Refused Chest X-Ray (Medical Keep Lock)

     ___ K. Refused HCG

_Loperamide 2mg 1 tab_
_ondansetron 4mg 1 tab_

☐ This Refusal has been completed cell side.

Reason for Refusal _I dont want it_

Potential Consequences Explained:

___ A. Worsening Of Medical Conditions      ___ D. Permanent Disability

___ B. Death      ___ E. Other _____

___ C. Medical Keep Lock

I acknowledge that I have been fully informed of and understand the above refused treatment and the

risks involved in refusing. I hereby release and agree to hold harmless CCS and correctional

personnel from all responsibility and any ill effects which may result from this refusal.

I have read this form and certify that I understand its contents.

Deidreann Harris
Licensed Practitioner

Witness Signature _____

Witness Signature _2/13/18_      Patient Signature

Date _____      Time _8 am_

Received by DOC – PPD/Chest X-Ray Refusals Only

CT118UN0960ACCEN090217
(Westchester, NY)

*0159639P17513PNXN*

*12*

**CCS**

New York
Correct Care Solutions
Medical Services

## Refusal of Treatment

| Patient Name | Patient Number | Booking Number | Status: ☑ Adult ☐ Juvenile |
|---|---|---|---|
| Gomez, Santiago | | | Date of ~~Birth~~  Today's Date: 2/16/18 |

I, _Gomez_   _Santiag_ , have, this day, knowing that I have a condition requiring
(Name of Patient)
medical care as indicated below:

__/__ A. Refused medication
_____ B. Refused dental care
_____ C. Refused an outside medical appointment
_____ D. Refused laboratory services
_____ E. Refused PPD (Medical Keep Lock)

_____ F. Refused X-Ray service
_____ G. Refused other diagnosis services
_____ H. Refused physical exam
_____ I. Other (Please specify)
_____ J. Refused Chest X-Ray (Medical Keep Lock)

_topiramide 2mg 1 tab_
_ondansetron HCl 4mg 1tab_   K. Refused HCG

☐ This Refusal has been completed cell side.
Reason for Refusal _____ Pt states "I dont want it"

Potential Consequences Explained:

__/__ A. Worsening Of Medical Conditions
_____ B. Death
_____ C. Medical Keep Lock

_____ D. Permanent Disability
_____ E. Other

I acknowledge that I have been fully informed of and understand the above refused treatment and the

risks involved in refusing. I hereby release and agree to hold harmless CCS and correctional

personnel from all responsibility and any ill effects which may result from this refusal.

Coldreann Harmic
I have read this form and certify that I understand its contents.
Licensed Practical Nurse

Witness Signature _____

Witness Signature _____

Date _____ 2/16/18

Received by DOC – PPD/Chest X-Ray Refusals Only

Patient Signature _____

Time _____ 8 am

CT116UN0960ACCEN090217
(Westchester, NY)

# Exhibit 4

# Westchester County Department of Correction

# INMATE HANDBOOK

# RULES AND REGULATIONS

EFFECTIVE DATE: 07-15-2016

# Contents

Section I      General............................................................................Page 2

Section II     Cells / Living Area.......................................................Page 4

Section III    Tuberculosis Testing Program....................................Page 6

Section IV     Inmate Funds.............................................................Page 6

Section V      Commissary / Phone Calls.........................................Page 7

Section VI     Visiting.......................................................................Page 8

Section VII    Funeral / Deathbed Visits..........................................Page 9

Section VIII   Mail.............................................................................Page 9

Section IX     Religion......................................................................Page 10

Section X      Packages....................................................................Page 10

Section XI     Law Library.................................................................Page 14

Section XII    Recreation..................................................................Page 16

Section XIII   Miscellaneous...........................................................Page 16

Section XIV    Grievance Procedure.................................................Page 16

Section XV     DNA Testing...............................................................Page 18

Section XVI    Programs....................................................................Page 18

Section XVII   Conditional Release....................................................Page 19

Section XVIII  Work...........................................................................Page 21

Section XIX    Drug Testing...............................................................Page 21

Section XX     Discipline....................................................................Page 22

Section XXI    Sexual Abuse..............................................................Page 29

Section XXII   Good Time Behavior Allowances.................................Page 32

Inserts.....................................................................................................Page 33

# INMATE RULES & REGULATIONS

## I. GENERAL

1. Violations of any rules may result in disciplinary action.

2. Smoking is prohibited in all areas of the Facility.

3. All orders, directives or instruction from Correctional Staff must be promptly obeyed. Refusal will result in disciplinary action convened under the Inmate Disciplinary Code.

4. Whenever you are in the same area as the Emergency Response Team (ERT), you are to lean face forward against the wall with hands interlocked behind your head. Or if directed to you are to kneel down, cross your legs and interlock your hands behind your head. If unable to kneel due to an alleged injury, advise the Emergency Response Team and promptly obey all orders given to you.

5. Morning wake-up and lock-out time is at 0700 hours (7:00am) daily.

6. Lock-in for shift change is 1415 hours (2:15pm).

7. Lock-out after shift change is announced from Central Control once the count is complete and correct and booking clears the count.

8. Evening lock-in is 2200 hours (10:00pm) and lights-out is 2300 hours (11:00pm) daily.

9. Meal times are as follows: Breakfast is served between 0500 and 0900 hours (5:00am and 9:00am); Lunch is served between 1100 and 1400 hours (11:00am and 2:00pm); and Dinner is served between 1600 and 1900 hours (4:00pm and 7:00pm).

10. After the Block Officer determines the daily inspection and cellblock to be satisfactory, the block officer may grant dayroom and/or recreation privileges.

11. Inmates in need of medical attention may advise the Block Officer and must complete a **Medical Request Form.** Completed Medical Request forms are placed by the inmate in the box provided. If there is a medical emergency, contact an officer immediately.

12. All inquiries and requests must be directed, in writing, and addressed by name and title to the intended recipient. Such requests will be printed clearly and given to the Block Officer or placed in the mailbox.

13. All inmates must be clean and neat in appearance. Inmates will not be permitted outside cell/block unless fully dressed, i.e., shoes, shirts and authorized clothing. Pants are to be worn at the waist.

14. When moving through the Facility, inmates are to stay to the **right hand side in single file and are NOT to wear "walkmans".**

-2-

15. Yelling in the hallways or from your housing area is NOT permitted.

16. Criminal violations of law will be prosecuted.

17. Violation of the disciplinary code of the Department of Correction will result in disciplinary action.

18. Upon discharge and/or transfer to another facility, any and all property remaining in the custody of Westchester County after thirty (30) days, will be disposed of subject to applicable law.

19. Inmates may NOT transfer ownership of property, either by sale or gift, without WRITTEN PERMISSION from the Deputy Commissioner (D/C) of Operations.

20. Laundry Services are provided. Inmates may request laundry bags from the Block Officer for cleaning of personal clothing (underwear, t-shirts, socks, etc.). The filled laundry bag is to be tied to prevent loss of clothing articles. No Facility owned items (sheets, blankets, uniforms, sneakers, etc.) are allowed in the laundry bags. See the Block Officer for the laundry schedule.

21. The Department will issue, upon written request, two (2) pairs of socks, two (2) underwear and two (2) t-shirts (females may also request two (2) bras) to each inmate at admission and every ninety (90) days thereafter. "Clothing Request" forms are available in the Housing Units.

22. The wearing of any type of Headwear in the facility is generally prohibited. The exceptions will be as follows:

a. Pre-approved religious headwear.

1. Small close fitting religious headwear, such as yarmulkes and kufis, are permitted to be worn throughout the facility however they are subject to periodic search at any time by staff.

2. Large shapeless and/or loose fitting religious headwear is restricted to housing areas and during congregate religious services.

b. Kitchen workers may wear approved hygienic white caps in the Kitchen; or

c. Outside work details may wear approved caps at work and in transit to or from work.

23. Any foreign nationals shall be free to communicate with consular officials of their nation. Consular officials shall be free to visit, converse and correspond with any foreign national and to arrange for representation in accordance with Department policies.

- 3 -

---



— IMPORTANT NOTICE —

Use of illegal drugs may lead to death or serious illness.

Never take somebody else's medication.

Never take drugs offered to you by other inmates.

Immediately report any medical issues or emergencies to your block officer or a supervisor.

Possession of drugs and other contraband will lead to restriction of visits, arrest and additional jail time.

— NOTICIA IMPORTANTE —

El uso de drogas ilegales pueden causar la muerte o enfermedad grave.

Nunca se debe tomar medicamentos ajenos.

Nunca se debe tomar medicamentos ofrecidos a usted por otros presos.

Por Favor: Reporte inmediatamente cualquier problema o emergencias médicas al oficial del bloque o a un supervisor.

Nota: La posesión de drogas y otros contrabando resultara en restricción de visitas, arresto y encarcelamiento adicional.

- 40 -

Westchester
gov.com

Department of Correction

# New York State Correction Law Section 611 Compliance Notice

In compliance with NYS Correction Law Section 611, this notice is to inform you about the prohibited and limited use of restraints being used upon an inmate who is known to be pregnant.

NYS Correction Law Section 611 provides that:

- No restraints of any kind shall be used during any transport for an inmate who is **known** (not claiming) to be pregnant or within eight weeks after delivery or other pregnancy outcome.

- No restraints of any kind shall be used when such women is in labor, admitted to a hospital, institution or clinic for delivery or recovering after birth.

- A pregnant inmate may be restrained when it is necessary to prevent such inmate from injuring herself, medical or correctional personnel, or others.

- If restraints are necessary then the only restraints that will be used are handcuffs in front of the body.

- No correctional staff shall be present in the delivery room during the birth of a baby unless requested by the medical staff supervising such delivery or by the inmate giving birth.

- This notice shall be issued to all female inmates upon admission, again upon learning that they are pregnant, and shall be posted in any medical area where female inmates are treated.

- If you know or think that you are pregnant, you will need to see medical staff (sick call) so proper documentation can be generated so you are afforded the provisions under this law.

- If you believe that your rights under this law have been violated you may report it to any correctional staff member or you may have your family notify our Special Investigations Unit at 914-231-1128 and / or online at http://correction.westchestergov.com

- 39 -

---

24. Inmates are prohibited from obtaining or possessing Uniform Commercial Code (UCC) Lien Documents, UCC financing statements and similar forms. Inmates are also prohibited from obtaining or possessing any documents which contain unauthorized _personal information_ (including, but not limited to, home addresses, home telephone numbers, social security numbers, personal e-mail addresses, photographs or social media information) of any Department staff/vendors/volunteers, or of any judges, jurors, witnesses, informants, prosecutors or their staff. Possession of _personal information_ about immediate family members of a covered person is also prohibited. If an inmate is found to be in possession of these types of documents or information, the items will be confiscated and the inmate may be subject to discipline or possible criminal prosecution. Inmates may use the grievance process to challenge the confiscation or rejection of such materials.

## II.   CELLS / LIVING AREAS

1. Cells / living areas will be swept and mopped daily by 0900 hours (9:00 am) and kept neat and clean at all times.

2. Each day, by 0900 hours (9:00am) inmates must have their cell / living area cleaned and ready for inspection. Beds are to be **NEATLY** made with the sheets and blanket tightly tucked under the mattress. All property is to be **NEATLY** stored on the floor, shelves or in the storage bin. (Shoes are the only things that should be on the floor and nothing is to be stored on window sills). Inmates who do not pass inspection are subject to disciplinary action and will be confined to their cell / living area until their area is properly cleaned.

3. No pictures, drawings or markings of any kind are permitted to be drawn on, pasted or glued to cell walls, windows, doors & ceilings. Light fixtures will not be covered or obstructed. Anyone writing graffiti on any wall or county owned property will be prosecuted to the full extent of the law and restitution for altered or damaged property will be charged to inmate accounts.

4. All cell bars, doors and windows will be cleaned daily and kept free of materials (i.e., clothing, papers, cups, books, etc.)

5. **All inmates will perform the cleaning duties of their own cell or dormitory area.**

6. Inmates shall not accumulate garbage or excess items. All garbage and excess item are to be disposed of properly.

7. The following table lists the items and maximum amounts allowed to be stored in cells / living areas:

- 4 -

## ACCEPTABLE CELL ITEMS

| Facility Issued Items | Religious Items |
|---|---|
| (2) Jail Uniforms (Pants and Shirt) | (1) Cross or Medallion – With No Dimension Larger Than 1.5 Inches |
| (1) Sweatshirt (Seasonal) | |
| (1) Pair of Footwear | (1) Soft Cover Religious Manuscript (Bible, Koran, etc.) |
| (1) Mattress (two if requested by medical) | |
| (1) Pillow and (1) Pillowcase (If Pillow is Not Built into the Mattress) | (1) Small Prayer Rug (Approx. 3' X 3') |
| | (1) Head Covering (Kufi, Yarmulke, etc.) |
| (2) Sheets | (1) Rosary Beads (White or Clear Plastic Only) |
| (1) Blanket (Two Seasonal) | |
| (1) Towel | **Toiletries** |
| (1) Storage Bin | Toilet paper |
| (1) Cup | Soap |
| **Clothing** | (1) Toothpaste |
| (1) Pair of Underwear | (1) Comb |
| (8) T-Shirts (White Only – No Pockets) | (2) Face Clothes (White Only – No Full Size or Hand Towels) |
| (8) Pairs of Socks | |
| (2) Sets of Pajamas (No Blue or Black Color – No Draw Strings or Pockets – No Fleece or "Novelties" Such as Cartoon Characters or Sports Logos) | Contact Lenses/Solution |
| | Prescription Eyeglasses (Plastic Frames Only) with Soft Case |
| (2) Sets of Thermals (White or Off – White Only – No Pockets and No Armor Body Type) | **Commissary** |
| | All Approved Items in Quantities Which Indicate Immediate Personal Use. |
| (3) Brassieres (No Under Wire or Padded) – Females Only | **Hobby Materials** |
| | (1) Mascara – Females Only |
| (2) Golf Sized Pencils – Non Retractable, No Metal Eraser Jacket | (1) Eye Pencil / Shadow – Females Only (No Mirrored Compacts) |
| | (1) Drawing Pad (No Spiral Bindings or Other Metal Fasteners) |
| **Reading / Writing Material** | |
| (5) Books (No Hard Covers) | (12) Colored Pencils (Non-Retractable – Golf size only – No Crayons or Magic Markers) |
| (5) Magazines or Journals*** | |
| (7) Newspapers (Subject to Censorship) | **Miscellaneous** |
| | (1) Walkman Type AM/FM Radio (Factory Sealed) No Metal or Oversized Headphones, Clock, Antenna, Cassette Player, Recording Capability or External Speaker |
| (2) Soft Pens | |
| (1) Writing Pad | |
| (12) Envelopes (Blank or with Printed Postage. No Stamps) | (1) Pair of Sneakers (Sneakers worn upon admission are allowed except for all Nike and New Balance brands or any type with "Bubbles") |
| | (1) Pair Shower Slippers (No Velcro, Gel, Air Bubbles or "Crocs") |
| | (1) Nightgowns (No Blue or Black Color – No Draw Strings – No pockets) – Females Only |
| | (1) Bathrobe (No Blue or Black Color, No Pockets and No Sash) – Females Only |
| | (22) Personal Photos (No Polaroid's or Explicit Photos) |
| | (12) Greeting Cards |

\*\*\* Any printed materials that include technical references to locking devices, bomb making, firearms, improvised weapons, knife fighting, revenge, harassment, or any criminal activity is prohibited. Also, any printed material or explicit pictures alluding to or depicting pedophilia, sexual intercourse, sodomy, or deviant sexual practices is subject to censor by the Chief Administrative Officer (CAO). The CAO shall provide a written explanation for the censoring.

---

# BE SURE
# BE TESTED! BE CURED!

The Health Services Department at the Westchester County Department of Correction offers examination and treatment for sexually transmitted diseases. Some of the illnesses contracted by means of sexual contact and the most common symptoms are:

| SYPHILIS | Genital ulcer, can lead to death if untreated |
|---|---|
| GONORRHEA | Genital discharge, painful urination, infertility in women that have not been treated |
| CHLAMYDIA | Genital discharge, painful urination, infertility in women that have not been treated |

**REMEMBER:** Any of these illnesses can exist without symptoms. If you have a history of sexual contact without protection, an evaluation is recommended. If you want to have an examination to screen for sexually transmitted diseases, (not including the AIDS or infection caused by the virus HIV), please fill out the space below and deposit in the Medical Sick Call Box.

We also offer HIV / AIDS testing. To get tested for HIV / AIDS, fill out the DOH – State of NY Dept of Health form included in this handbook.

NAME:

JID#:

LOCATION:

SYMPTOMS:

SIGNATURE:                          DATE:



# STATE OF NEW YORK
## DEPARTMENT OF HEALTH

Metropolitan Area Regional Office   145 Huguenot Street   New Rochelle, New York 10801

Antonia C. Novello, M.D., M.P.H.
Commissioner

Dennis P. Whalen
Executive Deputy Commissioner

## ANONYMOUS HIV COUNSELING AND TESTING IS AVAILABLE FOR INMATES

X   Services are provided by HIV counselors from the New York State Department of Health (DOH).

X   You decide whether or not your test result will go into your medical record.

X   The HIV counselor will answer your questions about HIV/AIDS.

X   You can choose a rapid finger stick blood test, a standard blood test or an oral fluid test. The rapid test result is available at the end of the counseling session.

X   Services are available in English or Spanish.

X   If you would like an HIV test, or want to speak with an HIV Counselor, complete this form, fold it and write NYSDOH on the outside. The form should be placed in the sick call box or returned to a NYSDOH Counselor.

A NYSDOH counselor will schedule an appointment to speak with you privately and your name will be placed on a medical call-out.

**PLEASE PRINT**

Name: _____

ID: _____   Housing Location: _____

Facility: _____   Date: _____

Check here if you want a Spanish-speaking counselor: ☐

Date received by DOH: _____

Westchester County Correctional Facility

- 37 -

## III. TUBERCULOSIS TESTING PROGRAM

1. Due to an increased risk for Tuberculosis in the community at large, the Department of Correction has established a testing program for this disease.

2. Tuberculosis can be spread in the same way as the common cold or the Flu.

3. To help insure the good health of everyone in the facility, you will be required to allow a member of the medical staff to inject a small amount of fluid under your skin. This is a relatively painless process.

4. After two or three days, you will be called to the clinic and the area injected will be examined by medical staff.

5. If there is no reaction, no further action will be required.

6. If there is a positive reaction, arrangements will be made for a chest X-Ray to determine if you have an active case of Tuberculosis.
   a. If the X-Ray is positive, treatment and medication will be given immediately.
   b. If the X-Ray is negative, you will be given instructions for annual checkups.

7. If you choose not to be tested, you will be confined to your cell until you agree to submit to the test. Your cooperation with this program is appreciated.

## IV. INMATE FUNDS

1. Any cash or money orders received from a visitor or through the mail will be deposited into the inmate's account.

2. The inmate will receive a receipt indicating who deposited the money and the amount.

3. Money can be mailed out upon written request using "Request to Mail out Funds from Inmate's Account", forms available on the Housing Units.

4. Upon discharge from the Facility or the courts, any money remaining on an inmate's account will be turned over in the form of a debit card. This card can be used at any ATM or retail location.

5. The envelope containing the card includes an insert explaining transaction charges and the Personal Identification Number (PIN). Do not lose or throw away the PIN, it is required for all transactions.

6. Inmates released to New York State Department of Corrections will have their funds forwarded to Downstate (males) or Bedford (females).

7. Inmates released to other facilities must write the cashier requesting their funds be forwarded and provide the following information:
   a. Your name;

- 6 -

b. New facility name and address;

c. Current facility ID number; and

d. Westchester County Department of Correction JID number

8. Mail all requests for funds to:

> Westchester County Department of Correction Cashier
> Headquarters Division
> P.O. Box 389
> Valhalla, New York 10595

## V.   COMMISSARY / PHONE CALLS

1. An inmate commissary is operated by a private vendor, for the purpose of making available for sale to all inmates, items deemed proper and consistent with the health and welfare of inmates and the security of the facility.

2. Inmates are prohibited from giving or "selling" their commissary to each other unless approved by the D/C of Operations or designee.

3. Inmates with money in their account may fill out and submit commissary slips 2 times a week (Sunday for Tuesday delivery and Wednesday for Friday Delivery). Order forms are available throughout the Facility. Purchases are limited to a maximum amount of seventy five (75) dollars per order.

4. Purchases are deducted from your inmate account.

5. Properly completed commissary slips will be collected each Sunday and Wednesday.

6. Each Wednesday, indigent inmates (those with less than $ 3.00 in their account) may fill out a commissary slip requesting an 'indigent package' for Friday delivery.

7. Commissary complaint forms are available in the event of a discrepancy.

8. Once a commissary bag is opened by the inmate, no returns or complaint forms will be honored.

## PHONE CALLS

1. Phones are available daily on a first come first served basis during all lock out periods with the following exceptions: emergency conditions, meal periods, institutional counts, housing unit clean-up/sanitation periods and 15 minutes prior to end of shift lock in.

2. All inmate telephone conversations (except for attorney or legal counsel) are **subject to electronic monitoring by department personnel. Your use of institutional telephones constitutes consent to this monitoring.**

3. All calls must be made collect.

4. Assistance for Legal Aid calls shall be directed to the Block Officer.

- 7 -

---

<div style="border:1px solid">

## HABITS TO AVOID
## SPREAD OF MOST INFECTIONS



➜ Do not share soap, toothbrushes, water bottles, combs, or hairbrushes.

➜ Do not share linens - bed sheets, pillows, pillowcases, towels, or clothing.

➜ Do not share skin creams, ointments, lotions, deodorants, antibiotic creams.

➜ Keep cells and common areas clean.

➜ Clean off any surfaces shared with others such as weight benches.

➜ Use a towel or shirt as a barrier between your bare skin and exercise equipment.

➜ Do not pick, scratch or squeeze pimples or boils.

➜ Never touch another person's wounds or infected skin.

➜ Be aware of any wound that is not healing properly or looks unusual and seek medical attention.

➜ Wash your hands with soap and warm water if you believe you have touches any infected areas.

➜ Sign for sick call if you feel you have a skin infection of any kind or a 'spider bite".

➜ Keep wounds or cuts covered with dry, clean bandages, especially those with pus.

➜ **A L W A Y S** wash your hands with the following activities:
- ♦ Before and after eating
- ♦ After playing in the gym
- ♦ After recreation
- ♦ After using the bathroom
- ♦ After general clothing
- ♦ Anytime your hands are dirty

**REMEMBER:**
Personal hygiene measures such as hand washing and daily showers are the surest methods to prevent spread of infection.





- 36 -

</div>



# WESTCHESTER MEDICAL CENTER
## CORRECTIONAL HEALTH SERVICES

### ORAL HYGIENE INSTRUCTIONS

Daily brushing and cleaning between your teeth with floss are important to your dental health because they remove plaque. Plaque is a thin, colorless, sticky film that constantly forms on your teeth. When you eat foods containing sugars and starches, the bacteria in plaque produce acids, which attack tooth enamel. The stickiness of the plaque keeps these acids in contact with your teeth, which can lead to a cavity.

If plaque is not removed with daily brushing and flossing it eventually hardens into calculus (tartar). As the calculus forms near the gum line your gums become red, irritated and may bleed.

Along with daily brushing and flossing, avoid all tobacco products. Don't use your teeth to open bottles, bite fingernails, hold nails or forks, or cut string or wire.

### HOW TO BRUSH YOUR TEETH
1. Use a soft bristle toothbrush and a toothpaste containing fluoride.
2. Hold the toothbrush just under the gum line at a 45-degree angle.
3. Gently remove the toothbrush with short strokes about two inches in an up and down (or circular) motion, starting at the gum line.
4. Brush all surfaces of each tooth; outer surface, inner surface and chewing surface.
5. Use the toe of the toothbrush for the inner front tooth surfaces.
6. Brush your tongue.
7. Rinse your mouth with water.

### HOW TO FLOSS YOUR TEETH
1. Use about 18 inches of floss.
2. Wrap most of the floss around the middle finger of each hand.
3. Hold about an inch of floss tightly between the forefinger and thumb.
4. Guide the floss between your teeth with a gentle sawing motion. Do not jerk or snap the floss into the gums.
5. Curve the floss into a "c" shape at the gum line.
6. Press the floss tightly against the tooth surface.
7. Gently scrape the side of the tooth moving the floss up and down. Be careful not to injure your gums.
8. Repeat the flossing procedure for each tooth, including the back surface of the last tooth.
9. Use a clean section of floss for each motion.

**Remember, there is nothing a dentist can do which will overcome what a patient will not do.**



- 35 -

Rev: 09/27/06'vj

---

## VI. VISITING

1. The hours of visitation will be 7 days per week between the hours of 9:00am and 4:30pm, scheduled according to the first letter of the inmate's last name:

| Day | | |
|---|---|---|
| Monday | A-C | 9:00am – 4:30pm |
| Tuesday | D-G | 9:00am – 4:30pm |
| Wednesday | H-L | 9:00am – 4:30pm |
| Thursday | M-R | 9:00am – 4:30pm |
| Friday | S-Z | 9:00am – 4:30pm |
| Saturday | A-D | 9:00am – 12:30pm  E-L  1:00pm – 4:30pm |
| Sunday | M-R | 9:00am – 12:30pm  S-Z  1:00pm – 4:30pm |

2. Newly admitted inmates may, upon request, receive a visit during regular visiting hours within the first 24 hours of being processed, regardless of the visiting schedule.

3. Legal and professional visits will be allowed any day of the week between 9:00am and 4:30pm regardless of the inmate's last name.

4. Visitor processing will begin daily at 8:00am and end promptly at 3:15pm. No visitors will be granted access to the facility after 3:15pm. Encourage visitors to arrive early.

5. Visitors must obey the Department's dress code (proper attire and no orange clothing).

6. Inmates will be allowed two one-hour visits per week (only one may be on a weekend).

7. Each inmate will be permitted no more than two (2) visits at any one time.

8. A parent or legal guardian must accompany all visitors under age eighteen (18).

• Male inmates requesting to have their child/children, under the age of 18, visit them with someone other than the child's mother, must have that adult obtain a notarized letter and the child's birth certificate from the mother of the child/children. Once the inmate confirms that the all requirements have been satisfied, the inmate is required to submit a letter to an Assistant Warden for final approval.

• Female inmates requesting to have their child/children, under the age of 18, visit must contact the social workers office of the Women's Unit.

9. Inmates will be searched prior and subsequent to each visit. Refusal to submit to search for any reason will result in denial of the visit and disciplinary action.

10. The one hour visit begins once an inmate sits down at the table. If an inmate needs to use the bathroom during a visit, the time spent in the bathroom counts towards the one hour of visit time (inmates should use the bathroom before or after their visit or in between the one hour visit segments of a double visit). Inmates using the bathroom during a visit or between visit segments are subject to strip search.

11. The inmate will be responsible for the orderly conduct of his visitors, as well as his/her own behavior. Failure to comply with this rule will result in disciplinary action.

12. Inmates may inform visitors and inmates that public transportation is available to them to access the facility for visitation purposes, i.e., Bee-Line Bus Services at 914-813-7777, routes and timetables can be accessed on the web at www.beelinebus.westchestergov.com.

13. Physical contact between visitors and inmates will be limited to a brief embrace and kiss at the beginning and end of a visit, performed under the direct visual observation of a Correction Officer in a designated area of the visiting room. There will be no hand-holding, passing of infants or other physical contact between visitors and inmates permitted at the tables.

## VII. FUNERAL / DEATHBED VISITS

1. Visits **may** be permitted for funeral or deathbed visits of inmate's father, mother, guardian or former guardian, child, brother, sister, husband, wife, grandparent, grandchild, or ancestral aunt and uncle. Deathbed visits may only take place at recognized healthcare facilities.

2. Funeral/deathbed visits will be granted only within New York State, and only after the relationship has been verified.

3. Requests for funeral/deathbed visits must be made, in writing, to the D/C of Operations and Department Chaplain (Department Chaplain will immediately forward such verified requests to the D/C of Operations).

4. The D/C of Operations, pursuant to conditions New York State Minimum Standards Part 7051, will grant or deny visit requests.

5. If the written visit request is denied, the D/C of Operations or designee will inform the inmate in writing. The inmate and/or other person requesting the visit shall be given the opportunity to appeal the decision of the D/C of Operations within 24 hours.

## VIII. MAIL

1. Mail will be delivered and collected daily except on Sundays and Holidays.

2. Inmates are entitled to correspond with person(s) of their choice.

3. Outgoing mail must be sealed by the inmate and placed in the appropriate box.

4. Outgoing mail must bear the sender's name and institutional address in the upper left-hand corner of the envelope.

5. Two Stamped envelopes per week are available to all indigent inmates upon request.

6. Legal and privileged mail will be opened and inspected in the inmate's presence. All other incoming mail will be opened and inspected for contraband before delivery to inmates. Any item received that is written or drawn in crayon will be considered contraband.

7. Any correspondence from consular officials to any foreign national shall be delivered without delay.

- 9 -

---

# PERSONAL HYGIENE

## General

Close attention to personal hygiene not only protects your health as an individual, but also can give a feeling of well being. Personal hygiene includes appropriate care of the skin, hair, ears, nails, teeth, feet and proper maintenance of personal items.

- **Do not share** personal hygiene equipment (such as brushes, combs, razors, or toothbrushes), or eating utensils.

- Cover your face when coughing, yawning or sneezing.

- Wash your hands! To keep clean and reduce the spread of infection, hands should be washed frequently, especially immediately after using the rest room and before eating. Always wash your hands before touching your face and mouth.

- Keep your clothing and living area clean and orderly.

## Grooming

- Shower with soap and water as often as permitted. Wear a pair of shower shoes to protect your feet from potential infection. When toweling off, make sure to thoroughly dry such areas as between the toes. Cleaning on non-shower days should include armpits and private parts. Deodorant should be applied daily.

- Hair should be shampooed frequently in order to keep your hair and scalp

clean by removing excess oil. Dandruff can be identified as white, flaky, dry skin either on the scalp or around shoulder area. Dandruff can be treated by properly using a specific dandruff shampoo.

- DO NOT, under any circumstances, put anything **including** cotton swabs into the ears. To clean your ears past clean the external portion. Taking a hot shower will help to liquefy ear wax, which can then be washed off with a washcloth.

- Fingernails should be scrubbed daily to remove dirt from under the nail. Toenails should be kept clean and trimmed straight across the nail rather than trimming the nail round to follow the contour of the toe.

- The teeth should be brushed thoroughly after every meal, remembering to reach the far back teeth, using toothpaste and a soft brush. Dentures should be removed at a time, using toothpaste and a soft brush and carefully cleaned with a brush and mild soap or special denture cleanser.

Personal hygiene is the responsibility of each individual. Good hygiene habits prevent disease and illness and improve the general well-being of everyone.

- 34 -

# Inmate Daily Sanitation Responsibilities

| COMMON AREAS: |
| --- |
| Windows, Walls and Vents (clean and free of obstructions) |
| Floors (swept and mopped to include edges and corners) |
| Tables (clean and sanitized) |
| Showers/ Toilets (clean and sanitized; free of mold and mildew) |
| Rec Deck (clean and free of personal items) |
| Garbage Cans (clean and covered) |
| All Closets (clean, neat and orderly) |
| Floor Drains (clean and unobstructed) |
| **INDIVIDUAL CELLS:** |
| Bed Made (sheets and blankets tightly tucked under mattress) |
| Floor (swept and mopped daily; waxed as needed) |
| Walls (clean and free of graffiti / postings) |
| Windows, sills, Vents and Light Fixtures (clean & unobstructed) |
| Clothes Lines Removed |
| Garbage Removed |
| Excess Cell Items Removed (publications, mail, clothing, etc.) |
| All Cell Items Orderly |
| Toilet and Sink (clean and sanitized) |
| Bars (clean, unobstructed and free of personal items) |
| Storage Bin (covered and stowed) |
| Vacant Cells (clean and sanitized) |

## IX. RELIGION

1. The schedule for divine worship gatherings is available in the housing units or through the block officers. Inmates will be allowed to congregate for the purpose of observing such religious activities as religious holidays, etc. with prior approval. Requests will be made in writing, through the Department or Chaplain.

2. Inmates must inform Departmental staff of their religious preference at the time of booking.

3. Inmates may wear and/or possess (1) standard religious medallion or other authorized items. No dimensions of religious medals are to be more that 1-¼ inches.

4. Inmates are allowed to change their religious affiliation, upon application to the appropriate religious authority. The inmate and the appropriate religious authority shall notify the D/C of Operations or designee in writing of such change. Inmates will not be permitted to attend their newly claimed religious affiliation services until such time that it is approved by the D/C of Operations.

5. Recognized dietary laws/requirements will be observed wherever possible.

6. Religious Diets – If an inmate is placed on a medical diet but instead wants the Chaplain approved religious diet, a refusal form must be signed after a discussion with the medical provider.

## X. PACKAGES

1. Each inmate will be permitted **one (1) package every thirty (30) days.** Requests for special packages must be made in writing to an Assistant Warden. The letter must contain what items will be included in the package. Items exceeding acceptable limits will be denied.

2. Packages sent through the mail must have a **return address** and **return postage guaranteed**, or they will not be accepted. **UPS, FedEx, or Express Mail packages will be accepted but not signed for by this Department.**

3. This Department will only accept printed materials directly from the publisher or reputable online vendors (example: Amazon.com, BarnesandNoble.com). This applies to all printed materials received via mail or packages.

4. If a package contains both acceptable and unacceptable items, the acceptable items will be delivered to the inmate. The unacceptable items will be returned to the sender at the intended recipient's expense, destroyed or stored in property until discharge. A 'Return of Unacceptable Items Inmate Notification Form' will be completed and a copy forwarded to the intended recipient.

5. All items received, either in person or through the mail, will be subject to physical, electronic and fluoroscope search.

6. No food items, alcoholic beverages, tobacco products or items the possession of which constitutes an offense under applicable Federal, State or Local laws is allowed. Any item received that is written or drawn in crayon or any article, which is readily capable to constituting a threat to the safety or security of the facility, will not be permitted.

7. Only items listed in the tables below are permitted.

8. Sneakers comparable to those sold in DOC's commissary will be accepted via packages and **must** comply with the following restrictions:

• Only new-in-package Adidas© or Reebok© brand sneakers with a value of sixty dollars ($60.00) MSRP or less. Black or white in color only (including laces).

• No removable inner soles, pockets, air pumps, hollow soles, metal or hard plastic of any kind (arch supports, lace grommets, etc.), gel/air bubbles or after-market inserts (i.e. Dr. Scholl's © inserts or other orthotics).

**NOTE:** The Department reserves the right to refuse sneakers that do not conform to these restrictions. Inmates may only possess one pair of sneakers and one pair of laces at any given time. Additional items will be treated as contraband and confiscated.

9. Packages, money or money orders will only be accepted Monday through Friday at the package window between 9:00 am and 11:30 am and between 12:30 pm and 4:30 pm.

10. Money and money orders only will be accepted at Post-1 between 5:00 pm and 9:00 pm seven (7) days per week.

11. Court, discharge or funeral clothing will be accepted Monday through Friday at the package window between 9:00 am and 11:30 am and between 12:30 pm and 4:30 pm. Existing court clothes must be turned over to a family member or otherwise disposed of before the Department will accept additional clothes.

12. Once all acceptable items are entered into the computer, three (3) copies of the receipt will be printed and distributed as follows:

    a. A copy to person leaving property
    b. A copy to inmate (place in bag before sealing)
    c. A copy for record (for inmate to sign and returned to package room)

13. Court, discharge or funeral clothing receipts will be brought to inmates for their signature on the day the clothing is received.

14. Any person attempting to introduce contraband **WILL BE PROSECUTED.**

Any items an inmate wishes to ship out of the facility shall be packaged by the property officer in the presence of the inmate. All costs for the shipping of items shall be the responsibility of the inmate.

# GOOD BEHAVIOR ALLOWANCES AGAINST DEFINITE SENTENCES AND CERTAIN CIVIL COMMITMENTS

Section 7007.1 Good behavior allowances against definite sentences and certain civil commitments

(a) Every person confined in a local correctional facility serving a definite sentence of imprisonment may receive time allowances as discretionary reductions of the term of sentence, as provided by law.

(b) Every person confined in an institution serving a civil commitment for a fixed period of time, whose release is not conditional upon any act within his power to perform, may receive time allowances as discretionary reductions of the term of his commitment, as provided by law.

(c) Recordkeeping rules and regulations—good behavior allowances.

(1) In conjunction with the maintenance of other records and accounts as required by law, a written record shall be kept of every person confined in a local correctional facility who may be eligible to receive a discretionary reduction of a definite sentence or sentences, or who may be eligible to receive a discretionary reduction of the term or terms of civil commitment by reason of the application of good behavior allowances.

(2) The record shall indicate the manner in which the discretionary good behavior allowances were calculated and applied to the term of the sentence, sentences, or civil commitment imposed by the court, to establish the date of discharge.

(3) Whenever such good behavior allowance or any part thereof is withheld, forfeited or cancelled in whole or in part, or whenever such good behavior allowance or any part thereof is restored, a notation to that effect shall be entered in the record with a suitable explanation for the action taken.

(4) Upon commencement of any definite sentence or civil commitment, the term of which is not conditional upon any act within the subject's power to perform, the provisions of this section shall be furnished to the inmate serving such sentence or civil commitment and the meaning of the same shall be fully explained by an officer designated for such purpose, and such inmate shall be required to acknowledge in writing that such explanation was made.

(5) The information required to be maintained by this section shall be a public record. It shall be kept on file in each local correctional facility and shall be delivered to the succeeding officer, by the officer in charge.

7. Stay in assigned areas of the institution.

8. Choose your associates wisely.

9. Trust your instincts. If you sense that a situation may be dangerous, it probably is. If you fear for your safety, report your concerns to staff.

10. Follow the Inmate Rules.

## Package Items permissible for Male Inmates

| Toilet Articles | Hobby Materials |
|---|---|
| Contact Lenses and Solution (Sealed Packages Only) | (1) Drawing Pad (No spiral Binding or Other Metal Fasteners |
| (1) Prescription Eyeglasses (Plastic Frames Only) | (12) Colored Pencils (Non-Retractable - Golf size only) No Crayons or Magic Markers |

| Clothing / Linen | Miscellaneous |
|---|---|
| (6) **White** T-Shirts **No** Pockets **No** Long Sleeves **No** Tank Tops (New in Sealed Packages Only) | (1) Writing Pad (No spiral Binding or Other Metal Fasteners |
| (6) Pr. **White** Underwear (New in Sealed Packages Only) | (12) Envelopes (Blank or Printed Postage Only – No Stamps) |
| (6) Pr. **White** Socks (New in Sealed Packages Only) | (5) Books - Soft Cover Only |
| (2) Sets of Thermals (Tops and Bottoms) White or Off-White Only – **No** Pockets **No** Body Armor Type (New in Sealed Packages Only) | (7) Newspapers (Subject to Censorship) |
| (2) Sets of Pajamas (No Blue or Black Color – No Draw Strings or Pockets – No Fleece or "Novelties" Such as Cartoon Characters or Sports Logos) | (5) Magazines / Journals *** |
| (2) Face Clothes (White Only – No Full Size or Hand Towels) | (1) Pair of Sneakers (New Adidas or Reebok Only - Black or White in Color Only - including laces – No removable inner soles, pockets, air pumps, hollow soles, gel/air bubbles, after market inserts and metal or hard plastic of any kind) |
| | (1) Pair Shower Slippers (No Velcro, Gel, Air Bubbles or "Crocs") |
| | (12) Personal Photos (**No** Polaroid's or Explicit Photos) |

| Religious Items | |
|---|---|
| (1) Soft Covered Book (Bible, Koran, etc.) | (12) Greeting Cards |
| (1) Cross, Medallion or other Regulated Religious Article (No Dimension Larger Than 1.5 Inches) | (1) Walkman Type AM/FM Radio (Factory Sealed) **No** Metal or Oversized Headphones, Clock, Antenna, Cassette Player, Recording Capability or External Speaker |
| (1) Head Cover (Kufi, Yarmulke, etc.) | |
| (1) Small Prayer Rug (Approx. 3' X 3') | (4) Batteries (Any Brand) |

*** Any printed materials that include technical references to locking devices, bomb making, firearms, improvised weapons, knife fighting, revenge, harassment, or any criminal activity is prohibited. Also, any printed material or explicit pictures alluding to or depicting pedophilia, sexual intercourse, sodomy, or deviant sexual practices is subject to censor by the Chief Administrative Officer (CAO). The CAO shall provide a written explanation for the censorship.

## Package items permissible for Female Inmates

| Toilet Articles | Clothing / Linen | Religious Items | Hobby Materials | Miscellaneous |
|---|---|---|---|---|
| (1) Mascara | (6) White T-Shirts No Pockets No Long Sleeves No Tank Tops (New in Sealed Packages Only) | **Religious Items** | (12) Drawing Pad (No spiral Binding or Other Metal Fasteners) | (1) Pair of Sneakers (New Adidas or Reebok Only - Black or White in Color Only - including laces – No removable inner soles, pockets, air pumps, hollow soles, gel/air bubbles, after market inserts and metal or hard plastic of any kind) |
| (1) Eye Pencil / Shadow (No Mirrored Compacts) | (6) Pr. White Underwear (New in Sealed Packages Only) | (1) Soft Covered Book (Bible, Koran, etc.) | (12) Colored Pencils (Non-Retractable - Golf size only) No Crayons or Magic Markers | (1) Pair Shower Slippers (No Velcro, Gel, Air Bubbles or "Cross") |
| (1) Perm / Hair Relaxer Kit (No Lye) | (6) Pr. White Socks (New in Sealed Packages Only) | (1) Cross, Medallion or other regulated Religious Article (No Dimension Larger Than 1.5 Inches) | (1) Writing Pad (No spiral Binding or Other Metal Fasteners) | (5) Magazines / Journals *** |
| Contact Lenses and/or Solution (New in Sealed Packages Only) | (2) Sets of Pajamas (No Blue or Black Color – No Draw Strings or Pockets – No Fleece or "Novelties" Such as Cartoon Characters or Sports Logos) | (1) Religious Head Wrap | (12) Envelopes (Blank or Printed Postage Only – No Stamps) | (5) Books - Soft Cover Only |
| (1) Prescription Eyeglasses (Plastic Frames Only) | (2) Sets of Thermals (Tops and Bottoms) White or Off-White Only – No Pockets No Body Armor Type (New in Sealed Packages Only) | (1) Small Prayer Rug (Approx. 3' X 3') | (5) Books - Soft Cover Only | (5) Newspapers (No Locals) |
| | (2) Nightgowns No Blue or Black color No Draw Strings No Pockets | | (7) Newspapers (Subject to Censorship) | (1) Walkman Type AM/FM Radio (Factory Sealed) No Metal or Oversized Headphones, Clock, Antenna, Cassette Player, Recording Capability or External Speaker |
| | (2) Nightgowns No Blue or Black color No Draw Strings No Pockets | | (5) Magazines / Journals *** | (4) Batteries (Any Brand) |
| | (3) Brassieres No Under Wire or Padded (White Only) | | (12) Personal Photos (No Polaroid's or Explicit Photos) | |
| | (1) Bathrobe No Blue or Black Color No Pockets No Sash | | (12) Greeting Cards | |
| | (2) Face Cloths (White Only – No Full Size or Hand Towels) | | | |

*** Any printed materials that include technical references to or instructions on locking devices, bomb making, firearms, improvised weapons, knife fighting, revenge, harassment, or any criminal activity is prohibited. Also, any printed material or explicit pictures alluding to or depicting pedophilia, sexual intercourse, sodomy, or deviant sexual practices is subject to censor by the Chief Administrative Officer (CAO). The CAO shall provide a written explanation for the censorship.

- 13 -

## HOW DO YOU REPORT AN INCIDENT OF SEXUAL ABUSE?

It is important that you begin by telling a staff member if you have been sexually abused. You can tell any correctional staff, chaplain, civilian staff member, medical/mental health practitioner, or any other employee. Staff is instructed to keep the reported information confidential and only discuss it with the appropriate officials on a need to know basis. You may also have family members file reports by calling our Special Investigation Unit 914-231-1128 and/or online at http://correction.westchestergov.com/.

If you choose to first report the abuse or threats in writing, you may write to any correctional staff member, chaplain, civilian staff, medical/mental health practitioner, or any other employee. However, any delay in reporting an incident will make investigating the incident far more difficult. An inmate who feels that he or she has been the victim of sexual abuse should report such occurrence immediately.

## WHAT HAPPENS WHEN YOU REPORT AN INCIDENT OF SEXUAL ABUSE?

All allegations of sexual abuse and retaliation for reporting an incident of sexual abuse or for participating in an investigation of an allegation of sexual abuse will be thoroughly investigated and may also be reported to appropriate law enforcement officials by the Department's Special Investigation Unit. No reprisals of any kind shall be taken against an inmate for good faith reporting of sexual abuse or sexual threats. However, if investigation discloses that a person who knew that the information was false made the allegation intentionally or with malice, he or she may be disciplined or charged with falsely reporting an incident and/or may be subject to disciplinary action (Penal Law § 240.50).

## CONFIDENTIALITY

Information concerning the identity of an inmate victim reporting a sexual assault or abuse, and the facts of the report itself, shall be limited to those involved in the reporting, investigation, discipline and treatment process, or as otherwise required by law. All records associated with allegations of sexual assault or abuse are confidential in accordance with Civil Rights Law § 50-b.

## AVOIDING SEXUAL ABUSE

Here are some things you can do to protect yourself against sexual abuse:

1. Do not permit your emotions (fear/anxiety) to be obvious to others.
2. Do not accept gifts or favors from others. Most gifts or favors come with strings attached to them.
3. Do not accept an offer from another inmate to be your protector.
4. Find a staff member with whom you feel comfortable discussing your fears and concerns.
5. Be alert! Do not use contraband substances such as drugs or alcohol; these can weaken your ability to stay alert and make good judgments.
6. Be direct and firm if others ask you to do something you don't want to do. Do not give mixed messages to other inmates regarding your wishes for sexual activity.

- 30 -

## XXII. SEXUAL ABUSE:

CONSISTENT WITH THE LAW, THE DEPARTMENT MAINTAINS A ZERO-TOLERANCE POLICY REGARDING SEXUAL ABUSE AND SEXUAL HARASSMENT. IF YOU HAVE BEEN SUBJECTED TO ANY OF THESE ACTS WHILE IN THE DEPARTMENT'S CUSTODY, PLEASE NOTIFY CUSTODIAL OR MEDICAL STAFF IMMEDIATELY.

The Department will not tolerate sexual abuse. **All sexual conduct, including sexual contact, is against the Department's rules.** All allegations of sexual abuse or of retaliation in connection with an incident of sexual abuse will be thoroughly investigated, and any sexual predator will be disciplined and/or prosecuted.

### ABOUT YOUR SAFETY

**You have the right to be safe from sexual abuse.** No one has the right to pressure you to engage in sexual acts. You do not have to tolerate sexual abuse or pressure to engage in unwanted sexual behaviors. If you are being pressured, threatened or extorted for sex, you should report this to staff. You should also report any retaliation you believe occurred due to reporting an incident of sexual abuse or for participating in an investigation of an allegation of sexual abuse.

### DEFINITIONS

Inmate-on-Inmate Sexual Abuse – when one or more inmates engage in sexual conduct, including sexual contact, with another inmate against his or her will or by use of threats, intimidation or other coercive actions.

Staff-on-Inmate Sexual Abuse – when an employee, volunteer, intern or outside contractor engages in sexual conduct, including sexual contact, with an inmate.

### WHAT TO DO IF YOU ARE ASSAULTED

If you become a victim of sexual abuse, you should report it immediately to staff, which will offer you immediate protection from the assailant and will refer you for a medical examination and clinical assessment.

Assistance will be provided regardless of whether or not you name the responsible inmate(s) or staff member(s), however, specific information may make it easier for staff to help you.

Even though you may want to clean up after the assault, it is important to see medical staff BEFORE you shower, wash, drink, eat, change clothing or use the bathroom. Medical staff will examine you for injuries which may or may not be readily apparent to you. They can also check you for sexually transmitted diseases and gather physical evidence of assault.

The individual or individuals responsible for sexually abusing or assaulting inmates can only be disciplined and/or prosecuted if the abuse is reported.

- 29 -

## XI. LAW LIBRARY

The Facility maintains 9 individual law libraries. The main library is located in the Old Jail (open 1-9pm); the New Jail has one each on the 2nd, 3rd and 4th floors (all open 9-11am, 12-2pm and 5-9pm); one is located in the Women's Annex (open 3-9pm) and there are four throughout the Pen (all open 5-9pm). Each library is open 5 days per week, Monday through Friday. Hours, as well as Policies and Procedures, are posted in each Library.

1. The Law Library contains all the legal reference materials mandated by Correction Law § 45(6) (15).

2. New York State Commission of Correction Minimum Standards is posted in each Law Library.

3. All libraries are equipped with computer terminals loaded with DVD's that contain current legal reference materials sufficient to pursue basic legal research. Additional materials include legal reference books, typewriters, access to photocopying, pencils and paper.

4. Inmates are allowed to discuss legal matters, exchange personal legal materials (with written consent) and assist one another in the preparation of legal documents. Each library has an inmate trustee assigned to assist other inmates with legal issues in his/her assigned library.

5. By request, a Notary Public is available within one business day to notarize inmate's legal documents.

6. All questions regarding Law Library Policy and Procedure can be directed to the Law Librarian.

7. To access law library materials, inmates **must** follow the procedural steps outlined below:

   a. Access to each library is made by signing up on a sign-up sheet maintained by the Officers in each Block and Core.

   b. Inmates can sign up daily with the Block and Core Officers in their housing unit.

   c. Inmates who are listed as long as necessary to complete their legal work, provided others are not waiting for access. When there is a waiting list for the library, or inmates find themselves on a non-association list together, they will be rotated in and out of the library in equal fashion.

   d. Inmates who are not permitted to leave their cells can request legal reference materials by filling out the designated request forms kept by their Block and Core Officers. Those requests will be sent to the Law Librarian, who will respond within a reasonable amount of time.

   e. Inmates needing Notary services may sign-up on the Notary Request Forms that are kept in each Library. The Inmate Trustee is responsible for sending the Notary Request sign-up sheet to the law librarian, on a daily basis.

- 14 -

f. Inmates who are unable to leave their cells can sign up for Notary on the designated sign-up sheets, which are kept by their Block or Core Officers. These sheets are sent to the Librarian on a daily basis.

g. All requests for assistance from the Law Librarian must be made in writing, on the forms provided and posted in each library. These request forms are then sent to the Librarian's office through the jail's in-house mail. Inmates can request copies of cases or any information that is not available on DVD's or in books.

h. For inmates not able to leave their cells, the same request forms must be completed and are available from their Core and Block Officers. These requests are sent to the Law Librarian who will respond within a reasonable amount of time.

i. All copies made will be charged at $.10 per page and deducted from an inmate's account. After filling out the appropriate form, indigent inmates may only request copies at no charge, of materials not available in the law library. (Cases / statutes contained on the computer or in the legal reference books in the library will not be copied for free)

j. The Law Librarian visits each of the libraries on a regularly scheduled basis to notarize, return requests, respond to inmate questions, and provide other assistance where needed. The librarian's schedule is posted in each library.

k. Any inmate who is found to have intentionally damaged any legal reference materials or supplies, available in or from the Law Libraries, may be subject to disciplinary action including restitution.

l. Any other questions concerning the law libraries or legal reference materials should be directed to the Law Librarian.

8. New York State Courts Electronic Filing (NYSCEF)

a. As of March 1, 2011, all documents in Commercial Division and Tort cases in Westchester County must be filed and submitted using the **New York State Courts Electronic Filing (NYSCEF)** system. To use this system you need a computer with internet access. Because inmates do not have access to an internet connection, they are eligible to opt out of NYSCEF.

b. To opt-out, there are two (2) forms inmates are required to attach to their legal documents.

1.) A **NOTICE OF OPT-OUT FROM PARTICIPATION IN ACTION SUBJECT TO MANDATORY ELECTRONIC FILING** (EFM-2) must be attached the first time documents are sent to the Court for filing.

2.) A **NOTICE OF HARD COPY SUBMISSION—E-FILED CASE** (EFM-3) must be attached to all subsequent documents sent to the Court and all other Parties to the action.

**BOTH FORMS ARE AVAILABLE IN ALL DOC LAW LIBRARIES.**

## Class 4 Infractions:

1. Assaulting another person.
2. Possession of a deadly or dangerous weapon.
3. Possession of a controlled substance.
4. Possession of a controlled medication.
5. Theft from the person.
6. Aggravated disobedience or orders (during an emergency).
7. Interference with a staff members performance or duties or function by physical intimidation, including but not limited to:
   a. Jostling.
   b. Impeding a staff members advance or retreat.
   c. Menacing a staff member.
8. Reporting late from furlough or work release or reporting late for a weekend sentence – over two (2) days.
9. Arson.
10. Extortion, blackmail, protection; demanding or receiving money, personal services or anything of value in return for protection of any kind.
11. Adulteration of food or drinks.
12. Engaging in or encouraging group demonstrations.
13. Throwing or otherwise causing contact between a caustic or malodorous fluid or substance, a food product or by-product, or body fluids or substances, at another person.
14. Tampering with and/or altering an inmate I.D. card.
15. Possession of another inmates I.D. card.
16. Sexual offense or misconduct – including consensual.

## Class 5 Infractions:

1. Killing any person.
2. Causing substantial bodily injury to a Correction Officer.
3. Causing substantial bodily injury to any other person.
4. Assaulting another person with a weapon.
5. Escape.
6. Sexual offense carried out by coercion or forcible compulsion.
7. Taking of a hostage or hostages.
8. Rioting.
9. Inciting a riot.
10. Attempted escape – using a hostage, weapon or what appears to be a weapon.

## ATTEMPTS

Except otherwise stated, or when an attempted infraction constitutes an obviously different completed infraction, the attempt shall be heard in the same class and title as the completed infraction.

## Class 3 Infractions:

1. Fighting with another person.
2. Menacing while is the possession of what appears to be weapon.
3. Disorderly conduct: Includes:
   a. Unreasonable noise
   b. Abusive or obscene language or gesture
   c. Disturbing a lawful assembly
   d. Congregating with other inmates and refusing to comply with a lawful order to disperse and/or lock in
   e. Committing any act that causes inconvenience, annoyance or alarm
4. Attempted escape without the use of a hostage or a weapon.
5. Possession of a fermented liquid.
6. Possession of any contraband.
7. Theft – not from the person.
8. Possession of stolen property.
9. Forgery.
10. Refusal to perform an assigned task or to lock in for the count.
11. Being absent during an official count.
12. Interference with a staff member's performance of duties by oral intimidation.
13. Returning late from furlough or reporting late for a weekend release – over four(4) hours and less than two(2) days.
14. Unauthorized use of a security telephone.
15. Attempted arson
16. Destroying, altering or damaging county Property or the property of another person(s).
17. Tampering with, destroying, or rendering unusable any locking device or security equipment.
18. Any other violation of furlough or work release conditions.
19. Filing or making a false written or signed report, statement, deposition, or instrument.
20. Giving or offering items of value to staff.
21. Indecent exposure.
22. Aggravated disrespectful language or conduct towards other person, including:
    a. Engaging in a course of conduct or repeatedly committing acts which alarm or seriously annoy such other person and serve no legitimate purpose
    b. Stalking
    c. Conduct disrespectful of race, color, religion or national origin
    d. Sexual harassment
23. Creating and/or maintaining a fire, health, or safety hazard.
24. Disobedience of orders.
25. Causing self-inflicted injury.
26. Loss of I.D. card.
27. Failure to attend or participate in an education, vocational or rehabilitation program as assigned.
28. Graffiti: the etching, painting, covering, drawing upon otherwise placing of a mark upon public or private property with intent to damage such property.
29. Refusal to provide sample for drug testing.
30. Testing positive for illegal drugs/substances.
31. Tampering with urine/saliva sample for drug testing.
32. Passing or receiving any items during a visit.

---

c. Criminal cases are not subject to NYSECF. Please be advised however, that a 50-e Notice of Claim is a Civil Tort action and must have the correct opt-out forms attached. If you have any questions about the correct procedure, or need any help with these forms, you must see the Law Librarian before sending any legal documents to the Court. Documents submitted to the Court without the required forms will be returned to the sender and not filed. This may be an issue if your action is subject to a time restriction.

## XII. RECREATION

1. Inmate exercise is conducted daily. See your housing unit officer for schedule and details.
2. Food or liquid containers will not be allowed in exercise areas.
3. No inmate will be allowed to join the exercise group after the exercise period has begun.
4. Inmates must follow all orders given to them by recreation officers. Failure to comply with orders may lead to termination of your recreation period and/or disciplinary action.
5. All recreation equipment is to remain in the recreation equipment box when not in use and is not to be removed from the exercise area.

## XIII. MISCELLANEOUS

1. Educational and/or Youth Corps programs are mandatory for sentenced minors. Refusal will result in disciplinary action, including possible loss of good time. Interested adult inmates may apply for school, in writing, to the Educational Coordinator or Program Warden.
2. Sentenced inmates will be assessed and assigned to programs according to their needs as well as recommendations from their pre-sentence reports. **Refusal to participate in assigned programs will result in disciplinary action, including possible loss of Good Time.**
3. Television is available daily in dayrooms except during meals, clean up time, administering of medication and lock-in periods. Radios/cassette players can be used with headphones only.
4. Inmate hair care/haircuts are available. All inmates are allowed one (1) haircut per month. See your block officer for schedule and details.

## XIV. GRIEVANCE PROCEDURE

1. Grievance forms are available from your Housing Unit Officer and at the Law Library.

2. Whenever possible, complaints will be handled by the Housing Unit Officer informally. The Officer will log your complaint in the Complaint Log and try to resolve it on his/her own. Only Officers can write in the Complaint Log.

3. If the Officer cannot satisfy your complaint he/she will refer it to a Supervisor for resolution.

4. Supervisors will then make every attempt to resolve the complaint at his/her level.

5. If the Supervisor is unable to resolve your complaint, he/she will provide you with a grievance form.

Note: Inmates may request a grievance form at any time and not take part in the informal process. Also in an effort to provide a measure of 'confidentiality to the process, inmates may submit a grievance in a sealed envelope.

6. Grievances must be filed within five (5) calendar days of the incident which gave rise to the grievance. Almost anything can be the subject of a Grievance; however, grievances regarding the following are considered non-grievable issues and will be returned to you:

a. Dispositions or sanctions from Disciplinary Hearings;

b. Administrative Segregation housing decisions;

c. Issues outside the control of the Chief Administrative Officer;

d. Complaints pertaining to an inmate other than the inmate filing the grievance, or

e. A grievance that is too vague to understand or fails to set forth supporting evidence. Failure to supply sufficient evidence within Two (2) days shall be cause to deny the grievance.

7. All Supervisors will function as grievance coordinators and must accept any grievance(s) handed to them by the grievant. Each grievance is to be investigated to the fullest extent necessary by an impartial Supervisor who is not personally involved in the circumstances giving rise to the grievance.

8. Within five (5) business days after receipt of the grievance, the Grievance Coordinator shall issue a written determination specifying the facts and reason for his/her decision. A copy shall be provided to the grievant and the D/C of Operations. The original shall be maintained on file.

9. After receiving the Grievance Coordinator's decision, you have two (2) business days to file an appeal to the Chief Administrative Officer or designee. You cannot appeal a grievance that was found in your favor.

10. Within five (5) business days after receipt of the appeal, the Chief Administrative Officer (from here on known as CAO) shall issue a determination on the appeal and provide a copy to the grievant.

11. If the CAO finds merit, he/she shall direct in writing that appropriate remedies or meaningful relief be provided to the grievant and all others similarly affected.

- 17 -

## REPEAT OFFENDERS

A repeat offender is any inmate who has been previously determined guilty of any infraction of the disciplinary code. Repeat offenders are not entitled to suspended discipline. Repeat offenders of Class 1 infractions may be charged with formal discipline through an Incident Report and Disciplinary Hearing.

## SENTENCING GUIDELINES

The following elements may be considered for sentencing include but are not limited to:

a. Previous disciplinary history;
b. The severity of the elements of the offense;
c. Institutional behavior;
d. Cooperation with the rehabilitation effort;
e. Repeat offender status;
f. The interest of justice;
g. Impact on the victim; and/or
h. Participation in work, educational or drug programs.

The following is a list of conducts that will be punished as violations of the Westchester County Department of Correction rules and regulations. Any inmate convicted of an infraction after a disciplinary hearing will be subject to the punishment set forth in the Discipline Chart.

## INFRACTIONS

**Class 1 Infractions:**
1. Failure to keep one's person or room neat and clean.
2. Disrespectful language or conduct toward other persons.
3. Unauthorized absence from work.
4. Violation of visiting rules.
5. Abuse of telephone privileges.
6. Being out of an assigned place.
7. Littering.
8. Possession of excess issue (clothing, bedding, etc.)
9. Posting items to walls, lights or fixtures.

**Class 2 Infractions:**
1. Menacing without a weapon.
2. Being under the influence of an intoxicant.
3. Gambling.
4. Returning late from furlough or work release, up to four(4) hours late.
5. Violation of smoking policy.
6. Making sexual proposals.
7. Possession of another's property.
8. Tattooing.
9. Providing false information to staff.
10. Possession of any tools or equipment not specifically issued to you.
11. Use of issue items for purposes other than their intended use.

- 26 -

b) Deviant behavior;

c) Where the presence of the inmate would pose a serious threat to life, property, self, staff or other inmates; or

d) The protection of the inmate or others and/or for the safety and security of the institution.

2. Administrative Segregation may also be imposed in the case of an inmate determined guilty of a Class 2 to 5 infraction for as long as the inmate remains confined in the Westchester County Department of Correction.

3. After the imposition of Administrative Segregation, the D/C of Operations or designee shall review the need for continued detention every 7 days for the first two months and at least every 30 days thereafter.

GOOD TIME

Loss of Good Time may be incurred for any infraction as per applicable laws and regulations.

LOSS OF WORK PRIVILEGES:

Once convicted of any infraction, current job assignment (if any) will be terminated. No inmate may hold a trustee position while on Keep Lock status. After serving the sentence of the Board, an inmate may reapply for a position consistent with the current inmate work policy.

LOSS OF VISITATION PRIVILEGES:

An inmate can be denied up to one (1) hour of visitation per week based on the findings of a Disciplinary Hearing. Otherwise, contact visits may be denied, revoked or limited when it is determined by the D/C of Operations that such visits constitute a threat to the safety, security, or good order of the facility.

LOSS OF COMMISSARY OR PERSONAL TELEPHONE CALLS:

These privileges may be taken away or modified for a specified period of time. In the case of inmates being sentenced to confinement sanctions, the sanction shall run concurrently with the inmate's loss of privileges.

RESTRICTION OF PACKAGES

The Department reserves the right to impose a sanction restricting an inmate from receiving a package that may have been delivered to them at the jail. Any package received during the time of this imposed sanction shall be stored by the Department and delivered upon expiration of the restriction.

12. Within three (3) business days of receipt of the CAO's determination, the grievant may appeal to the NYS Commission of Correction through a Sergeant by indicating his/her desire to appeal on the inmate grievance form in the space provided.

13. Within three (3) business days after receipt of the grievant's notice of appeal, the CAO shall mail it to the NYS Commission of Corrections' Citizen's Policy and Complaint Review Council (NYSCCCPCRC).

14. The grievant will be provided with a receipt indicating the date the appeal was submitted to the NYSCCCPCRC.

15. The NYSCCCPCRC shall issue a written determination on the appeal within forty-five (45) business days of receipt. Copies shall be sent to the grievant, the D/C of Operations and the FGC. If the determination is in favor of the grievant, as a matter of law, the chairperson of the NYSCCCPCRC shall direct the D/C of Operations to comply with the grievance and provide an appropriate remedy.

16. If the grievant is released or transferred to another facility prior to resolution, the D/C of Operations shall make a determination according to the requirements of this section and take appropriate action.

17. A FGC shall act as liaison between the grievant, the D/C of Operations and the Commission of Correction in all matters pertaining to the inmate's grievance.

18. If a grievant is non-English speaking or illiterate, the Sergeant, upon request, will ensure that the grievant is assisted in the preparation of the written grievance. A grievant may seek assistance from other inmates in the preparation of his grievance.

19. Any inmate filing a grievance will be protected against reprisals from staff.

XV. DNA TESTING

Pursuant to Executive Law Article 49B, certain convicted offenders must supply samples to the DNA data bank. Inmates who fit the criteria will cooperate with sample collection or face disciplinary sanctions.

XVI. PROGRAMS

The following programs are available to the inmate population. Some programs may be limited to sentenced inmates only. All sentenced inmates will be assessed and assigned to participate in educational, vocational or rehabilitative programs, as their needs demand.

TASC
Treatment Alternatives to Street Crimes
Conditional Release

## COUNSELING PROGRAMS

Pre-Trial Probation Release
"AA" - Alcoholics Anonymous
"NA" - Narcotics Anonymous
Solutions
R.S.V.P.- Resolve to Stop the Violence Project

## ADULT EDUCATION PROGRAMS

Program Job Corps
ABE – Adult Basic Education
G.E.D. – General Equivalency Diploma
Community Worker
Computer Training
English as a Second Language

*Additional Programs are available. Contact the Programs Warden in writing for further information and new programs. Some programs may affect visiting and package policy, ask your block officer for details.

## XVII. CONDITIONAL RELEASE

### a) What is Local Conditional Release (LCR)?

An inmate serving a definite sentence in a local correctional facility may be released earlier than the full service of the sentence. This is called Local Conditional Release (LCR). A local conditional release will be under the legal jurisdiction of the New York State Division of Parole and supervised in the community by a parole officer. The New York State Board of Parole is responsible for determining who may be conditionally released, and when and under what conditions.

### b) Who is eligible?

You are eligible to apply for Local Conditional Release (LCR) if you are serving one, or more than one, definite sentence of imprisonment with a term or an aggregate term in excess of ninety (90) days jail and you have served a minimum period of thirty (30) days (prior to application). You must serve at least sixty (60) days of the term before you can be released. You must agree to all of the release conditions imposed by the New York State Board of Parole and you must agree to any additional release conditions that may be imposed by the parole officer.

### c) Who is ineligible?

Inmates committed to definite terms by Family Court or those inmates serving an intermittent sentence or split sentence are ineligible for local conditional release (LCR) consideration. Inmates required to serve a period of probation, subsequent to release on the definite sentence, are also ineligible for LCR.

12. It shall be the duty of the DHO to inquire into and hear all Class 2-5 infractions and any Class 1 infraction formally filed against inmates. Such inquiries shall take the form of fact-finding hearings. However, the DHO shall not be required to adhere to the rules of evidence. To reach a determination of guilty, the charges must be proven by **Substantial Evidence**.

13. At the conclusion of the hearing, the DHO will make a determination:
   a. That the inmate is not guilty of the infraction(s) charged, or
   b. That the inmate is guilty of the infraction(s) charged

The use of "Plea Bargaining" will not be used in determining guilt or innocence. If the inmate or detainee is determined to be guilty, the DHO may consider case history, previous criminal record, if any, and related material concerning the inmate or detainee. If the inmate or detainee is found not guilty, the disciplinary report is removed from all of his/her files.

14. Disciplinary Sanctions may be suspended for a particular time, not to exceed thirty (30) days. If during this period of time, additional facts are brought to the attention of the DHO substantiating that the inmate is not complying with the standard of conduct, then the suspended discipline may be terminated and the original sanction(s) imposed.

15. Where discipline, other than suspended discipline is imposed, the inmate may appeal the decision of the DHO to the D/C of Operations or designee. The D/C of Operations or designee may reduce or suspend all or part of the sanction, but not increase it. The appeal form is available at the close of the hearing or from the Block Officer.

Once filled out stating your reason for appeal, the form must be submitted within two (2) business days. All appeals will be decided within five (5) business days of receipt of the appeal. Assistance in filing the appeal is available upon request through your Block Officer.

## DISCIPLINE CHART

### CONFINEMENT SANCTION

1. Class 1 infraction (for repeat offenders only), 5 days to 14 days.
2. Class 2 infraction, 7 days to 30 days.
3. Class 3 infraction, 10 days to 60 days.
4. Class 4 infraction, 14 days to 60 days.
5. Class 5 infraction, 21 days to 60 days.

### ADMINISTRATIVE SEGREGATION

1. Administrative Segregation may be imposed for but not limited to the following:
   a) Medical reasons;

The inmate will be given an opportunity to respond to the charges brought against him/her when the sector supervisor interviews the inmate and explains the content of the report (the charges and accusatory statement). The inmate will be given a copy of the charges brought against him and will have at least twenty-four (24) hours to prepare a defense.

5. If an inmate is non-English speaking, illiterate, or for any other reason is unable to prepare a defense, assistance shall be provided to the inmate, upon request. Assistance shall be provided at least twenty-four (24) hours prior to the Disciplinary Hearing. Such assistance may include:

   a. Interviewing witnesses;

   b. Obtaining evidence and/or written statements;

   c. Providing assistance at the disciplinary hearing;

   d. Providing assistance to understand administrative segregation decisions;

   e. Providing assistance understanding the evidence relied on by the hearing officer and reasons for the action taken; or

   f. Providing assistance understanding the waiver of any rights provided by NYSCOC Minimum Standards Part 7006.

6. If the Shift Commander or Supervisor deems it appropriate to place the inmate in temporary confinement pending the Disciplinary Hearing, the inmate will receive a written statement setting forth the reasons for such confinement and will have twenty-four (24) hours to appeal said confinement to the D/C or of Operations.

7. The inmate shall be allowed to be present at his hearing unless the inmate has waived his right to be present or the DHO determines that the inmate's presence will jeopardize the safety, security or good order of the facility.

8. A disciplinary hearing will be held within proper timeframe guidelines, if for unforeseen reasons an inmate is unavailable for a disciplinary hearing the hearing will be held upon his/her return and in a timely manner.

9. A surcharge of up to twenty five dollars ($25.00) per hearing may be deducted from existing or future funds in the inmate's account if found guilty of a charge of misbehavior in addition to sanctions imposed by the Hearing Officer.

10. If found guilty of destroying, altering or damaging County Property, or the property of others, restitution for the damage or loss will be made from existing or future funds in the inmate's account.

11. Restitution, not to exceed one hundred dollars ($100.00), for facility expenditures related to the medical treatment of facility staff may be deducted from existing or future funds in the inmate's account by the DHO if found guilty at the Disciplinary Hearing in addition to sanctions imposed.

d) **How to apply for Local Conditional Release (LCR)?**

You must fill out a written application for local conditional release and submit the completed application to the New York State Division of Parole. An application can be obtained from a designated official at your local correctional facility. You must read the application very carefully and make sure that you fully understand the conditions governing your release and your obligations under supervision. If you are determined to be eligible for consideration, an officer from the Division of Parole will interview you at your facility.

You must be prepared to fully participate in the interview with the officer and you will be required to provide answers to questions from the officer, and you must also provide court documents, probation records, and criminal history information upon request. If the officer approves your LCR application, the application will be submitted for consideration to the New York State Board of Parole. You will be provided with a copy of the Parole Board's decision.

e) **Can I reapply?**

No. If the NYS Board of Parole denies your application for Local Conditional Release (LCR), you cannot reapply during the current definite term of imprisonment.

f) **What are the conditions of release?**

If you are granted LCR, you will be required to agree, in writing, to the local conditional release conditions and you will also be required to agree to any conditions of release imposed by the Board of Parole or your parole officer.

g) **How long will I be under supervision in the community?**

All inmates released to local conditional release (LCR) will be supervised by a parole officer and will remain under the jurisdiction of the New York State Division of Parole for a period of one (1) year from the date of release. The supervision maximum expiration date is one year from the actual release date.

h) **What will I be required to do under supervision?**

You will be required to report to your parole officer, in person, on a regular basis. You can expect to make office reports on a weekly basis. Your parole officer will make unannounced visits to your residence and place of employment. These visits will occur during the morning hours, evenings, nights and weekends. You will be required to pay a monthly supervision fee of thirty dollars ($30.00) while under supervision.

Your person, residence, and property will be subject to search and inspection by your parole officer. You will be required to remain within the boundaries of the county of your commitment or any area defined by your parole officer, and you may not travel outside these boundaries unless you receive prior approval from your parole officer. If you are contacted by or questioned by any law enforcement personnel, you must immediately notify your parole officer. You may not own, possess, or purchase any firearms or weapons of any kind.

You may be required to abide by a curfew and you may be required to submit to periodic drug and alcohol testing. You must also fully comply with any additional conditions of release that may be imposed by the Board of Parole or your parole officer.

If you have been convicted of a sex offense and you are required to register as a sex offender, you must comply with all conditions and requirements of the Sex Offender Registration Act. Also, if you are required to pay court ordered restitution or if there are orders of protection issued against you, it will be your responsibility to satisfy and comply with any order issued by the court.

i) **What if I violate the conditions of my release?**

If a local conditional release is found, after a final hearing conducted pursuant to §259-i (3) of the Executive Law, to have violated a condition of release, the local conditional release, may be returned to the local correctional facility to serve the balance of the sentence time owed (i.e., that portion of the sentence held in abeyance). If there is a revocation of LCR, you will not receive credit for that period of time you spent under local conditional release supervision.

j) **What are the benefits of Local Conditional Release (LCR)?**

You may be released after serving only sixty (60) days of the court-imposed sentence. You will be allowed to complete your sentence obligation in the community setting and have the opportunity to reunite with family and significant others, obtain a job, continue your education, and participate in community based programs. Your parole officer can assist you with the transition to the community by helping you locate a suitable residence, obtain employment, and help you find the services you may need in the community.

## XVIII. WORK

**INMATE WORKERS (TRUSTEES)** - Inmates requesting employment must submit an "Inmate Worker Employment Record List to the Inmate Job Coordinator or Block Officer. Inmate classification and disciplinary records will be utilized in selection of trustees.

## XIX. DRUG TESTING

1. The Westchester County Department of Correction shall conduct drug testing of inmates in its custody to detect use of marijuana, heroin, cocaine and methamphetamine. Drug testing will be performed by random sample or with reasonable suspicion.

**Random Sample:** Testing based on a random list of names generated on a daily basis.

**Reasonable Suspicion:** Testing done to confirm suspected drug use. Judgment based on an inmate's possession of a prohibited substance, observation of unusual behavior or information received.

2. Inmates shall provide a urine/saliva sample, according to the Department's policy and procedures, when they have been notified by custody staff that they have been selected for drug testing.

3. In accordance with policy and procedure, inmates will be allotted 2-hours to provide correctional staff with a urine sample. Failure to provide a sample within the allotted time will result in disciplinary sanctions.

4. It is a violation of the Department's disciplinary code for inmates to test positive for or be found under the influence of illegal drugs/substances.

5. Inmates shall not adulterate or tamper with, or attempt to adulterate or tamper with a urine/saliva sample by adding foreign substances or using a sample from another individual.

6. An inmate who tests positive for a prohibited substance shall be subject to treatment/counseling and sanctions, including disciplinary action and/or reclassification.

## XX. DISCIPLINE

1. An inmate Disciplinary Code is in effect to ensure uniform standards of conduct and discipline, as well as, to provide due process to inmates accused of committing an infraction. Copies of the Code are included herein and available in the Law Library. Ignorance of the Disciplinary Code is not acceptable as an excuse.

2. The Department utilizes both an Informal and Formal Disciplinary Procedure. The less serious class 1 infractions are handled informally. When inappropriate behavior is observed by facility staff the following actions may occur:

   a. The Block Officer records the appropriate information in the block logbook, which will be reviewed and endorsed by a supervisor.

   b. Informal discipline may be immediate action taken by facility staff which does not result in an entry into an official record prejudicial to the inmate contained in the Disciplinary Log Book.

   c. Facility staff may informally address minor rule violations (class 1 infractions) through verbal reprimand, counseling, advising the inmate of expected conduct or confinement in the inmate's own cell for the remainder of the staff member's shift.

3. Repeat violations of class 1 and all class two, three, four and five infractions will be handled on a formal basis and are subject to review by the Disciplinary Hearing Officer (DHO).

4. The Correction Officer will document all violations handled on a formal basis on a Disciplinary Report. Once the Report is completed, he/she will submit it to his/her sector supervisor who will investigate the charges and determine the appropriate action to be taken.

# Exhibit 5





INGREDIENTS: APPLE JUICE (WATER,
JUICE CONCENTRATE), HIGH FRUCTOSE CORN
SYRUP, CORN SYRUP, PECTIN, CITRIC ACID,
POTASSIUM SORBATE (A PRESERVATIVE).
DIST. BY DIAMOND CRYSTAL BRANDS, INC.
SAVANNAH, GA. 31405
© DIAMOND CRYSTAL BRANDS, INC.
S20B1040-01

# POCO
### PAC®
## Apple Jelly

INGREDIENTS: APPLE JUICE (WATER, APPLE
JUICE CONCENTRATE), HIGH FRUCTOSE CORN
SYRUP, CORN SYRUP, PECTIN, CITRIC ACID,
POTASSIUM SORBATE (A PRESERVATIVE).
DIST. BY DIAMOND CRYSTAL BRANDS, INC.
SAVANNAH, GA. 31405
© DIAMOND CRYSTAL BRANDS, INC.
S20B1040-01

# POCO
### PAC®
## Apple Jelly



# CORRECT
# Choice ™
## PEANUT BUTTER

INGREDIENTS: Roasted Peanuts, Dextrose, Salt, Hydrogenated
Vegetable Oil (Rapeseed, Cottonseed, and/or Soybean Oils)

**Allergen Statement: Contains Peanuts**

Distributed by Correct Choice, Inc.
Darien, IL 60561
1 oz. (28.3g)   Manufactured in the U.S.A.

# CORRECT

# Exhibit 6

November 11, 2017

Santiago Gomez, 173518
4sw #9  New Jail

To: Aramark Food Service Director
    Manual Mendoza
    W.C.D.O.C.


Re: Food Quality at W.C.D.O.C.



Dear Mr. Mendoza,


    I write this letter to you seeking your help urgently. The
Kosher meals being provided to me have been arriving either rott-
en (salads), stale or molded breads, missing items or with in-
sects. Today I found a large fly within my salads after already
eating most of it.

    The Fruit in my bag seems to always arrive mushy or beat up
and I'm always missing peanut butter or jelly.


    Its my understanding that Kosher meals are being prepared
in a separate area from where the general meals are made thus
the inmate handler is under No supervision during the preparation
period. I'm requesting that you supervise the preparation of
Kosher meals.


    I was informed that my meals are arriving in this condition
because Donna Blackman, is promoting negative comments about
me with regard to my previous lawsuit against Aramark (she was
named as a defendant). I'm requesting that this retaliation stops
as neither of you were named in said lawsuit.  I'm only complan-
ing about what I'm suppose to receive. I'm sorry that I don't
eat insects, undercooked foods, rooten salads or stale bread.
Most of the time I can't even make a peanut butter and jelly
sandwich because the bread is stale and/or molded.

My Kosher meals always arrive with my name, housing location and it makes retaliation possible. Moreover, its evident that my meals are being tampered with, now please stop it.

I would greatly appreciate it if you could statrt enforcing proper food temp. as food is arriving cold from sitting in the basement tunnel prior to its long journey to the new jail, and then pick up for distribution.

Also, can you please supervise meal portions, as meals continue to arrive with minimum portions, and or fail to issue items that come with the meals, as the meal is already minimal, this is tourture through starvation and cruel.,espec-ially for indigent inmates such as myself.

Furthermore, Can you check quality of foods, and inspect meal trays as most are cracked and are hoadering rotten water that seeps out and smells awful. In addition, Can you ensure that workers are wearing gloves, hairnets, etc. as inmates continue to find human hairs in their food.

Lastly, The juice containers have mold.

<u>Question</u>:  Can you inform me why Kosher meals have been reduced so severely? Why did Quaker Oatmenat, Cheese Packets, Celery, Onions, Sardines, Lunch My own Meal tray become obsolete without replacements, and now the same meals are being offered without a variety?

It seems as though being Jewish is a punishment, especially, since other religions are being provided varity of adequate foods [although their meals are improperly undercooked etc.]

Please respond Thank You.

PS: Please take me off the Kosher Diet.

Respectfully submitted,

Santiago Gomez,   173518

# Westchester Department of Correction
## Statement Form



**I Make This Statement Freely and of my Own Accord (Print Name & Statement):** In or around Nov. 21, 2017, I filed a change of religion request form. In or around Nov. 25, 2017 I was interviewed by Father Jude with regard to my request. I informed Father Jude, that I was not Jewish, but actually catholic, and I have been since birth; but I misrepresented my religious affiliation so that I could receive kosher foods, but since my return to W.C.D.O.C. kosher foods are now horrible, and are constantly being served with insects or rotten foods. I further misrepresented my religious affiliation to avoid the general meal trays which are rotten, contain undercooked foods, minimal portions, and constantly contain hair, or insects. Upon my return to W.C.D.O.C. I consumed a meal (general tray) and fell Ill, and required medical treatment.

**Notice: Pursuant to the Penal Law, Section 210.45, it is a crime punishable as a Class A misdemeanor to knowingly make a false statement herein.**

_Santiago Gomez_ 17358
**Signature**

4SW housing unit
**Location Where Statement Was Taken**

_CO Santiago_ 1683
**Witness**

Nov. 25, 2017
**Date**     **Time**

**Complete if Subject is a Detainee:**

Santiago Gomez
**Name**

2017004758 4SW#9
**Booking Number**    **Cell Location**

**Complete if Subject is a Civilian:**

_____
**Name**

_____
**City**

_____
**Street Address**

_____
**State**    **Zip Code**

# Exhibit 7

# PETITION

PLEASE TAKE NOTICE that this petition is a banner of one-and-the-same-voice of and for the Jewish-inmate population at the WCJ expressing our grievance and outrage regarding the conditions, portions, lack of nutritional requirements, et cetera, of the food that's being served. Breafast used to consist of an assortment of sealed cereals, boiled eggs, fresh bread, 2 packets of peanut butter, 2 packets of jelly, a pack of tea or coffee and multiple packs of sugar; ▮▮▮▮ breafast now consist of (sometimes) 2 sugars, unsealed cereal, stale bread and just 1 pack of jelly, 1 pack of peanut butter and 1 pack of tea. Lunch: stale bread, rotten salad, 1 kool-aid pack and knock-off, Gefilte fish or, in case of an allergy to fish, more peanut butter and jelly, which is the same every-single-day. Dinner: more stale bread, more rotten salad, 1 Halal dish (mostly the same every-day), rotten fruit and a pack of koolaid. Which is also the same every-single-day. Breafast, lunch and dinner. No other religion or special-diet-need inmate receives the same type of food every day or is subjected to the conditions mentioned above. Except for the

Jewish population. Every single day is the same type of food, including rotten salads and fruits through out ALL three meals. After numerous complaints, grievances, correction officers witnessing our claims and logging it, talks with the rabbi and higher-ups of the WCJ administration—nothing has changed! Every thing remains the same and surprisingly and miraculously, is getting worse. The only thing that has changed is that now more of the inmate-Jewish population is aware of the FACT that our "rights" are being violated because the WCDOC and rabbi, believe that we aren't really Jewish and we only claim to be to get the Jewish-diet meals. So, by tampering with and violating our food, their hoping to discourage inmates from signing up as Jewish, quote-unquote. [Note:] It's really disturbing that, instead of being to eat a proper peanut ▮ butter and jelly sandwich, one must suck the pack for **nutrients** because of stale bread.

Johnny McCray / 161320 / A-52          Santiago Gomez, 173518

Lamar Johnson / 196057 / A-41          _signature_  6250864

Arthur Brown # 16599                   _signature_  247771 / A-3

Foster A. Moore # 207893               _signature_  248078

Flemming Charles - 183432              Andrew Bethune 173227

Jesus Rosario - 219723                 Franklin Mateo - 232960

Craig Beam 201092

Eric Ali   185256
(TRUSTEE 4 S/W FOOD DIST.)
Shawn Fountain #22227

Wyatt Mitchell #195-417

# Exhibit 8



Department of Correction Valhalla, New York

# Memorandum

Date:  November 19, 2017

To:   Inmate Santiago Gomez – Jid# 173518, Bkg#17-4758

From:  Sergeant Scott #167

Re:    Grievance # J-17-0538

Based on my investigation your grievance is Accepted and Substantiated. It is a fact that a live insect which resembled a lady bug was observed in your kosher salad container. You did receive a replacement kosher bag which included a salad in a timely fashion. I spoke with Aramark Food Service Manager, Darnell Flax in person and notified him of the incident. I showed him the container of salad which contained the insect. He informed me that the salad is ordered and comes in a sealed bag that is opened then given to the inmate population. Mr. Flax states that Aramark staff will be diligent and mindful when dealing with this food product. All of the above actions that were taken are a remedy to your complaint. You requested to be removed from your kosher diet and I explained the process to you in order to be removed. You also requested not to receive any more meals with insects inside and Mr. Flax is aware and was receptive to making sure the matter is addressed with Aramark food service staff.

# Exhibit 9

# Westchester gov.com

Department of Correction Valhalla, New York

# M e m o r a n d u m

**Date:**   11/29/2017

**To:**   *Inmate Santiago Gomez P-173518*

**From:**   *Sergeant Antoine #215*

**Re:**   **GRIEVANCE # J-17-0556**

This grievance is being accepted and denied in parts based on the special I received from Offer Miller, as well as I did also observe there to be a fly in the salad received by Inmate Gomez.  However this grievance is also being denied because there was an immediate response to solve the problem in regards to the salad.  Also as part of your grievance you are requesting that you be removed from your Jewish diet, this must be done through the proper means.  Which is that he must submit a change of religious diet form to clergy to have this change be made.

# Exhibit 10



**Westchester gov.com**

Department of Correction  Valhalla, New York

# Memorandum

**Date:**      28 November 2017

**To:**         GOMEZ, Santiago
                Detainee JID #173518; BKG #17-4758

**From:**      Karl Vollmer
                Assistant Warden

**Re:**          Grievance #17-0538

I have reviewed your appeal to the grievance referenced above and I concur with the grievance coordinators decision.

It is unfortunate that you encountered an insect in your food. Unfortunately no matter how diligent the food service staff tries to be the fact remains that such occurrences, while rare, do happen. As was outlined in the sergeant's response the salads come through in sealed bags prior to being distributed to the population.  It is difficult to determine how or when the insect got into your food. However I do not find any evidence to support that this was an intentional act.

You were provided with a replacement meal, Aramark was notified of the occurrence and you were instructed on the process to be removed from the Kosher diet list. The food service staff will also be as vigilant as possible to any such occurrences in the future.

Your grievance is accepted and you have been afforded any and all due remedies.

# Exhibit 11



Department of Correction Valhalla, New York

# Memorandum

**Date:** 11/6/2017

**To:** Inmate Santiago Gomez P-173518

**From:** Sergeant A. Davis #209

**Re:** Grievance # 17-0492

On Sunday, November 5, 2017, you submitted a grievance explaining that you believed the Kosher meals which you were receiving three times a day were inadequate in nutritional value. You also stated that you believed that you were being retaliated against and punished due to open litigation. And on November 5, 2017 you approached several block Officers and informed them of what you suspected to be rotten or molding bread and lettuce which came with your meal.

After investigating your claims I have determined your grievance to be accepted in part and denied in part. Due to the fact that you were able to show food, which you believed to be rotten or discolored to the block Officers, and they confirmed its appearance, I am accepting this portion of your grievance and have advised the Officers to monitor these instances and act to correct any deficiencies as they arise. After speaking with the Aramark food service director I was advised that all Kosher meals, including your supplemented meal items, do meet the American Correction Association (ACA) for nutrition standards. Furthermore, your accusation of being punished is unfounded. Westchester County Dept. of Corrections (WCDOC) and its vendors do not retaliate due to any litigation, and any accusation of such is taken seriously. Moreover, WCDOC does not discourage inmates from practicing their religion. We encourage inmates to retain and practice their religions in accordance with the rules and regulations set forth by the Department. Lastly, all Kosher inmates receive the same meal that is prepared that day. However, due to your alleged allergy to fish, a portion of your meal is substituted with items that meet the nutritional components set forth by the ACA. So after investigating your complaint I have determined these claims to be denied on merits.

# Exhibit 12

 **Westchester gov.com**

Department of Correction Valhalla, New York
# Memorandum

**Date: 11/22/17**

**To: Franklin Mateo JID#232960**

**From: Sgt. Beckford#211**

**Re:      Grievance # J-17-0542**

---

Your grievance is denied based on merits.
You didn't report or provide any proof as to you receiving an insect in your breakfast tray to the 7-3 officer as said by your own admission



Department of Correction  Valhalla, New York

# Memorandum

**Date:**    5 December 2017

**To:**    MATEO, Franklin
       Detainee JID #232960; BKG #16-5328

**From:**    Karl Vollmer
       Assistant Warden

**Re:**    Grievance #17-0542

I have reviewed your appeal to the grievance referenced above and I concur with the grievance coordinators decision.

As outlined in the sergeant's response, your lack of immediately reporting this alleged incident to the block officer raises serious doubt as to the validity of your allegation.

It is further a strange and a highly suspect coincidence that you would submit a grievance for the very same issue as another inmate did on that very same day. That inmate however personally brought the suspect tray to the officer so that the allegation could be, and was, verified.

The manner in which this allegation was presented is highly suspect of being contrived based on another inmates legitimate complaint. To say it plainly you are attempting to ride the coattails of the other inmate.

Your allegation is unsupported by any factual or obvious evidence and your grievance is denied.

# Exhibit 13

From: Johnny McCray #161320

To: Commissioner Kevin Chevert

Date: November 7, 2017

Re: Complaint Regarding Jewish-diet meals and lack of remedy for the evident problems by WCS administrat

Dear Sir,

From January through September of 2016 I was incarcerated at the WCJ in which, like now, I was Jewish and received the Jewish-diet meals. During that time, in 2016, the Jewish-diet breakfast meals consisted of an assortment of (sealed) cereals, boiled eggs, fresh fruits and bread and lunch and dinner consisted of 1 Halal/Jewish tray, fresh salad, fresh fruit and fresh bread, respectively. Everything consistent with the

Jewish diet. Now, since my return t
the WCJ, which has been since Ma
the Jewish-diet breafast meals
consist of the same food items every-
single-day: unsealed cereal/cheerios,
small package of peanut butter and
2 small packages of jelly (most of the
time) a fresh apple, stale bread
and a packet of tea. Lunch consist
of the same semi-stale bread, rot-
ten salad, occasional packet of kool-
aid, knock-off Gefilte fish or, for
those allergic to fish, the same
peanut butter and jelly that we
all receive for breakfast. And
dinner now consist of the same
Halal/Jewish dish, rotten salad,
stale bread and occasional packet
of koolaid. The menu that exist for
the Jewish religion/population-meals
is no longer being adhered by. The
food is barely kosher anymore. None
of the foods are sealed like they
use to be. Everything is absolutely

the same foods being served. Not to mention the constant influx of rotten foods and unsanitary tendencies. And after many grievances, complaints, outbursts and discussion with the rabbi and administrative personnel (including some of the higher ups) nothing has changed. The only thing that has changed is that now the Jewish population is completely aware of what's really taking place: That the administration of the WCS is cutting back/violating our rights regarding the food that's being dispensed because, quote-un-quote, the majority of us aren't really Jewish and/or claiming to be Jewish to be able to receive the Jewish-diet meals.

PS. It's really disturbing that others and myself must consume the peanut butter by sucking it through the packet b/c of lack of fresh bread.

Respectfully,

Johnny Mclryy
#161320

# Exhibit 14

# Westchester gov.com

Department of Correction Valhalla, New York

# Memorandum

Date: 6/29/18

To: Santiago Gomez Jid#173518

From: Sgt. Spruill #216

Re: Grievance J-18-404

---

Your Grievance is Accepted in part/ Denied in parts.

Your Grievance is accepted in part, for your request that this grievance to be properly investigated by someone fair.

Your Grievance is denied in part, before you filed this grievance the issue with the notary was already rectified and you did receive your documents notarized by a certified notary.

<u>GRIEVANCE</u>

<u>From: Santiago Gomez,</u>

<u>JID 173518</u>

<u>DATE: June 28th, 2018</u>

In or around June 26th, 2018 I applied for Notary services via the old jail law library sign-up sheet.

On June 27th, 2018 Law Librarian K. Hewitt arrived at I-Block with respect to my Notary request.

However, Law Librarian K. Hewitt refused to personally speak with me, and was speaking, and verifying documents through correctional officer braig despite the fact that said officer is not an authorized Notary public.

Nevertheless, Law Librarian K. Hewitt directed me to produce the the complete documentation that I desired notarized, specifically: (1) Affidavit of Service; (2) Claim Verification; and (3) Poor Person motion. Law Librarian K. Hewitt then produced a pen and directed that I sign the aforementioned documents (absent an oath).

I subsequently signed the foregoing documentation, and without cause Law Librarian K. Hewitt stated "Those signatures are different I'm not notarizing your documents. Type them again and make your signatures identical next time."

Law Librarian K. Hewitt without proper reasoning or cause improperly refused to notarize the aforementioned documentation.

Let the record reflect, that this is not my first dispute with the Law Librarian regarding her deliberate refusal to provide me with notary services and/or her intentional disregard for my legal supply request.

Its obvious that Law Librarian K. Hewitt is abusing her discretion, and/or authority.

On belief, Law Librarian K. Hewitt's responsibility as a Notary Public are in part, (1) take my oath as to the veracity of the contents of the requested documentation to be notarized, (2) verify that I am the individual requesting the notary; and (3) observe that I sign the documentation on the date indicated on the documentation.

Alarmingly, Law Librarian K. Hewitt deliberately creates implausible excuses as to why she is refusing to notarize my documents.

This improper conduct by Law Librarin K. Hewitt is causing a delay in me filing legal papers, and causing stautes of limita-tions to file claims to expire thus creating legal malpractice claims against the county unnecessarily.

Please take notice, that I have had over 1000 documents notarized previously without issue, and I can not understand how every other indivdual at the jail seems to secure notary services from K. Hewitt?

As I stated above its apparent that Law Librarian K. Hewitt is abusing her discretion. Moreover, when out of sight of high ranking W.C.D.O.C. officials she is extremely rude, distasteful, and behaves extremely arrogant and unprofessional.

Lastly, Law Librarian K. Hewitt appears to generate massive unnecssary complaints for similar conduct.

## ACTION REQUESTED BY GRIEVANT

For my claims to be properly investigated by someone fair as Law Librarian K. Hewitt's actions have collaterally sabotaged my legal papers by forcing me to sign the aforemention- ed documentation then refusing to notarized the documentation. Now another Notary Public can not notarize the already signed documents. In addition, Law Librarian K. Hewitt needs to be properly trained as to communication/interactions with inmates.

Location of Incident
I-Block
officers Desk

Santiago Gomez-grievant



Department of Correction  Valhalla, New York
Memorandum

**Date:**      July 9, 2018

**To:**        GOMEZ, Santiago
             Detainee JID #173518; BKG #18-1768

**From:**      La  Spaulding      *A/w La. Spaulding*
             Assistant Warden

**Re:**        Grievance #18-0404

---

I have reviewed your appeal to the grievance referenced above and I agree with the grievance coordinators decision.

Your grievance remains partially accepted / partially denied.

Your grievance remains accepted in part.  In your remedy sought, you requested for your claims against Law Librarian, Ms. Hewitt, be properly investigated by someone fair. I am very fair and I conducted an additional investigation into your claim as you requested.

Your grievance remains denied in part because as a result of this investigation, I found that Ms. Hewitt had arrived on I- block ready to notarize your legal work and asked you to sign your legal forms and notary journal in a way that showed the signatures matched.  You refused and became disrespectful towards her.  At which time she refused to notarize your forms and left the block. You had the opportunity to have your forms notarized but refused to comply with a simple request which would have resulted in your forms being notarized.

Subsequently, your forms did get notarized by Captain Johnson and there was no delay in your legal paperwork being submitted.

I am upholding the decision of the grievance coordinator.



Department of Correction Valhalla, New York

# Memorandum

Date:   June 18, 2018

To:    Santiago Gomez

From:  Sergeant West #208

Re:    Grievance # 18-0381

---

In your grievance you assert that you signed up to receive a notary on June 5 and June 7.  You also state that the Law Librarian Ms. Hewitt is deliberately ignoring you request to receive a notary on your legal documents. On both day that you have stated that you were deliberately ignored and prevented from receiving a notary you were at court. On both days you were picked up by Yonkers PD for morning court. On both above stated dates Ms. Hewitt was on your post looking to provide you with you requested notary during the time you was not in the facility. At no time did she ignore your request, she attempted to fill you request, however you was not in the facility at the time. Your grievance has been denied due to lack of Merit.



Department of Correction  Valhalla, New York
# Memorandum

**Date:**   June 21, 2018

**To:**   GOMEZ, Santiago
          Detainee JID #173518; BKG # 18-1768

**From:**   La Fonda Spaulding
           Assistant Warden

**Re:**   Grievance #18-0381

I have reviewed your appeal to the grievance referenced above and I am agreeing with the grievance coordinators decision.

In your grievance you claim that the civilian law librarian on staff, Ms. Hewitt is deliberately ignoring your law library requests and that she told the law library trustee that you are not to be trusted because you charge people for legal work. You put in for notary services on June 5th and June 7th. On both days Law Librarian Hewitt did attempt to attend to your notary requests but you were out at court both days. You provide me with no proof that she intentionally ignored your notary requests. As far as you complaining that she told the inmate trustee not to trust you, that is mere hear say. When interviewed, The Inmate trustee wrote a statement saying that he doesn't want to get involved. You offer no further proof that this took place.

Your action requested was that you be provided with Urgent Notary Services to meet deadlines on a notice of claim and a power of attorney.  Per your own admission you were provided with notary services on June 12th and June 15th  at which time both of these notaries were done.

Your grievance is denied.

# Exhibit 15

New York State Commission of Correction
**Inmate Grievance Form**
Form SCOC 7032-1 (11/2015)

Facility: Westchester D.O.C          Housing Location: 4SW·43

Name of Inmate: ANDREW BETHUNE       Grievance #: #7-0524

**Brief Description of the Grievance** *(Submitted by the grievant within 5 days of occurrence)*
Number of Sheets Attached ( )

On the date of November 12th, 2017
My Dinner Meal TRAY Contained A long Strand of HAIR
that Appeared to have Come from A white or Hispanic
(x2) MALE or female. I informed the Staff who Also witnessed the Hair
And ordered a replacement. Upon receiving replacement Tray It WAS
Evedent the meat was Pink on the inside And uncooked. I informed officer
Again...

**Action requested by the grievant** *(Submitted by the grievant within 5 days of occurrence)*:
Number of Additional Sheets Attached ( 1 )

I would Love to Be Adequately fed Nutritional
food, with out including HAIR, and for my food
to Be fully cooked; to prevent food Related deseases.

Grievant Signature: ANDREW BETHUNE        Date/Time Submitted: 11/12/17

Receiving Staff Signature: Sgt. L-Q #213   Date/Time Received: 11/12/17

Investigation Completed by: Sgt. Lindert #213     Date Completed: 11/15/17

**Decision of the Grievance Coordinator**
*Written decision shall be issued within 5 business days of receipt of grievance and shall include specific facts and reasons underlying the determination*

☐ **Non-grievable issue as per 9 NYCRR §7032.4(h) (may not be appealed to CAO)**

☐ **Grievance Accepted**

☒ **Grievance Denied on Merits**

☐ **Grievance Denied due to submitted beyond 5 days of act or occurrence (can be appealed to CAO)**

☐ **Grievance Accepted in part/ Denied in part (Note specific Acceptance/Denial parts below)**

See memo.

Signature of the Grievance Coordinator: Sgt. L-Q #213        Date: 11/15/17

This has been An on going problem
from my Arrival on the reception Block.
I was told It would Be Dealt with!
(But) It is only getting WORST!!!...
     Several other Inmates also had the Same
     problem today ('HAIR IN food)
     However this grievance IS only for me.

A.F



Department of Correction Valhalla, New York

# Memorandum

Date:   11/15/17

To:   Andrew Bethune JID-173227

From:   Sergeant Lindert #213

Re:   **Grievance #17-0524**

---

I am in receipt of your Grievance # 17-0524

Your Grievance is denied based on merits. I did speak to Aramark in relation to the dinner you were served on 11/12/17. They informed me that the meat on your tray was pre-cooked. Due to this reason the meat on your tray could not have been under cooked or raw. The block officer did rectify your problem with hair in your food per your request for a new tray. In the future you may also inform your block officer of any discrepancies with your meal tray as they arise to rectify problems with objects on your tray.

Sgt. Lindert #213



Department of Correction  Valhalla, New York

# Memorandum

**Date:**   22 November 2017

**To:**     **BETHUNE, Andrew**
            **Detainee JID #173227; BKG #17-3930**

**From:**   **Karl Vollmer**
            **Assistant Warden**

**Re:**     **Grievance #17-0524**

---

I have reviewed your appeal to the grievance referenced above and I concur with the grievance coordinators decision.

I am amazed at your uncanny ability to determine the gender and race of person simply by looking at a strand hair. Most would require the assistance of a lab and a qualified technician in conjunction with testing.

It is unfortunate that a strand of hair was found in your tray. While Aramark makes every effort and employs several protocols to ensure such things do not happen, the fact remains that it sometimes occurs. In this case, after reporting it to the officer, you were provided with a replacement tray which you accepted. Although you claim that several inmates had the same problem, no other inmates lodged any such complaints.

The replacement tray contained meat that you claimed was uncooked because it looked pink to you. The meat you received that day was a regular tray that all other inmates received. The meat was pre-cooked and Aramark has to simply heat it to a specific temperature. Aramark actually heats these pre-cooked meats more than required. As I stated before no other inmate complained about undercooked meat. The color of the meat was your perception as to the level to which it was cooked.

Your perception of the color of the meat is not a definitive barometer of the level to which the meat should be cooked. Aramark has assured me that these meats are not only pre-cooked but are then heated to temperatures above what is recommended.

Your grievance is denied.

# Exhibit 16

New York State Commission of Correction
Inmate Grievance Form
Form SCOC 7032-1 (11/2015)

Facility: Westchester County Jail        Housing Location: A Block #59

Name of Inmate: Santiago Gomez        Grievance #: 17-0492
                173318

Brief Description of the Grievance (Submitted by the grievant within 5 days of occurrence)
Number of Sheets Attached (3)

I am presently an inmate associated with the Jewish Faith religion who receives a religious "Jewish" diet. Moreover, I'm also allergic to fish. Since the inception of receiving the Jewish religious diet I'm being Starved I'm being

Action requested by the grievant (Submitted by the grievant within 5 days of occurrence):
Number of Additional Sheets Attached (  )

To be offered foods that are adequate in nutrition not rotted or spoiled/molded, as under cooked the Jewish population use to receive prior to the increase in the Jewish population.

Grievant Signature: Santiago Gomez        Date/Time Submitted: Nov. 5, 2017
Receiving Staff Signature:                Date/Time Received: 11/5/17   1735

Investigation Completed by: Sgt A Davis 209        Date Completed: 11/6/17

Decision of the Grievance Coordinator                Number of Sheets Attached (  )
Written decision shall be issued within 5 business days of receipt of grievance and shall include specific facts and
reasons underlying the determination

☐  Non-grievable issue as per 9 NYCRR §7032.4(h) (may not be appealed to CAO)
☐  Grievance Accepted
☐  Grievance Denied on Merits
☐  Grievance Denied due to submitted beyond 5 days of act or occurrence (can be
    appealed to CAO)
☑  Grievance Accepted in part/ Denied in part (Note specific Acceptance/Denial parts
    below)

See attached memorandum

Signature of the Grievance Coordinator:                Date: 11/6/17

1) offered/provided the following meals consistently.

Breakfast a ketchup sized jelly packet, an identical peanutbutter packet, (1) mini apple, (3) slices of stale bread (which keeps arriving molded) and a hand-ful of cheerios, and a Tea bag along with 2 sugar bags.

Lunch is Generally Fish, bread (3) slices, an apple which always arrives rotted or mushy/brown, a handful of lettuce (which continues to arrive brown with a foul order) However, since I'm allergic to fish I'm being offered the same meal I was offered for breakfast absent the cheerios cereal.

Dinner I'm being offered a micro.wavable kosher t.v. dinner type feed, juice packet, (3) slices of stale/molded bread, browned lettee which arrives soggy with a foul order

① As you may be aware I previously filed litigation against Aramark for similar conduct, hopefully this is not a form of retaliation, despite the fact that I firmly believe it is. Nevertheless, food I'm being provided with can not be deemed adequate, and seems to be an extreme punishment. I feel weak through out the day and I'm suffering from hunger pangs as I'm not being provided with proper nutrients. I'm indigent and cannot afford commissary to supplement the missing nutrients.

Note, The Jewish community more so my self can eat other items besides peanut butter and Jelly. The Inmate population, receives eggs, potatoes, Rice, chicken, cheese, chicken patties, cake etc. Sausages, Hot dogs, various meals etc.

There is a rumor that WCJ ws a larger and/or more than they are accustom to Jewish population ⟶ →

and Serving them / (myself) kosher meals So in effort to cut cost they are Serving less food and/or foods that lack nutrients in effort to discourage inmates from associating with the Jewish religious faith. This burdens the practice of religion.

---

The last time I received a meal with rotted Salad / Stale, molded bread was on Nov. 5, 2017



S. G.

# Exhibit 17



Department of Correction Valhalla, New York

# Memorandum

Date:   **9/19/17**

To:   **Grievant Johnny McCray**

From:  **Sergeant Martinez # 210**

Re:   **Grievance # 17-0316**

---

**Grievance Denied.**

According to the Food and Drug Administration (FDA), items marked as not for individual retail sale may be resold in an institutional setting providing that the food bears no nutritional claims or other nutritional information in any context on the label or advertisement.

The prices are set by survey of all local markets and establishments comparing prices of the available items. Commissary items are then priced according to local standards.

Shipping and handling fees are allowed for any package or service, there are no government regulations. However, legal scholars opine that the charges be "reasonable, true and not burdensome."

New York State Senate Bill S1903 authorizes the head of any correctional institution to charge taxes on the sale of commissaries and canteens.

Even though it's not listed in your grievance, I would also like to inform you about the Fresh Favorites program. The Fresh Favorites program is offered by the Department, independent of any requirement by the minimum standards and consequently does not have to be offered to the entire population.

**Sergeant Martinez #210**



Department of Correction  Valhalla, New York
# Memorandum

**Date:**   **28 August 2017**

**To:**     **MCCRAY, Johnny**
           **Detainee JID #161320; BKG #17-2075**

**From:**   **Karl Vollmer**
           **Assistant Warden**

**Re:**     **Grievance #17-0253**

---

I have reviewed your appeal to the grievance referenced above and I concur with the grievance coordinators decision.

The sergeant's response is complete and accurate. The only thing that I can add to that response is that the rabbi is involved in the approval of the menu.

I understand and appreciate your displeasure with the lack of variety including the serving of Gefilte fish for every lunch meal however there is no provision or requirement which mandates a specific variety of food be maintained.

Your grievance appeal is denied.

# Exhibit 18



Department of Correction Valhalla, New York

# Memorandum

Date:   **8/23/17**

To:   **Grievant Johnny McCray**

From:  **Sergeant Martinez # 210**

Re:   **Grievance # P – 17 - 0253**

---

**Your Grievance Is Denied. Response to your complaint of kosher meals is as follows:**
**Aramark Kosher menus are approved by a registered dietician, the facility Administration**
**and the Facility Religious Director of Pastoral Services. A kosher meal label, with the**
**inmate's name is placed on each bag. Aramark is in compliance with all requirements as**
**outlined by the nutritional guidelines of the American Correctional Association, which is**
**based upon the current Dietary Reference Intake for males & females 19-50 years of age, as**
**established by the Food & Nutrition Board of the Institute of Medicine, National academy**
**of Sciences. My response to your claim of receiving old and or rotten salad and fruits from**
**Aramark is that you failed to provide dates and any supporting information so that this**
**matter could be investigated. Do note that a grievance regarding your claim of old and or**
**rotten salads and fruits cannot be submitted beyond 5 days of act or occurrence.**

**Sergeant Martinez #210**

# Exhibit 19



Department of Correction  Valhalla, New York

Memorandum

**Date:**      **July 10, 2018**

**To:**        **GOMEZ, Santiago**
              **Detainee JID #173518; BKG #18-1768**

**From:**      **La Spaulding**   *A/W La. Spaulding*
              **Assistant Warden**

**Re:**        **Grievance #18-0414**

---

I have reviewed your appeal to the grievance referenced above and I agree with the grievance coordinators decision.

Your grievance appeal is denied for the following reasons.

Officer Parchment submitted a report that contradicts your version of the events that took place in the Law Library on July 2, 2018 and you have not provided me with sufficient proof to support your version of what took place.

Officer Parchment reports when you requested paper he instructed you to fill out a special charges form which you refused to do and when he informed you that he was not denying you access to typing paper but you needed to complete the form you responded by telling him he wasn't even in charge and asked for a grievance, which he gave you.

In your grievance your action requested is that the Department publish a written policy that explains the allotted amount of paper and photo copies weekly, that indigent inmates are permitted. The Department already has this policy. You complain that the present policy is scattered and open to interpretation. The Policy clearly states that indigent inmates may receive up to 12 sheets of paper per week. If for some reason you require more than 12 sheets a week you may submit a written request to The Assistant Warden stating the need for additional paper or copies.

I am upholding the decision of the grievance coordinator.

# Exhibit 20



Department of Correction  Valhalla, New York

# Memorandum

**Date:** 22 December 2017

**To:** QUICK, Markim
Detainee JID # 249576

**From:** Francis Delgrosso
Assistant Warden

**Re:** Grievance #J-592-17

I have reviewed your appeal to the grievance referenced above and I MOSTLY disagree with the grievance coordinators answer

The coordinators answer that the Food and Drug Administration does not preclude the sale of food that is past the expiration date is true however when ordering an item through commissary or I Care the purchaser is not  making the purchase with the knowledge and understanding  that the item is past the expiration date and is expecting quite the opposite. It is not the practice of our provider (Aramark Corp) to allow for the sale of expired items and the Aramark manager Donna Blackmon stated such items are routinely removed from inventory. While this was the first complaint of its kind and your situation was the result of an individual employee oversight and not a company practice I still however informed her to meet with her staff and ensure that they be more diligent in checking the expiration dates on the food they receive and deliver and to be sure to remove such items from their inventory immediately to prevent such mistakes in the future.

I do however agree with the coordinator that it is indeterminate and cannot be verified that you incurred an illness as a result of consuming this product. But being that that fact is not relevant in your suggested remedy your grievance is accepted and the above mention action will be taken.

Westchester
gov.com

Department of Correction Valhalla, New York

Memorandum

Date:   11/6/17

To:   Inmate Daniel Spotard JID #247771 BKG #16-4765

From:   Sergeant Conkling #201

Re:   Grievance # P-17-0495

---

**Your grievance #P-17-0495 is denied on merits. All meals provided to Inmates meet and/or exceed daily nutritional requirements and are overseen by a registered dietician. Furthermore, all religious meals are approved by the Departments Director of Pastoral Care and also by the head of the specific religion (i.e. The Rabbi in your case).**



★ Legal
Mail ★

P.O. Box 10
Valhalla, N.Y. 10595

USM
WP
MAIL
SDNY

To: United States
District Court
Attn: Pro se Clerk S.D.N.Y.
300 Quarropas St.
White Plains, N.Y. 10601

USM
WP
SDNY

AUG 01 2018
U.D.C.
W.P.

UNITED STATES PO
MAILED FRO
02 1P