UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

SANTIAGO GOMEZ,

                         Plaintiff,

    -against-

WESTCHESTER COUNTY; KEVIN M.
CHEVERKO; JOSEPH K. SPANO; ARAMARK
CORRECTIONAL SERVICES, LLC; FRANCIS
DELGROSSO; MIDDLETON; CAPTAIN
ROBERTS; MANUEL MENDOZA; CHARLES
BUTLER; COFFEY KOHLI; PENNY STEWART;
DARNELL FLAX; CRAIG BOISSY; DONNA
BLACKMAN; MATTHEW KITT; ASHTERMAN;
CASTRO; OFFICER MACDONALD;
KESEMETHIA HEWITT; LA FONDA
SPAULDING; LEANDRO DIAZ; and OFFICER
PARCHMENT,

                         Defendants.

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: _09/28/2021_

18-cv-00244 (NSR)

ORDER & OPINION

NELSON S. ROMÁN, United States District Judge:

    Plaintiff Santiago Gomez ("Plaintiff"), proceeding *pro se*, commenced this action on

January 1, 2018 alleging constitutional, federal, and state law violations against Defendants

Aramark Correctional Services, LLC, ("Aramark") and various members of the Aramark staff

(together, the "Aramark Defendants"), Westchester County ("Westchester"), and various

Westchester employees (together, the "Westchester Defendants").[1]  (Amended Complaint ("Am.

---

[1] One of the Westchester employees described in the body of the Amended Complaint, Karl Vollmer, was
not included in the caption of the Amended Complaint, and therefore was never served.  In the Court's
Supplemental Order of Service dated May 22, 2019, it warned Plaintiff that it was his responsibility to ensure
service was made within 90 days of the date the summons was issued.  (ECF No. 60.)  Therefore, all claims against
Mr. Vollmer are dismissed pursuant to Federal Rule of Civil Procedure 4(m) ("If a defendant is not served within 90
days after the complaint is filed, the court—on motion or on its own after notice to the plaintiff—must dismiss the
action without prejudice against that defendant or order that service be made within a specified time.").  If Plaintiff
wishes to assert claims against Mr. Vollmer consistent with the remainder of this opinion, he may do so by
specifically listing him as a Defendant in his Second Amended Complaint and alleging facts regarding his
violations.

Compl."), ECF No. 6.)  The individual Defendants are sued in both their individual and official capacities.  (Am. Compl. ¶ 28.)  Presently before the Court are the Westchester Defendants' motion to dismiss the Amended Complaint (ECF No. 95), and the Aramark Defendants' motion to dismiss the Amended Complaint (ECF No. 93.)  For the following reasons, the Aramark Defendants' motion is GRANTED in full, and the Westchester Defendants' motion is GRANTED in part and DENIED in part.

## BACKGROUND

The following facts are taken from Plaintiff's Amended Complaint and the attached exhibits, as well as the affirmation of Santiago Gomez filed on March 28, 2019 ("Gomez Aff." ECF No. 58),[2] and are construed in the light most favorable to Plaintiff, the non-movant, and accepted as true for purposes of this motion.

From approximately October 25, 2017 to February 16, 2018, and April 25, 2018 to the date of the Amended Complaint, July 30, 2018, Plaintiff was detained at the Westchester County Jail ("WCJ") as a "pretrial detainee."  (Am. Compl. ¶¶ 2, 32, 85.)  While detained, Plaintiff allegedly encountered various issues at WCJ related to (1) WCJ's food services and hygiene (*id*. ¶¶ 32, 35-54, 68-73, 84, 105-110, 112-113); (2) WCJ's law library and the provision of legal supplies (*id* ¶¶ 75, 78-83); (3) mail handling and tampering (*id*. ¶¶ 75-77); (4) dangerous facilities (*id*. ¶¶ 66-67, 98-103); (5) indifference to medical needs (*id*. ¶¶ 86-97); (6) WCJ's failure to handle grievances (*id*. ¶¶ 52, 73, 102-103); and (7) retaliation (*id*. ¶¶ 56-65).  Plaintiff generally attributes these issues

---

[2] The Court construes Plaintiff's affirmation as supplementing the complaint.  "While a court generally 'may not look outside the pleadings when reviewing a Rule 12(b)(6) motion to dismiss . . . the mandate to read the papers of *pro se* litigants generously makes it appropriate to consider plaintiff's additional materials . . . .'"  *Brown* v. *New York City Hous. Auth.*, No. 05-CV-10332(VM), 2006 WL 1378599, at *1 n.2 (S.D.N.Y. May 17, 2006) (quoting *Burgess* v. *Goord*, No. 98-CV-2077(SAS), 1999 WL 33458, at *1 (S.D.N.Y. Jan. 26, 1999)).

to Westchester and Aramark's "customs and policies," failure to supervise inmates and employees, and conspiracies and retaliation against Plaintiff for his previous grievances and past lawsuit.

*First*, Plaintiff alleges that Westchester and Aramark consistently served food that was undercooked, stale, and moldy on old trays that peeled plastic into the food. (*Id*. ¶ 32-54, 60, 68-73, 105-110, 112-113.)  In an effort to avoid the tainted food, Plaintiff, a practicing Catholic, misrepresented his religion and claimed to practice the Jewish faith.  (*Id*. ¶ 33.)  He made this misrepresentation believing the kosher meals provided to Jewish inmates were of a better quality. (*Id*.)  In or around October 30, 2017, Plaintiff's request for religious meals was approved, and Plaintiff began receiving his kosher meals in early November 2017.[3]  (*Id*. ¶ 40.)

However, Plaintiff also found the kosher meals to be unsatisfactory.  Plaintiff alleges that Westchester and Aramark believed a "vast majority" of the Jewish inmates were pretending to be Jewish (like Plaintiff), in an effort to receive kosher meals.  (*Id*. ¶ 45.)  Plaintiff alleges that in order to combat the "pretending," the kosher meals were dramatically reduced and repetitive. (*Id*.)

On November 11, 2017, Plaintiff sent a letter to Defendant Mendoza, the Aramark Food Service Director, summarizing several issues with the kosher meals he was receiving.  (*Id*. Ex. 6 at 1-2.)  He alleged that these issues were in retaliation for a previous lawsuit he filed with other inmates in 2012, which was settled in March 2017.[4] and asked that he supervise the preparation of the food.  (*Id*. Ex. 6 at 1.)  He also requested to be taken off the kosher diet.  (*Id*. Ex. 6 at 2.)  On November 21, 2017, Plaintiff filed a change of religion request form to change his religion back

---

[3] The Amended Complaint indicates that Plaintiff did not receive his first kosher meal until a month after his request was approved; however, Plaintiff sent a letter complaining about the adequacy of the kosher meals on November 11, 2017, less than two weeks after he received approval. (*Id*. Ex. 6 at 1.)

[4] *Pagan et al.* v. *Westchester County*, 12 Civ. 7669.  In 2014, the court adopted a report and recommendation granting in part and denying in part the motion for dismissal of the second amended complaint. *Pagan* v. *Westchester County*, 12 Civ. 7669 (PAE)(JCF), 2014 WL 982876, at *1 (S.D.N.Y. Mar. 12, 2014).  The case was settled in March of 2017.  Stipulation of Voluntary Dismissal, *Pagan* v. *Westchester County*, 12 Civ. 7669 (S.D.N.Y. Mar. 7, 2017), ECF No. 242.

to Catholic.  (*Id*. Ex. 6 at 3.)  During the required interview, Plaintiff admitted to misrepresenting

his religion to receive kosher foods.  (*Id*.)

During his stays at WCJ, Plaintiff made numerous complaints and grievances about the

state of the food, including but not limited to (1) being served undercooked food; (2) finding insects

or human hair in his food; (3) being served old, rotten or moldy food; (4) the lack of nutritional

value in the kosher meals that sometimes were missing items; (5) food trays that were peeling

plastic into the food; and (6) being served cold food.  (*Id*. ¶¶ 32, 35-37, 41-54, 68-71, 105-109,

112-113; Ex. 1, 2, 6, 7, & 16; Gomez Aff. at 4-5, 9, 29-32, 40-41, 47, 52-53, 55, 61, 66, 129, 134,

138, 169-170, 179, 181-182, 186, 190, 205-206, 210-211, 218-249, 252, 256-259, 264, 273-274,

276-277, 279-282, 305-306.)  The lack of sufficient food leaves him tired, hungry, nauseous, and

dehydrated, and as a result he has lost twenty pounds.  (Am. Compl. ¶¶ 53-54.)

Generally, when Plaintiff filed grievances related to the food, investigations were

conducted, and the grievances were either accepted or denied.  The grievances were generally

denied where Plaintiff failed to complain about the issue to WCJ staff after receiving his meal.

(Gomez Aff. at 40, 44-46, 54, 56-60, 62, 128, 130-132, 136-137, 139, 183-185, 187, 189, 191,

200-202, 251.)  The grievances were generally accepted where Plaintiff did complain and WCJ

staff were able to confirm that there was an issue with the food.  (Am. Compl. Ex. 8, 9, 10 & 11;

Gomez Aff. at 10-13, 28, 33, 38-39, 133-135, 155-159.)  When an issue was found, WCJ staff

typically provided Plaintiff a replacement meal tray or food item, which he could either accept or

refuse.  (Gomez Aff. at 2-3, 6-7, 38-39, 155-159.)  Additionally, Aramark staff was typically

notified when issues were confirmed.  (Am. Compl. Ex. 8 & 10, Gomez Aff. at 8, 10-13, 133-135.)

Plaintiff attributes these issues to Westchester and Aramark's policies and failure to

supervise inmates and employees.  (*Id*. ¶¶ 116-118, 139.)  Two fellow inmates that worked in the

WCJ kitchen observed kitchen workers committing unsanitary practices, including (1) screaming across food preparation tables; (2) not wearing the proper protective gear; (3) leaving juice containers out in the open; (4) failing to ensure the food was the proper temperature or that meal trays were cleaned properly; (5) playing a game called the "tray challenge" that results in trays falling on the floor and cracking, which allows water to enter the cracks and create bacteria; and (6) not setting up the hot tables for hot foods properly. (*Id.* ¶ 43, Gomez Aff. at 300-301.) Aramark and Westchester officials were also observed warning the Aramark food line supervisor about small servings and food being served under the required temperature. (Gomez Aff. at 300-301.)

*Second*, Plaintiff details several issues he had with the WCJ law libraries and legal services. Per WCJ policy, indigent inmates are provided with two stamped business envelopes and up to 12 sheets of paper per week, but if the inmate is *pro se* and additional paper is required, a request can be made to the warden. (Am. Compl. ¶¶ 78-79, Gomez Aff. at 98.) When an inmate requests paper, a lien is placed on their account. (Am. Compl. ¶¶ 78-79.) Plaintiff filed several grievances after he was refused paper or photocopies due to this policy. (*Id.* ¶ 80; Gomez Aff. at 16-19, 69-71, 88, 90.) Additionally, WCJ's law libraries are not always accessible to inmates, contain old materials that are torn and missing sections, and are missing essential books. (Am. Compl. ¶¶ 82-83; Gomez Aff. at 69-71, 151, 154.) Plaintiff also filed several grievances detailing incidents with the law librarian, Defendant Hewitt, when she failed to provide Plaintiff with materials and services he requested for legal matters. (Am. Compl. Ex. 14; Gomez Aff. at 101-103, 143.)

*Third*, Plaintiff describes issues he had with WCJ policy involving mail handling and inspection. The Westchester County Department of Correction Inmate Handbook Rules and Regulations ("Rules and Regulations") state that, "[l]egal and privileged mail will be opened and inspected in the inmate's presence." (Am. Compl. Ex. 4 at 9.) In December of 2017, Plaintiff

5

attempted to mail his lawsuit, but the package was returned to him by Defendants Hewitt and Ashterman who demanded Plaintiff open the package so Hewitt could verify its contents.  (*Id*. ¶¶ 75-76, Gomez Aff. at 16-19.)  Plaintiff did not open the package, and therefore he was refused postage to mail his documents.  (Am. Compl. ¶¶ 75-76.)  As a result, Plaintiff traded portions of his meals to other inmates for the money needed to mail his papers.  (*Id*. ¶ 77.)  On December 13, 2017, Plaintiff filed a grievance detailing this incident, which was denied because Defendants Hewitt and Ashterman were following WCJ policy.  (Gomez Aff. at 16-22, 26-27.)  Similarly, on January 2, 2019, Plaintiff filed a grievance alleging that a legal letter he sent was opened and inspected out of his presence.  (*Id*. at 214.)  This grievance was ultimately accepted since, per WCJ policy, legal mail must be searched in front of the inmate.  (*Id*. at 212-211.)

*Fourth*, Plaintiff describes several accidents and injuries he suffered due to WCJ's facilities.  Plaintiff alleges that one of his housing units suffered from hazardous conditions, including (1) a shower with a broken light that was littered with old soap; (2) walkways that are cracked with broken portions; and (3) dust that makes it difficult to breathe.  (Am. Compl. ¶¶ 66-67.)  On January 29, 2018, Plaintiff filed a grievance alleging that there was a broken light in the shower.  (Gomez Aff. at 165.)  The grievance was accepted, as the light was inspected and found to be not working, but the light was not fixed for two days.  (*Id*. at 160, 164, 166-167.)  Within those two days, Plaintiff slipped and fell, injuring his elbow and back.  (*Id*. at 162.)  Plaintiff then filed another grievance which was accepted, as two days was found to be an unreasonable time to change a lightbulb.  (*Id*. at 160.)  Plaintiff also fell in a hazardous walkway, which caused him similar injuries.  (Am. Compl. ¶ 66)

After Plaintiff was released and returned to WCJ, he had fractures in his hand and ankle, and he was placed in the WCJ infirmary.  (*Id*. ¶ 85-86, 99.)  Plaintiff alleges that his room in the

infirmary was "constantly flooded with rain water," which forced him to sleep on wet bedding. (*Id*. ¶¶ 100-101.)  He also alleges the room had no windows, no central air system, and a broken exhaust, which resulted in the room getting very hot in the summer.  (*Id*. ¶ 101.)  In July of 2018, Plaintiff attempted to file a grievance regarding the rain and broken air system to Defendant Kitt. (*Id*. ¶ 102.)  He alleges Defendant Kitt refused to take the grievance and stated that he had to file it with "Correct Care Solutions" instead.  (*Id*.)

*Fifth*, Plaintiff describes an incident that involved alleged indifference to his medical needs. As discussed above, during his second period of incarceration Plaintiff had fractures in his hand and ankle, and he was ordered by medical professionals to use a wheelchair and not bear any weight on his ankle.  (*Id*. ¶¶ 85-87.)  Plaintiff alleges that on June 12, 2018,[5] he had a visit with his mother.  (*Id*. ¶ 89.)  Once the visit was over, Defendants Castro and Kitt, forced Plaintiff to engage in a "strip frisk" which required him to stand up out of his wheelchair.  (*Id*. ¶¶ 89-90.) Plaintiff asked for a rail or bench to assist him, which was denied by Defendants Castro and Kitt. (*Id*. ¶ 91; Gomez Aff. at 118.)  Plaintiff then attempted to stand but ended up tripping over his wheelchair and falling, causing pain in his back, hand, and leg.  (Am. Compl. ¶ 91; Gomez Aff. at 114, 119.)  He alleges the Defendants did not call for medical assistance.  (Am. Compl. ¶ 91.) Once Plaintiff was able to get back into his wheelchair, Defendant Kitt confiscated and searched the wheelchair and directed Plaintiff to remove the "gutted splint cast" on his fractured hand.  (*Id*. ¶ 92, Gomez Aff. at 119.)

After this incident, Plaintiff filed a grievance alleging he is handicapped and confined to a wheelchair, and WCJ staff violated the Americans with Disabilities Act ("ADA") by requiring him to stand without an accommodation.  (Gomez Aff. at 109, 118-121.)  The grievance was denied,

---

[5] While the Amended Complaint alleges this incident occurred on June 13, 2018, the grievance papers attached to the Gomez Affirmation suggest this incident occurred on June 12, 2018.

as (1) WCJ medical staff stated that Plaintiff could ambulate short distances and only needed the wheelchair for long distances; (2) he is not disabled under the ADA; (3) during a previous visit officers observed Plaintiff stand and walk to the bathroom on his own accord; (4) before ordering Plaintiff to the strip search, WCJ medical staff informed Defendant Kitt that Plaintiff is able to dress and undress himself; (5) Defendant Kitt was going to call for medical assistance until Plaintiff stood up and got back into his chair; (6) Plaintiff voluntarily removed his cast to be searched; and (7) safety concerns limit certain accommodations for handicapped inmates, but alternative procedures are always offered. (*Id*. at 110-111, 116-117, 122-123.) After this incident, Defendant Castro filed a misbehavior report in Plaintiff's file for disorderly conduct, and Plaintiff's medical file was amended to state he only needed a wheelchair for long distances. (Am. Compl. ¶¶ 94, 97.) Additionally, Defendant Delgrosso mailed Plaintiff a letter threatening to take his contact visits away if he requested an accommodation again. (*Id*. ¶ 95.)

*Sixth*, Plaintiff discusses several issues he has had with the WCJ grievance process. Plaintiff alleges he filed grievances discussing the "deprivations" and "unjust conditions" he faced, including his issues with the food. While his grievances have generally been accepted or granted by the investigating sergeant, Defendant Delgrosso overturns these findings and claims he is lying or states the issues he faces are rare. (*Id*. ¶ 52.) Other defendants, including Roberts, Spaulding, and Diaz, have also responded to his grievances alleging that finding hair or insects in food is rare, and that the amount of grievances he files are suspicious. (*Id*.)

*Lastly*, Plaintiff alleges that because of his grievances and previous lawsuit, the Westchester and Aramark employees dislike him, and therefore the problems he has had at WCJ have been done purposely in retaliation. Additionally, Plaintiff has received disciplinary reports that he did not deserve. In one instance, Plaintiff alleges Defendant Roberts ordered Defendant

MacDonald to file a false misbehavior report that alleged Plaintiff refused orders, and as punishment, Plaintiff was confined for 30 days. (*Id*. ¶¶ 61-62.) On January 27, 2018, Plaintiff filed a grievance alleging he received this disciplinary report even though other inmates were also not following orders (though this grievance alleges the report was filed at the direction of a Sergeant Scott). (Gomez Aff. at 193-194, 199.) This grievance was denied, as Plaintiff did not state he was innocent of the allegations and failed to provide evidence that other inmates were out of their cells for unapproved reasons. (*Id*. at 192, 195-198.) Plaintiff states that during his disciplinary hearing, Defendant Roberts stated, "[i]f I could of kept you confined longer I would have. Hopefully this slows down your grievances." (Am. Compl. ¶ 63.) Other inmates who were issued the same disciplinary report were released and give a hearing within 3-7 days. (*Id*. ¶ 65.)

Plaintiff claims that WCJ staff members have been vocal about their retaliatory actions. Plaintiff alleges a person named Sergeant Deltreste told him that Aramark staff was annoyed by his complaints and angry about his previous lawsuit, and that many of the issues he was having were being done deliberately. (*Id*. ¶ 56.) He was also told that Defendant Blackman was the "main person spreading rumors about him within the kitchen clan." (*Id*.) Similarly, one of Plaintiff's fellow inmates signed an affidavit alleging that a Westchester sergeant asked him for a written statement that stated that Plaintiff encourages inmates to file lawsuits against Westchester and Aramark. (Gomez Aff. at 303). When the inmate refused, the sergeant offered to provide him with commissary items if he did, and then stated, "don't worry, you don't have to write it – I had Officer Imbrognio file a special today and others investigating." (*Id*.).

Plaintiff filed his original complaint and exhibits on January 10, 2018. (ECF No. 6.) Plaintiff then filed a proposed amended complaint on August 1, 2018 (ECF No. 41) and submitted an additional set of proposed exhibits on August 3, 2018 (ECF No. 42.) On March 19, 2019, the

Court ordered Plaintiff's proposed amended complaint and exhibits to be filed as the operative Amended Complaint.  On March 28, 2019, Plaintiff filed the Gomez Affirmation.  (ECF No. 58.) On May 29, 2020, the Court granted Defendants' leave to file motions to dismiss (ECF No. 85), which they did on September 30, 2020.  (ECF Nos. 93 & 95.)  Plaintiff did not oppose the motions. (ECF Nos. 100 & 101.)

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), dismissal is proper unless the complaint "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  When there are well-pled factual allegations in the complaint, "a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief."  *Id*. at 679.

Where a motion to dismiss is unopposed, a court should nevertheless "assume the truth of a pleading's factual allegations and test only its legal sufficiency."  *McCall v. Pataki*, 232 F.3d 321, 322 (2d Cir. 2000).  While the Court must take all material factual allegations as true and draw reasonable inferences in the non-moving party's favor, the Court is "not bound to accept as true a legal conclusion couched as a factual allegation," or to credit "mere conclusory statements" or "[t]hreadbare recitals of the elements of a cause of action."  *Iqbal*, 556 U.S. at 662, 678 (quoting *Twombly*, 550 U.S. at 555).

The critical inquiry is whether the plaintiff has pled sufficient facts to nudge the claims "across the line from conceivable to plausible."  *Twombly*, 550 U.S. at 555.  A motion to dismiss

will be denied where the allegations "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

Where a *pro se* plaintiff is concerned, courts must construe the pleadings in a particularly liberal fashion. *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009). Further, courts must interpret a *pro se* plaintiff's pleadings "to raise the strongest arguments that they suggest." *Harris v. City of New York*, 607 F.3d 18, 24 (2d Cir. 2010) (internal citation omitted). Nevertheless, a *pro se* plaintiff's pleadings must contain factual allegations that sufficiently "raise a right to relief above the speculative level," *Jackson v. N.Y.S. Dep't of Labor*, 709 F. Supp. 2d 218, 224 (S.D.N.Y. 2010), and the court's duty to construe the complaint liberally is not "the equivalent of a duty to re-write it," *Geldzahler v. N.Y. Med. Coll.*, 663 F. Supp. 2d 379, 387 (S.D.N.Y. 2009).

## DISCUSSION

### I.   Section 1983 Claims

Section 1983 provides that "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured . . . ." 42 U.S.C. § 1983. Section 1983 "is not itself a source of substantive rights, but a method for vindicating federal rights elsewhere conferred by those parts of the United States Constitution and federal statutes it describes." *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979); *see also Patterson v. County of Oneida*, 375 F.3d 206, 225 (2d Cir. 2004). To state a claim under Section 1983, a plaintiff must allege (1) "the challenged conduct was attributable to a person who was acting under color of state law," and (2) "the conduct deprived the plaintiff of a right guaranteed by the U.S. Constitution." *Castilla v. City of New York*,

No. 09 Civ. 5446(SHS), 2013 WL 1803896, at *2 (S.D.N.Y. Apr. 25, 2013); *see also Cornejo v. Bell*, 592 F.3d 121, 127 (2d Cir. 2010).

Pursuant to Section 1983, Plaintiff alleges claims for *Monell* liability, conditions of confinement, supervisory liability, failure to intervene, First Amendment discrimination and retaliation, Equal Protection, Substantive Due Process, and conspiracy. The Court examines each claim separately below.

### a. *Monell* Liability Against Westchester and Aramark

The Amended Complaint avers that Aramark and Westchester (1) have policies and customs in place that allow employees to serve contaminated food to inmates, and (2) inadequately train and supervise its kitchen workers. (Am. Compl. ¶¶115-121.) In response, Defendants argue that (1) Plaintiff has no factual support for his conclusory allegation that Defendants have policies that allow substandard food; (2) merely referencing other lawsuits against the Defendants for similar conduct is insufficient; (3) the Amended Complaint lacks sufficient specificity for a failure to supervise claim; (4) there is no constitutional right to a grievance process; and (5) Plaintiff's arguments have already been rejected by this Court. (ECF No. 94 at 11-15; ECF No. 97 at 21.) For the reasons discussed below, the Court agrees with Defendants.

For municipalities and officers acting in their official capacities, liability under Section 1983 may not be found on a *respondeat superior* theory solely because the municipality or officer employs the actor who commits the wrongdoing or violation. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978). Under *Monell*, a plaintiff must allege "that the municipality itself caused or is implicated in the constitutional violation." *Amnesty Am. v. Town of W. Hartford*, 361 F.3d 113, 125 (2d Cir. 2004). The Second Circuit uses a two-prong approach in determining *Monell* liability for Section 1983 claims. *Vippolis v. Haverstraw*, 768 F.2d 40, 44 (2d Cir. 1985). First, the plaintiff

must plead "the existence of a municipal policy or custom in order to show that the municipality

took some action that caused his injuries beyond merely employing the misbehaving officer." *Id*.

Second, the plaintiff must allege a "direct causal link between a municipal policy or custom and

the alleged constitutional deprivation." *Hayes v. County of Sullivan*, 853 F.Supp.2d 400, 439

(S.D.N.Y. 2012) (quoting *City of Canton v. Harris*, 489 U.S. 378, 385 (1989)).

> To plead an official custom or policy, a plaintiff must allege one of the following:
>
> (1) a formal policy officially endorsed by the municipality; (2) actions taken by government officials responsible for establishing the municipal policies that caused the particular deprivation in question; (3) a practice so consistent and widespread that, although not expressly authorized, constitutes a custom or usage of which a supervising policy-maker must have been aware; or (4) a failure by policymakers to provide adequate training or supervision to subordinates to such an extent that it amounts to deliberate indifference to the rights of those who come into contact with the municipal employees.

*Brandon v. City of New York*, 705 F. Supp. 2d 261, 276–77 (S.D.N.Y. 2010) (internal citations

omitted).  If a plaintiff alleges *Monell* liability for a municipality or official based on an unofficial

policy or custom, then the practice, custom, or usage must be so widespread and persistent that it

has the force of law.  *Goode v. Westchester County*, No. 18-cv-2963 (NSR), 2019 WL 2250278,

at *3 (S.D.N.Y. May 24, 2019).  However, "a single incident alleged in a complaint, especially if

it involved only actors below the policy-making level, does not suffice to show a municipal

policy." *DeCarlo v. Fry*, 141 F.3d 56, 61 (2d Cir. 1998) (quoting *Ricciuti v. N.Y.C. Transit Auth.*,

941 F.2d 119, 122 (2d Cir. 1991) (internal quotation marks omitted)).

Alternatively, where municipal liability is based on a failure to train employees, the

inadequate training itself must "reflect[ ] deliberate indifference to . . . constitutional rights." *City*

*of Canton*, 489 U.S. at 392.  To allege deliberate indifference, a plaintiff must properly plead

(1) "that a policymaker knows to a moral certainty that [his or] her employees will confront a given

situation"; (2) "that the situation either presents the employee with a difficult choice of the sort

that training or supervision will make less difficult or that there is a history of employees mishandling the situation"; and (3) "that the wrong choice by the . . . employee will frequently cause the deprivation of a citizen's constitutional rights." *Okin v. Villiage of Cornwall-On-Hudson Police Dep't*, 577 F.3d 415, 440 (2d Cir. 2009).

First, the Amended Complaint does not explicitly allege that Westchester or Aramark created an official municipal policy or custom regarding food services. Nor does Plaintiff have sufficient factual allegations to establish an unofficial custom as to Westchester and Aramark's failure to train, supervise, or discipline its employees, so widespread and persistent as to have the force of law. *See Smith v. Westchester County*, 19-cv-03605 (NSR), 2021 WL 2856515, at *5–6 (S.D.N.Y. July 7, 2021) (dismissing *Monell* claims where the plaintiff failed to include an express policy in the complaint and merely alleged issues pertaining to three people).

Next, a failure to train or supervise constitutes a policy or custom that is actionable under Section 1983 only where "in light of the duties assigned to specific officers or employees the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers . . . can reasonably be said to have been deliberately indifferent to the need." *City of Canton*, 489 U.S. at 390. Plaintiff alleges that Aramark and Westchester allowed kitchen staff to use unsanitary practices, such as serving food without protective gear, failing to ensure food was the proper temperature or properly clean meal trays, and generally horsing around. (Am. Compl. ¶ 43; Gomez Aff. at 301.) Without any further factual allegations, Plaintiff's claim that Westchester and Aramark were aware of these issues and failed to train, supervise, or discipline their employees is a legal conclusion rather than a factual allegation sufficient to state a *Monell* claim. *Smith*, 2021 WL 2856515, at *5; *see also Quick v. Westchester County*, No. 18-CV-243 (KMK), 2019 WL 1083784, at *5 (S.D.N.Y. Mar. 7, 2019)

14

(dismissing *Monell* claim where a plaintiff alleged failure to supervise kitchen workers who did not wear hair nets because the complaint was "devoid of any detailed factual allegations" that the defendant lacked "a relevant training or supervisory program" or that it "was otherwise deliberately indifferent to food preparation problems"); *Triano v. Town of Harrison,* 895 F. Supp. 2d 526, 539–40 (S.D.N.Y. 2012) (dismissing *Monell* claim where the plaintiff "merely alleged that the [t]own failed to train its employees, without providing any supporting factual detail about alleged deficiencies in the training program").  Plaintiff has not cited any deficiencies in Aramark or Westchester's training or supervision protocols.

Plaintiff points to fourteen other lawsuits filed in the District against Aramark and/or Westchester that allegedly discuss problems with the food served to inmates.  (Am. Compl. ¶ 121.) However, merely referencing other lawsuits against the Defendants is insufficient under the *Monell* standard.  *See Haslinger v. Westchester County*, No. 18-cv-5413 (NSR), 2020 WL 5504314, at *4 (S.D.N.Y. Sept. 9, 2020) (dismissing *Monell* claims where "[a]lthough Plaintiff summarily alleges that Defendants were aware of the food issues he identifies through prior lawsuits, grievances, verbal and written complaints, and daily meetings where grievances are discussed, Plaintiff does not provide any factual details about such lawsuits, grievances, and complaints").

While other lawsuits may, in some cases, "permit a plausible inference of deliberate indifference," *Osterhoudt v. City of New York*, No. 10 CV 3173(RJD)(RML), 2012 WL 4481927, at *2 (E.D.N.Y. Sept. 27, 2012) (citing *Ferrari v. County of Sulffolk*, 790 F. Supp. 2d 34, 46 (E.D.N.Y. 2011) (internal quotation marks omitted)), Plaintiff does not allege that any abuses alleged in the prior lawsuit "were caused by a failure to train [or supervise] officers in the proper handling" of the food issues alleged in his Amended Complaint, nor does he specify Aramark and Westchester's responses to the lawsuits.  *See Falls v. Campbell*, No. 17-CV-35 (KMK), 2019 WL

1255768, at *7 (S.D.N.Y. Mar. 19, 2019) ("A litany of prior lawsuits may suffice to put the [County] on notice that greater training, supervision, or officer discipline was needed, but [P]laintiff makes only conclusory allegations regarding the [County]'s response to the lawsuits."); *Vincent v. Winski*, No. 14-CV-7744 (VSB), 2018 WL 1441370, at *17 (S.D.N.Y. Mar. 22, 2018) (granting motion to dismiss *Monell* claims where "the only facts that Plaintiff identifie[d] in support of any pattern of mishandling situations because of a failure to train . . . consist[ed] of other litigations resulting in settlements").

Therefore, as presently pleaded, Plaintiff's *Monell* claim must fail.  Consequently, all federal claims in this action are dismissed as against Westchester and Aramark.[6]

### b.  Conditions of Confinement Claims Against All Defendants

The Court interprets Plaintiff's Amended Complaint to allege three conditions of confinement claims pursuant to 42 U.S.C. § 1983.  The Court analyzes Plaintiff's claims under the Due Process clause of the Fourteenth Amendment because, as noted above, Plaintiff was a pretrial detainee, and a "pretrial detainee's claims of unconstitutional conditions of confinement are governed by the Due Process Clause of the Fourteenth Amendment, rather than the Cruel and Unusual Punishments Clause of the Eighth Amendment."  *Darnell v. Pineiro*, 849 F.3d 17, 29 (2d Cir. 2017).

The Fourteenth Amendment requires that prison officials "ensure that inmates receive adequate food, clothing, shelter, and medical care."  *Grant-Cobham v. Martinez*, No. 20-cv-1947

---

[6] Plaintiff has also filed suit against the individual Defendants in their official capacities.  (Am. Compl. ¶ 28.)  "[A] suit against a governmental officer 'in his official capacity' is the same as a suit 'against [the] entity of which [the] officer is an agent.'"  *McMillian v. Monroe County*, 520 U.S. 781, 785 n.2 (quoting *Kentucky v. Graham*, 473 U.S. 159, 165 (1985)).  Therefore, the *Monell* standard also applies to Plaintiff's official capacity claims.  *See Forest v. Petranker*, 19-CV-05519 (PMH), 2020 WL 3640007, at *7 (S.D.N.Y. July 6, 2020) ("the *Monell* standard applies to Plaintiff's official capacity claims").  Just as with Plaintiff's *Monell* claims against Aramark and Westchester, the Court finds that he has failed to identify an official policy, practice, or custom that led to alleged constitutional violations, and therefore the claims against the Defendants in their official capacities are also dismissed.

(BMC) (LB), 2020 WL 2097807, at *2 (E.D.N.Y. May 1, 2020) (quoting *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)).  To set forth a Section 1983 claim for conditions of confinement, a plaintiff must show that an individual "acted with deliberate indifference to the challenged conditions." *Sanders v. City of New York,* No. 16 Civ. 7426 (PGG), 2018 WL 3117508, at *6 (S.D.N.Y. June 25, 2018).  This deliberate indifference test is a two-pronged test, that contains an objective prong and a subjective prong.  *Darnell*, 849 F.3d at 29.

For the first prong—the "objective prong"—a plaintiff "must show that the conditions, either alone or in combination, pose an unreasonable risk of serious damage to his health . . . ." *Darnell*, 849 F.3d at 30.  "There is no 'static test' to determine whether a deprivation is sufficiently serious; instead, 'the conditions themselves must be evaluated in light of contemporary standards of decency.'" *Id.* at 29 (quoting *Blissett v. Coughlin*, 66 F.3d 531, 537 (2d Cir. 1995)).

Under the subjective prong, which is defined objectively, a plaintiff must plausibly allege that "the defendant-official acted intentionally to impose the alleged condition, or recklessly failed to act with reasonable care to mitigate the risk that the condition posed to the pretrial detainee even though the defendant-official knew, or should have known, that the condition posed an excessive risk to health or safety."  *Darnell*, 849 F.3d at 35.  Without more, mere "knowledge and acquiescence" to unconstitutional conduct, or "mere failure to act on a complaint," fails to state a claim under this standard.  *Smith*, 2021 WL 2856515, at *7 (internal quotation marks omitted).

Plaintiff avers that (a) cold and contaminated food he was served at WCJ (Am. Compl. ¶ 136); (b) hazardous facilities (*id.*); and (c) deliberate indifference to medical needs (*id.* ¶¶ 133) violated his constitutional rights.  Defendants argue that Plaintiff fails to allege a sufficient constitutional violation because Plaintiff's claims do not satisfy either prong of the Section 1983

test. (*See* ECF No. 94 at 18-23[7].)  The Court agrees with Defendants, and holds that Plaintiff fails to plead a valid constitutional violation as he does not sufficiently allege Defendants' deliberate indifference.[8]

### i. Cold and Contaminated Food

The Constitution "require[s] that prisoners be served nutritionally adequate food that is prepared and served under conditions which do not present an immediate danger to the health and well-being of the inmates who consume it." *Osorio v. Westchester County*, No. 18-CV-5620 (KNIK), 2019 WL 3958443, at *4 n.3 (S.D.N.Y. Aug. 21, 2019) (citing *Robles v. Coughlin*, 725 F.2d 12, 15 (2d Cir. 1983)).  "[A]llegations that a prisoner was served food contaminated or tainted by foreign objects" may satisfy the objective prong of the deliberate indifference test.  *Crispin v. Westchester County*, No. 18 CV 7561 (VB), 2019 WL 2419661, at *3 (S.D.N.Y. June 10, 2019) (quoting *Ballard v. Lane*, No. 18-cv-1721 (AJN), 2019 WL 1129158, at *2 (S.D.N.Y. Mar. 12, 2019)).  Conversely, allegations that meals are "'small,' 'uneven,' or 'minimal'" are not enough to adequately plead a sufficiently serious condition of confinement.  *Pagan*, 2014 WL 982876, at *17.  A key consideration is whether the provision of food ultimately poses an "imminent danger to the inmate's health and well-being."  *Harris v. Ashlaw*, No. 9:07-CV-0358 (LEK/DEP), 2007 WL 4324106, at *5 (N.D.N.Y. Dec. 5, 2007).  Further, for a claim related to food to survive, a plaintiff must allege that he or she suffered a "distinct and palpable injury."  *M.F. v. Reish*, No. 95

---

[7] The Westchester Defendants adopted the Aramark Defendants' conditions of confinement claims.  (ECF No. 97 at 8.)

[8] Defendants use the Cruel and Unusual Punishments Clause of the Eighth Amendment as a basis for their argument that Plaintiff's conditions of confinement do not rise to the level of a constitutional violation.  (ECF No. 94 at 18-23.)  The Court disagrees with this analysis.  While the objective prong is analyzed the same way under the Eighth and Fourteenth Amendments, the cruel and unusual punishments standard found within the Eighth Amendment, and proffered by Defendants, is not applicable in this case.  *Darnell*, 849 F.3d at 30.  As discussed above Plaintiff is a pretrial detainee, and therefore his claims are evaluated under the Due Process Clause of the Fourteenth Amendment.

CIV. 4904 (SAS), 1996 WL 345953, at *4 (S.D.N.Y. June 21, 1996) (citing *Warth v. Seldin*, 422 U.S. 490, 501 (1975)).

Here, Plaintiff alleges that he was continually served rotten, old, and cold food on worn serving trays that peeled plastic into his meals. (Am. Compl. ¶¶ 32-54, 60, 68-73, 105-110, 112-113.) Plaintiff describes several instances where he found insects, hair, or plastic in his food, as well as multiple instances where his food was served cold. As a result, Plaintiff alleges he has suffered from stomach pain, nausea, vomiting, diarrhea, and weight loss. He also challenges the nutritional value of the kosher meals generally.

While the Court agrees with Defendants that food merely served cold or without a wide range of variety is not serious enough to constitute a constitutional violation, Plaintiff's other food-related allegations—including rotten food and plastic peeling into it— considered with his resulting injuries— stomach pain, nausea, vomiting, diarrhea, and weight loss— are sufficient to pass the objective prong of the deliberate indifference test. *See Smith*, 2021 WL 2856515, at *8 (holding that being served undercooked, old, and moldy food and water were "obvious health hazards"); *Pagan*, 2014 WL 982876, at *16–17 (holding that undercooked, rotted food served with insects on moldy trays which resulted in nausea, stomach pain, and other health issues were sufficiently serious); *Griffin v. Smith*, 493 F. Supp. 129, 131 (W.D.N.Y. 1980) (holding unsanitary food utensils, cigarette burns and hair on the meal trays were sufficient evidence on a motion to dismiss of a serious deprivation). Plaintiff has adequately pled food-related issues and serious injuries as a result, such as nausea, vomiting, diarrhea, and significant weight loss (Am. Compl. ¶¶ 38, 53, 112). Therefore, Plaintiff has satisfied the first prong.

However, Plaintiff's claims fail under the subjective prong of the deliberate indifference test. Plaintiff first alleges that several of the Westchester Defendants allowed kitchen workers to

engage in unsanitary working habits, including failing to ensure workers are wearing protective equipment and properly cleaning meal trays.  (Am. Compl. ¶ 43.)  This falls short, as the Amended Complaint does not allege that these Defendants should have known that these actions would lead to an excessive risk to the health and safety of Plaintiff or any other detainee.  None of the alleged actions of the kitchen workers either alone or in combination would lead a reasonable person in the Defendants' position to foresee Plaintiff's alleged injuries.  Additionally, this purported behavior was observed in August of 2017, almost two months before Plaintiff was detained. Further, while Plaintiff alleges that the Defendants were aware of the actions of the kitchen workers, as previously noted, mere knowledge and acquiescence is not enough to state a claim under Section 1983.  *Smith*, 2021 WL 2856515, at *7.

Second, Plaintiff alleges that because he has filed numerous complaints and grievances, and because several lawsuits have been filed against Westchester and Aramark related to the quality of the food, all of the Defendants were generally aware of Plaintiff's concerns.  (Am. Compl. ¶¶ 49-52, 54, 57-59.)  However, as previously mentioned, mere awareness is not enough to survive the second prong.  Additionally, while Plaintiff's past complaints do show that Defendants were generally aware of his food troubles, as the grievance documents attached to the Amended Complaint and Gomez Affirmation make clear, Plaintiff's complaints are taken seriously by the Defendants.  Investigations are conducted whenever he files a grievance, and the documents show that where Plaintiff is able to verify his complaint by showing the food-related issue to WCJ staff, they are not only able to confirm Plaintiff's complaint once he files a grievance, but they are also able to replace Plaintiff's problematic meal or food item so he can eat a full meal. If Plaintiff decides that he does not want the replacement, then that is his decision.

Lastly, Plaintiff alleges that he was told by a non-defendant WCJ staff member that these acts were being done purposely by "Aramark staff including defendant[]s" in retaliation for Plaintiff's complaints and past lawsuit.[9] (Am. Compl. ¶ 56.)  While this allegation does allege some Aramark staff members were purposely contaminating Plaintiff's food, Plaintiff fails to allege which Defendants were implicated in this retaliation.  Because Plaintiff fails to specify which Defendants acted to impose the alleged condition, his claim does not pass the second prong. *See Little v. Mun. Corp.*, 51 F. Supp. 3d 473, 487; 492 (S.D.N.Y. 2014) (dismissing deliberate indifference claim where the plaintiff's complaint failed to name several individuals responsible for some of the conditions complained of).

Therefore, as presently pleaded, Plaintiff's food contamination claim must fail.  *See Smith*, 2021 WL 2856515, at *9 (finding that an inmate failed to sufficiently plead intent or deliberate indifference where the defendants were aware that he was being served rotten and cold food).

### ii.  Hazardous Conditions

Next, Plaintiff alleges he was forced to use and live in hazardous areas, including a slippery shower with no light, a hallway with cracks, a housing unit that was extremely dusty, and an infirmary room that would flood with rainwater, and had no windows, central air, or exhaust.  (Am. Compl. ¶¶ 67, 99, 101.)  The Westchester Defendants argue that these are not deprivations of a constitutional magnitude, and Plaintiff fails to allege that the Westchester Defendants were aware of these conditions.  (ECF No. 97 at 9.)

The Court finds that the Plaintiff's claim fails at the first prong.  None of the allegations reach the level of deprivation required for a Section 1983 claim.  First, both the broken light in the

---

[9] Plaintiff also alleges Defendant Blackman was spreading rumors about him within the kitchen staff.  (Am. Compl. ¶ 56.)  However, he does not connect these rumors to the supposed issues involving his food.  Without more, this allegation does not rise to the level of a Section 1983 claim.

slippery shower and the cracked walkway are not deprivations, as slip-and-falls are consistently held to fall short of this standard, *Edwards v. The City of New York*, No. 08 Civ. 05787(PGG), 2009 WL 2596595, at *2–3 (S.D.N.Y. Aug. 24, 2009), and Plaintiff was aware of the risks and had safely encountered both of these areas on prior occasions, *cf. Reynolds v. Powell*, 370 F.3d 1028, 1032 (10th Cir. 2004) (affirming summary judgment where an inmate alleged he slipped and was injured after he warned prison officials of the hazard and noted that he was using crutches and at an increased risk of falling).   Additionally, while Plaintiff did warn WCJ staff about the broken light before his injury, the light was only out for a total of two days, which is far from a sufficiently serious deprivation.

Plaintiff also alleges one housing unit is extremely dusty as workers were not sweeping or mopping.  Without more, Plaintiff fails to allege that lack of dusting created an unreasonable risk of serious damage to his health.  Lastly, Plaintiff's stay in the infirmary did not meet the level of a constitutional deprivation, as he fails to allege he suffered any harm as a result.  The only harm Plaintiff alleges is that his bed would get wet when it rained, which does not, in and of itself, pose a substantial risk of serious harm to his safety.  *Bailey v. Sheahan*, No. 02 C 7226, 2003 WL 22078373, at *3 (N.D. Ill. Sept. 5, 2003) ("Wet bedding does not pose 'a substantial risk of serious harm' to 'inmate health or safety.'") (citing *Farmer*, 511 U.S. at 837).  While prolonged exposure to extreme temperatures can satisfy the first prong, the exposure must cause injury.  *See Clay v. Lee*, No. 13-CV-7662 (KMK), 2019 WL 1284290, at *6 (S.D.N.Y. Mar. 20, 2019) (holding excessive heat did not consist of a constitutional violation where the claimant reported "pain, dehydration, thirst" and a "risk of heat stroke").  While the Plaintiff claims that he was kept in a room with no central air for two months, he fails to allege any harm or injury sustained because of this treatment.

Therefore, as presently pleaded, Plaintiff's hazardous conditions claim must fail.

### iii. Deliberate Indifference to Medical Needs

Plaintiff also alleges deliberate indifference to his health against Defendants Cheverko, Spano, Middleton, Roberts, Diaz, Castro, and Kitt due to the "substandard foods" as well as being "forced to stand on his fracture" and "remove[] his gutted cast."[10]  (Am. Compl. ¶¶ 132-134.)[11]

First, as discussed above, Plaintiffs claims about the "substandard foods" fail to plausibly allege a Section 1983 violation.

Second, Plaintiff alleges "excruciating pain in his back, hand, and leg" due to the Defendants' request for him to stand out of his wheelchair, and "severe pain" when forced to remove his cast.  Construing the facts in the light most favorable to Plaintiff, his pain satisfies the first prong of the test.

However, Plaintiff fails to allege any Defendants acted intentionally, or recklessly failed to act with reasonable care.  Plaintiff alleges that Defendants Castro and Kitt demanded he engage in a strip frisk without proper accommodations, resulting in him falling and injuring himself.  (Am. Compl ¶¶ 89-91.)  Defendant Kitt then confiscated his wheelchair and "gutted splint cast" against medical orders, before transporting him to infirmary housing.  (Id. ¶¶ 92-93.)  Plaintiff also claims that the Defendants responded to Plaintiff's grievance describing this incident falsely, by stating Plaintiff only needed wheelchairs for long distances, and that his medical file was amended in or around July of 2018 to say that he only needed a wheelchair for long distances.  (Id. ¶¶ 96-97.)

---

[10] While not included as a cause of action, to the extent Plaintiff is making a claim under the ADA, it also fails.  While the ADA creates an affirmative duty to provide reasonable accommodations for the disabled, "a plaintiff must demonstrate that any denial of benefits occurred 'because of the disability.'" *Alster v. Goord*, 745 F. Supp. 2d 317, 338 (S.D.N.Y. 2010) (citing *Henrietta D. v. Bloomberg*, 331 F.3d 261, 278 (2d Cir. 2003)).  Plaintiff has not made the requisite allegation.

[11] While Plaintiff asserts this cause of action as an Eighth Amendment cruel and unusual punishment claim, as discussed above, Plaintiff is a pretrial detainee and therefore his causes of action fall under the Fourteenth Amendment.

However, Plaintiff's allegations are refuted by his own exhibits.  The day after the incident, prison medical personnel confirmed Plaintiff could "ambulate[] short distances without assistance." (Gomez Aff. at 115, 117.)  Further, notes from a prior visit in May of 2018 acknowledge that Plaintiff ambulated to the bathroom with no issue, which Plaintiff acknowledged was true in his response.  (*Id.*)  It was completely reasonable for Defendants to believe Plaintiff could stand up to be searched after he had been seen walking to the bathroom.  Additionally, the facts as alleged do not show that Defendant Kitt acted intentionally or recklessly when removing his cast.  It was reasonable for Defendant Kitt to search the removable cast while conducting a search of Plaintiff after a visit with his mother.

Therefore, as presently pleaded, Plaintiff's deliberate indifference claim must fail. Defendants' motions to dismiss this claim are granted, without prejudice.

### a. Supervisory Liability Against Defendants Cheverko, Spano, Diaz, Kitt, Blackman, Mendoza, Delgrosso, and Middleton

Plaintiff next alleges supervisory liability against the individual Defendants who "are all supervisors who were personally involved with the aforementioned claims."  "[A] defendant in a § 1983 action may not be held liable for damages for constitutional violations merely because he [or she] held a high position of authority."  *Black v. Coughlin*, 76 F.3d 72, 74 (2d Cir. 1996) (affirming the district court's dismissal of claims against the former Commissioner of the state's Department of Correctional Services where the plaintiff did not allege his personal involvement in an improperly conducted prison disciplinary hearing).  Instead, "a plaintiff must establish a given defendant's personal involvement in the claimed violation in order to hold that defendant liable in

his individual capacity." *Warren v. Pataki*, 823 F.3d 125, 136 (2d Cir. 2016) (citing *Patterson*, 375 F.3d at 229).

The Second Circuit has stated that, "*Iqbal* holds that a plaintiff may not rely on a special test for supervisory liability.  Rather, 'a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution.'" *Tangreti v. Bachmann*, 983 F.3d 609, 616 (2d Cir. 2020) (quoting *Iqbal*, 556 U.S. at 676).  Further, the Second Circuit, agreeing with the Fifth, Seventh, Eighth, and Ninth Circuits, *id*. at 618 n.6, officially stated that, "[t]o hold a state official liable under § 1983, a plaintiff must plead . . . the elements of the underlying constitutional violation directly against the official without relying on a special test for supervisory liability." *Id*. at 620.  Accordingly, here, to hold an official liable, Plaintiff must allege that each individual Defendant meets all elements required for a Section 1983 claim.

First, as discussed above, Plaintiff's food related claims fail to amount to a conditions of confinement claim, and therefore the Court agrees with Defendants that they should be dismissed. *Rivera v. Royce*, 19-CV-10425 (PMH), 2021 WL 2413396, at *10 (S.D.N.Y. June 11, 2021) ("The Court need not determine whether Plaintiff pled [defendants'] personal involvement because Plaintiff failed to plead any underlying claims.  Without an underlying claim of a constitutional violation, no supervisory liability exists.").

Next, read liberally, Plaintiff takes issue with WCJ's grievance process.  Specifically, Plaintiff alleges Defendants Cheverko and Mendoza have ignored complaint letters; Defendant Delgrosso has overturned approved grievances; Defendants Delgrosso, Diaz, and Kitt have falsely responded to grievances; and Defendant Kitt refused a grievance.  In response, the Aramark Defendants argue "receipt of a letter or grievance, without personally investigating or acting

[thereon], is insufficient to establish personal involvement."  (ECF No. 94 at 17) (citing *Burns v. Fischer*, No. 13-CV-486 (LEK/CFH), 2014 WL 1413387, at *5 (N.D.N.Y. Feb. 3, 2014)).  The Court agrees, and therefore, the claims against Cheverko and Mendoza fail.

It is true that personal involvement can be found "where [a] denied grievance alleges 'an ongoing constitutional violation that the supervisory official who reviews the grievance can remedy directly,'" *Valverde v. Folks*, 1:19-cv-08080-MKV, 2020 WL 5849515, at *11 (S.D.N.Y. Sept. 30, 2020) (quoting *Corbett v. Annucci*, No. 16-cv-4492 (NSR), 2018 WL 919832, at *7 (S.D.N.Y. Feb. 13, 2018)); however, as discussed above, Plaintiff has failed to allege any ongoing constitutional violations based on the conditions of confinement, and therefore the claims against Defendants Delgrosso, Diaz, and Kitt must be dismissed.  Further, while Plaintiff alleges Delgrosso and Diaz have responded "falsely" to his grievances, he has failed to allege that any of their responses were actually false.  Their statements that "insects in food are rare" and "hair inside meals at WCJ is uncommon" (Am. Compl. ¶52) are reasonable, as Plaintiff alleges two incidents where he found insects in his food, and once where he found a hair.  (*Id*. ¶¶ 41, 50.)

Therefore, as presently pleaded, Plaintiff's supervisory liability claims must fail.  Defendants' motions to dismiss this claim are granted, without prejudice.

### b.  First Amendment Claims Against Defendants Delgrosso, Diaz, Cheverko, Spano, Roberts, Ashterman, Spaulding, Parchment, and, Hewitt

#### i.  *Religious Freedom*

The Amended Complaint asserts a cause of action under the First Amendment due to "an unnecessary burden on plaintiff['s] religious belief." (Am. Compl. ¶ 123.)  The Aramark Defendants aver that Plaintiff has failed to allege that his religious beliefs were substantially burdened by their conduct, or that he has a sincerely held belief.  (ECF No. 94 at 25.)

26

The Free Exercise Clause of First Amendment states, "Congress shall make no law . . . prohibiting the free exercise" of religion.  U.S Const. amend. I.  Prison inmates are protected by the clause, though not necessarily to the same extent as others.  *See O'Lone v. Estate of Shabazz*, 482 U.S. 342, 348 (1987) ("The limitations on the exercise of constitutional rights arise both from the fact of incarceration and from valid penological objectives.").  In order to assert a Free Exercise claim, a plaintiff must allege that (1) the practice asserted is religious and the belief is sincerely held; (2) the challenged conduct infringes upon the religious belief; and (3) the challenged practice does not further a legitimate penological objective.  *Farid v. Smith*, 850 F.2d 917, 926 (2d Cir. 1988).

Here, Plaintiff appears to be alleging that he was forced to change his religion from Catholic to Jewish due to the quality of the food served to non-Jewish inmates.  However, Plaintiff was never restricted from practicing his religion, instead this change was made by Plaintiff himself with no action on the part of Defendants, and Plaintiff admits that he misrepresented his religious beliefs to officials.  He cannot now allege his religion was burdened when he made this decision of his own free will.

### iv.  Denial of Access to the Courts

The Amended Complaint asserts a cause of action under the First Amendment for being "deprived [] access to writing paper, and a properly stocked law library" and the "refus[al] to mail his federal lawsuit unless defendant Hewitt read through it[.]"  (Am. Compl. ¶ 123.)  The Westchester Defendants argue that Plaintiff has failed to allege that he suffered any actual injury. (ECF No. 97 at 11.)

Inmates have a "constitutional right of access to the courts [that] gives rise to a number of derivative rights, including the right to access legal materials to prepare a case, and the right of

indigent inmates to be provided with paper and pens to draft legal documents and stamps to mail

them," *Collins v. Goord*, 581 F. Supp. 2d 563, 573 (S.D.N.Y. 2008) (citing *Bounds v. Smith*, 430

U.S. 817, 824–28 (1977)), and "requires prison authorities to assist inmates in the preparation and

filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate

assistance from persons trained in the law," *Bourdon v. Loughren*, 386 F.3d 88, 92 (2d Cir. 2004)

(quoting *Bounds*, 430 U.S. at 828).

To state a claim for denial of access to the courts, a plaintiff must allege the defendant's

conduct: (1) "was deliberate and malicious," and (2) "resulted in actual injury to the plaintiff such

as the dismissal of an otherwise meritorious legal claim." *Cancel v. Goord*, No. 00 Civ. 2042

(LMM), 2001 WL 303713, at *4 (S.D.N.Y. Mar. 29, 2001) (citing *Lewis v. Casey*, 518 U.S. 343,

351 (1996). To demonstrate actual injury, a plaintiff must allege: "(1) a valid underlying cause

of action separate from the right-of-access claim; and (2) frustration or hindrance of the litigation

caused by the defendant's actions." *Means v. Rockland Cnty. Corr. Facility*, 18-CV-8290 (CM),

2019 WL 1596489, at *7 (S.D.N.Y. Apr. 15, 2019) (citing *Christopher v. Harbury,* 536 U.S. 403,

415 (2002)).

First, Plaintiff alleges that he was denied paper and photocopies due to the WCJ policy that

limits indigent inmates to 12 sheets per week, and the law library contains old materials and is

missing books. (Am. Compl. ¶¶ 78-83, Gomez Aff. at 16-19, 69-71, 88, 90, 98, 151, 154.)

However, Plaintiff fails to allege an actual injury from any of these circumstances.

Next, Plaintiff alleges that Defendants Hewitt and Ashterman interfered with mailing of

his legal filings, as they refused to provide him postage if he would not let them inspect the

documents. (Am. Compl. ¶ 76, Gomez Aff. at 16-19.) While Plaintiff alleges his Amended

Complaint was delayed due to WCJ's mail policy, this was his own doing, as he refused to allow

Defendant Hewitt to review the filings per WCJ policy.  *See Standley v. Lyder*, No. 99 Civ. 4711, 2001 WL 225035, at *2 (S.D.N.Y. Mar. 7, 2001) ("It is accepted that a prisoner must be present when, for whatever reason, legal mail (clearly marked as such) is opened by prison officials . . . ."). Further, no injury occurred, as Plaintiff eventually did submit the instant action with no frustration or hinderance of the litigation.  *See Jermosen v. Coughlin*, 877 F. Supp 864, 871 (S.D.N.Y 1995) ("delay in being able to work on one's legal action or communicate with the courts does not rise to the level of a constitutional violation").  Plaintiff also alleges that one of his legal letters was opened and inspected outside of his presence.  (Gomez Aff. at 214.)  While "a prisoner has a right to be present when his legal mail is opened . . . an isolated incident of mail tampering is usually insufficient to establish a constitutional violation."  *Davis v. Goord*, 320 F.3d 346, 351 (2d Cir. 2003), *vacated on other grounds*, 2003 U.S. App. LEXIS 13030 (2d Cir. Feb. 10, 2003). Further, Plaintiff filed a grievance related to this incident that was accepted.  (Gomez Aff. at 212-211.)

Lastly, Plaintiff alleges that Defendant Hewitt failed to provide him certain services, including notary services.  (Gomez Aff. at 101-103, 143.)  However, as the exhibits show, Plaintiff never suffered an actual injury in these circumstances, as an WCJ official was always willing to provide him with the requested service.  (*Id*. at 99-100, 104-107, 141-142, 144.)

Accordingly, Plaintiff's First Amendment claims are dismissed, without prejudice.

### c.   First Amendment Retaliation Claims Against Defendants Roberts, Delgrosso, MacDonald, Blackman, Mendoza, Butler, Kohli, Stewart, Boissy, and Flax

Plaintiff next alleges First Amendment retaliation claims against multiple individual Defendants for "the filing of grievances and previous litigation."  (Am. Compl. ¶ 156.)  As the Westchester Defendants concede that Plaintiff has pled a plausible First Amendment retaliation

claim against Defendants Roberts and MacDonald, (ECF No. 97 at 6), the Court will not address those claims.

To state a First Amendment retaliation claim that survives a motion to dismiss, a plaintiff must allege: "(1) the plaintiff engaged in speech or conduct that was protected by the First Amendment; (2) the defendant was aware of that activity; (3) the defendant took adverse action against the plaintiff; and (4) there was a causal connection between the protected speech and the adverse action." *Booker v. Griffin*, No. 16-CV-0072 (NSR), 2019 U.S. Dist. LEXIS 96867, at *14 (S.D.N.Y. June 7, 2019) (citing *Dolan v. Connolly*, 794 F.3d 290, 294 (2d Cir. 2015)).

The filing of grievances and complaints as well as the filing of a lawsuit are all constitutionally protected activity. *Coleman v. Cuomo*, No. 9:18-CV-0390 (MAD/CFH), 2019 WL 6829613, at *10 (N.D.N.Y. Dec. 13, 2019) ("It is well settled that the filing of a lawsuit is constitutionally-protected activity."); *Davis*, 320 F.3d at 352–53; *see also Perkins v. Perez*, No. 17-CV-1341(KMK), 2019 WL 1244495, at *14 (S.D.N.Y. Mar. 18, 2019) ("Plaintiff engaged in protected speech by writing a letter of complaint to Perez"). To qualify as an "adverse action," retaliatory conduct must be of a kind that "would deter a similarly situated individual of ordinary firmness from exercising his or her constitutional rights . . . ." *Zelnik v. Fashion Inst. Of Tech.*, 464 F. 3d 217, 225 (2d Cir. 2006).

Causal connection can be more difficult. It requires a claimant to prove that an adverse action relates to the protected First Amendment activity—that is, a claimant must present evidence from which a jury could conclude that the protected First Amendment activity was "a substantial or motivating factor" in the prison official's adverse action against him or her. *Graham v. Henderson*, 89 F.3d 75, 79 (2d Cir. 1996). It can also be established indirectly, through a showing of close temporal proximity between the protected activity and the adverse employment action.

*See De Cintio v. Westchester Cnty. Med. Ctr.*, 821 F.2d 111, 115 (2d Cir. 1987) ("Proof of causal connection can be established indirectly by showing that the protected activity was followed closely by discriminatory treatment . . . or through other evidence such as disparate treatment of fellow employees who engaged in similar conduct . . . or directly through evidence of retaliatory animus directed against a plaintiff by the defendant.")

Although Plaintiff identifies adverse actions taken against him, including his allegedly retaliatory and unjustified misbehavior report, confinement, and problematic food, Plaintiff does not plausibly allege that Defendants Mendoza, Butler, Kohli, Stewart, Boissy, and Flax were aware of all of his grievances, complaints, or prior lawsuit, and took the adverse actions against him because of this protected activity.   Therefore, he fails to state a claim that those Defendants retaliated against him.

Defendant Blackman was the only individual in this group of kitchen supervisors named in Plaintiff's prior lawsuit.  *Pagan*, 2014 WL 982876, at *1.  However, Plaintiff has failed to plausibly allege a causal connection between his lawsuit and the kitchen workers' behavior.  There are no factual allegations of any retaliatory animus from Defendant Blackman.  Further, Plaintiff alleges repeatedly in the Amended Complaint that the food issues he experienced were also experienced by many other inmates, not just him.  (Am. Compl. ¶¶ 32, 43-44, 105-109, 112.) Clearly Plaintiff was not targeted by Defendant Blackman if others also had the same issues that he did.

Plaintiff also alleges Defendant Delgrosso threatened to take away his contact visits if he requested a "reasonable accommodation" again.  (Am. Compl. ¶ 95.)  The Westchester Defendants aver that Defendant Delgrosso's threat was *de minimis*, and would not deter a similarly situated prisoner from exercising his or her constitutional rights.  (ECF No. 97 at 6.)

Requesting an accommodation constitutes protected activity. *Washington v. New York City Dep't of Educ.*, 740 F. App'x 730, 733 (2d Cir. 2018). Additionally, Defendant Delgrosso's threat constitutes an adverse action. *Terry v. Hulse*, No. 16-CV-252, 2018 WL 4682784, *11 (S.D.N.Y. Sept. 28, 2018) ("Courts have found that, while verbal threats may qualify as adverse actions, they must be sufficiently specific and direct to be actionable.") (internal quotation marks omitted); *see also Quezada v. Roy*, No. 14 Civ. 4056, 2015 WL 5970355, *21 (S.D.N.Y. Oct. 13, 2015) ("The less direct and specific a threat, the less likely it will deter an inmate from exercising his First Amendment rights") (quoting *Mateo v. Fischer*, 682 F. Supp. 2d 423, 434 (S.D.N.Y. 2010)). Further, there is a clear causal connection between the request for an accommodation and the threat. "The causal connection must be sufficient to warrant the inference that the protected speech was a substantial motivating factor in the adverse employment action," or, "the adverse employment action would not have been taken absent the employee's protected speech." *Wheeler v. Natale*, 178 F. Supp. 2d 407, 411 (S.D.N.Y. 2001). Here, the Amended Complaint sufficiently alleges a causal connection, as Defendant Delgrosso would not have threatened Plaintiff with taking away his contact visits unless he requested an accommodation.

Therefore, Plaintiff has stated a retaliation claim against Defendant Delgrosso; however, as presently pleaded, Plaintiff's First Amendment retaliation claim against Defendants Blackman, Mendoza, Butler, Kohli, Stewart, Boissy, and Flax fail. The Westchester Defendants' motion to dismiss this claim is granted in part, and the Aramark Defendants' motion to dismiss this claim is granted, without prejudice.

### d.  Equal Protection Against All Defendants

Plaintiff alleges Defendants "deliberately targeted a specific class of people" and "deprived them of foods in accordance with their religious beliefs." (Am. Compl. ¶ 147.) The Court

understands this to be a Fourteenth Amendment Equal Protection claim. The Fourteenth Amendment declares that "[n]o State shall . . . deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. "The Equal Protection Clause 'is essentially a direction that all persons similarly situated should be treated alike.'" *Brown v. City of Oneonta*, 221 F.3d 329, 337 (2d Cir. 1999) (quoting *City of Cleburne v. Cleburne Living Ctr., Inc*., 473 U.S. 432, 439 (1985)). "To state a violation of the Equal Protection Clause, a plaintiff must allege 'that he [or she] was treated differently than others similarly situated as a result of intentional or purposeful discrimination.'" *Lopez v. Cipolini*, 136 F. Supp. 3d 570, 590–91 (S.D.N.Y. 2015) (quoting *Phillips v. Girdich*, 408 F.3d 124, 129 (2d Cir. 2005)). Since Plaintiff has not pled facts that would support a claim of religious discrimination, nor has he alleged he was treated differently than others similarly situated, the Equal Protection claim must be dismissed without prejudice. *Mateo v. Westchester County*, 18-CV-03499 (NSR), 2020 U.S. Dist. LEXIS 179366, *19 (S.D.N.Y. Sept. 29, 2020).

### e. Substantive Due Process Against All Defendants

Plaintiff alleges violations of substantive due process, as Defendants "deprived [him] of the foregoing rights, immunities and privileges without due process." (Am. Compl. ¶ 150.) To the extent that Plaintiff is attempting to argue that the alleged false misbehavior reports violated his right to substantive due process, the Supreme Court has held that "[w]here a particular Amendment 'provides an explicit textual source of constitutional protection' against a particular sort of government behavior, 'that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing these claims.'" *Albright v. Oliver*, 510 U.S. 266, 273 (1994) (quoting *Graham v. Connor*, 490 U.S. 386, 395 (1989)). Because the First Amendment provides a more explicit textual source of constitutional protection for Plaintiff's claims of

retaliation, the Fourteenth Amendment substantive due process claim is dismissed as to all Defendants.

### f. Failure to Intervene Against All Defendants

Plaintiff next alleges Defendants "failed to intervene" or "take any preventive or corrective action" to prevent the "deprivations." (Am. Compl. ¶ 139.) Specifically, Defendants failed to "properly supervise" inmate workers and kitchen staff, and "turned a blind eye" to misconduct. (*Id.* ¶ 143.)

A claim that alleges failure to protect or intervene "is a Fourteenth Amendment violation where the officer acted with 'deliberate indifference to a substantial risk of serious harm to an inmate.'" *Rosen v. City of New York*, 667 F. Supp. 2d 355, 359–60 (S.D.N.Y. 2009) (citing *Farmer*, 511 U.S. at 828). For such claims, the Court must apply the two-prong framework for claims of deliberate indifference, and the inmate must allege "(1) that the failure to intervene or protect the inmate was sufficiently serious such that it caused an unquestioned and serious deprivation of basic human needs and (2) that the defendant acted with a sufficiently culpable state of mind." *Corley v. City of N.Y.,* No. 14 Civ. 3202, 2017 WL 4357662, at *12 (S.D.N.Y. Sept. 28, 2017) (internal quotation marks omitted). The second prong of this claim is measured by an objective standard, and asks whether the defendant "knew, or should have known" that a substantial risk of serious harm would result from the failure to intervene. *Darnell*, 849 F.3d at 17.

Here, Plaintiff makes no allegations that anyone knew or should have known of any risk of harm to the Plaintiff, let alone that any individual's failure to intervene resulted in harm. As Plaintiff's deliberate indifference claims have already failed, so too must his failure to intervene. *Matthews v. City of New York*, 889 F. Supp. 2d 418, 443–44 (E.D.N.Y. 2012) ("failure to intervene

claim is contingent upon the disposition of the primary claims underlying the failure to intervene claim").

### g.  Conspiracy Claim Against All Defendants

Plaintiff next alleges a Section 1983 conspiracy claim against all Defendants for "conspir[ing] amongst each other to suppress [sic] and minimize/contort food related grievances [and] complaints . . . ."  To plead a conspiracy under Section 1983, a plaintiff must allege "(1) an agreement between two or more state actors or between a state actor and a private entity; (2) to act in concert to inflict an unconstitutional injury; and (3) an overt act done in furtherance of that goal causing damages."  *Pangburn v. Culbertson*, 200 F.3d 65, 72 (2d Cir. 1999).  "[T]he pleadings must present facts tending to show agreement and concerted action" and therefore conclusory allegations are insufficient.  *Banks v. City of White Plains Police*, No. 14 CV 670 (VB), 2014 WL 6642360, at *3 (S.D.N.Y. Oct. 17, 2014).  Moreover, "a civil conspiracy claim does not set forth an independent cause of action but rather is sustainable only after an underlying claim has been established."  *Gonzalez v. City of New York*, No. 1:18-cv-2197-GHW, 2020 WL 158432, at *4 (S.D.N.Y. Jan. 13, 2020) (quoting *DeMartino v. N.Y.S. Dep't of Labor*, 167 F. Supp. 3d 342, 373 (E.D.N.Y. 2016)).

Here, Plaintiff's conspiracy allegations appear to be only related to the denial of his food-related grievances.  (Am. Compl. ¶ 153.)  As already detailed in this opinion, those claims fail as they have not been adequately pleaded.  Because there is no underlying claim to support Plaintiff's conspiracy allegations, the Court dismisses Plaintiff's conspiracy claims.

### II.  RLUIPA Claim Against Westchester, Diaz, Hewitt, Parchment, Spano, Delgrosso, Roberts, Ashterman, Cheverko, and Spaulding

Plaintiff also asserts a cause of action under the Religious Land Use and Institutionalized Persons Act of 2000 ("RLUIPA"), 42 U.S.C. § 2000cc et seq.  (Am. Compl. ¶¶ 125-128.)  RLUIPA

provides that "'[n]o government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution,' unless the burden furthers 'a compelling governmental interest,' and does so by 'the least restrictive means.'" *Cutter v. Wilkinson*, 544 U.S. 709, 712 (2005) (quoting 42 U.S.C. § 2000cc-1(a)(1)-(2)).   This Act applies to programs or activities receiving federal financial support or when the described burden affects interstate commerce. *Cutter*, 544 U.S. at 715–16.

However, RLUIPA does not authorize claims for monetary damages against states or state officers in either their official or individual capacities. *Holland v. Goord*, 758 F.3d 215, 224 (2d Cir. 2014); *Washington v. Gonyea*, 731 F.3d 143, 145 (2d Cir. 2013).   Additionally, absent a request for prospective relief, the Eleventh Amendment bars declaratory relief in the form of a statement that Plaintiff's constitutional rights have been violated in the past. *Hill v. Chapdelaine*, No. 3:16cv1656(VLB), 2017 WL 62511, at *4–5 (D. Conn. Jan. 5, 2017).   While there is an open question of whether money damages may be sought against a municipality, *see Clark v. City of New York*, 18 Civ. 2334 (AT) (KHP), 2021 U.S. Dist. LEXIS 177534, at *22–23 (S.D.N.Y. Sept. 17, 2021), Plaintiff's claim also fails on the merits.   Plaintiff fails to allege any burden on his religious practices, let alone a substantial burden.   When Plaintiff changed his religion to Jewish, he was provided kosher meals.   When he wanted to change his religion back to Catholic, he was allowed to.   There are no allegations that any of the Defendants modified Plaintiff's religious practices in any way.   Accordingly, Plaintiff's RLUIPA claim is dismissed, without prejudice.

III.   **RFFA Claim Against Westchester, Middleton, Diaz, Delgrosso, Roberts, and Blackman**

Plaintiff also asserts a cause of action under the Religious Freedom Restoration Act of 1993 ("RFRA"), 42 U.S.C. § 2000bb et seq., against Westchester, Middleton, Diaz, Delgrosso, Roberts, and Blackman.   (Am. Compl. ¶¶ 129-131.)   Plaintiff claims that the Defendants "collectively

violated [his] religious freedom . . . and such violation [sic] contradict RFRA." (*Id*. ¶ 130.)  RFRA, as enacted, prohibits the government from "substantially burden[ing] a person's exercise of religion even if the burden results from a rule of general applicability."  42 USC § 2000bb-1(a).  The statute only allows such conduct if the "application of the burden to the person— (1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest.  42 U.S.C. § 2000bb-1(b).  The statute allows for violations of this mandate to be asserted as a claim or defense in judicial proceedings.  42 U.S.C. § 2000bb-1(c).

RFRA has been struck down as against the states by the Supreme Court, which held that the law exceeded Congress' legislative powers.  *City of Boerne v. Flores*, 521 U.S. 507, 536 (1997).  Since the "Supreme Court has 'invalidated RFRA as applied to States and their subdivisions,'" no claim can arise against them under the statute, and Plaintiff's RFRA claim against Westchester should be dismissed.  *Ross v. Aramark Corp*., 18 CV 2246 (VB), 2019 WL 1172383, at *7 (quoting *Cutter v. Wilkinson*, 544 U.S. 709, 715 (2005)).

Additionally, as discussed above, there are no factual allegations showing any burden placed on Plaintiff's religious beliefs.  Accordingly, the claim is dismissed without prejudice as to the individually named Defendants, and dismissed with prejudice as to Westchester.

## IV.   <u>State Law Claims</u>

Plaintiff's Amended Complaint asserts claims under state law for gross negligence related to the food issues and hazardous conditions (Am. Compl. ¶ 162), *respondeat superior* for the "tortious act(s)" of the employees (*id*. ¶ 165), intentional infliction of emotional distress for conduct that was "extreme, outrageous, and shocks the conscious" (*id*. ¶ 167), and negligent retention and hiring to hold Westchester and Aramark "vicariously liable" (*id*. ¶ 172.)  As an initial

matter, New York General Municipal Law § 50-e requires a notice of claim as a condition precedent to bringing a personal injury action against a municipal corporation, or any of its officers, agents, or employees.  N.Y. Gen. Mun. Law§§ 50-e(1), 50-i(1); *see Parise v. New York City Dep't of Sanitation*, 306 Fed. Appx. 695, 697 (2d Cir. 2009) ("Under New York law, a notice of claim is a condition precedent to bringing a personal injury action against a municipal corporation.").

Plaintiff has previously filed two notices of claim.  The first, dated January 17, 2018 discusses (i) medical issues involving a hernia operation, (ii) the WCJ rules surrounding indigent mail and supplies, (iii) additional claims of retaliation involving Defendant Kitt, and (iv) the issues surrounding the inmate meals.  (ECF No. 96 Ex. D.)  The second, dated June 15, 2018, discusses the incident involving Plaintiff's wheelchair and cast.  (*Id*. Ex. E.)  The Court will therefore only consider the facts alleged in the Amended Complaint as well as either of the two Notices for the purposes of the state law claims, which only includes the indigent mail allegations, food issues, and the wheelchair incident.  The claims are discussed separately below.

### a.  Gross Negligence against Westchester, Delgrosso, Cheverko, and Roberts

Under New York law, a prima facie case of gross negligence requires: "(1) a duty to the plaintiff; (b) a breach of duty; (c) a reasonably close causal connection between the contact and the resulting injury; and (d) actual loss, harm or damage."  *Cromer Fin. V. Berger*, 137 F. Supp. 2d 452, 495 (S.D.N.Y. 2001) (internal quotation marks omitted).  "To constitute gross negligence, the act or omission must be of an aggravated character, as distinguished from the failure to exercise ordinary care" or "conduct that evinces a reckless disregard for the rights of others or smacks of intentional wrongdoing."  *Id*. (citing *Curley v. AMR Corp*., 153 F.3d 5, 13 (2d Cir. 1998)) (internal quotation marks omitted).  In the prison context, the New York Court of Appeals has concluded

"that the State owes a duty of care to inmates" for foreseeable risks of harm, meaning what the State "knew or had reason to know" or what the State "is or should be aware of." *Sanchez v. State of New York*, 99 N.Y.2d 247, 255 (2002).

Here, the Court has already analyzed Plaintiff's Amended Complaint in the context of his Section 1983 claims, and concluded that no Defendant knew or should have known of a serious harm posed to Plaintiff. Plaintiff has not alleged that Defendants acted recklessly with regard to Plaintiff's food issues or the wheelchair incident. That conclusion applies with equal force when examined within the framework of a state law gross negligence claim. Accordingly, Plaintiff's gross negligence claim is dismissed without prejudice.

### *b. Respondeat Superior* against Westchester and Aramark

Under New York law, the doctrine of *respondeat superior* "renders an employer vicariously liable for torts committed by an employee acting within the scope of the employment." *State Farm Ins. Co. v. Cent. Parking Sys., Inc.*, 18 A.D.3d 859, 860 (N.Y. App. Div. 2005) (citing *Judith M. v Sisters of Charity Hosp.*, 93 NY2d 932 (1999)). Pursuant to this doctrine, "the employer may be liable when the employee acts negligently or intentionally, as long as the tortious conduct is generally foreseeable and a natural incident of the employment." *Id.* However, where the employee "departs from the line of his duty so that for the time being his acts constitute an abandonment of his service, the master is not liable." *Jones v. Weigand*, 134 App. Div. 644, 645 (N.Y. App. Div. 1909).

Here, Plaintiff has failed to plausibly allege any tortious acts by Westchester and Aramark employees in both his Amended Complaint and Notices of Claim. *See Edwards v. City of New York,* 15-Cv-3637 (SHS), 2019 WL 3456840, at *13 (S.D.N.Y. July 1, 2019) ("an employer may

not be held liable for an employee's tort if the employee is not liable for that tort").  Accordingly, Plaintiff's *respondeat superior* claim is dismissed without prejudice.

### c.  Intentional Infliction of Emotional Distress against All Defendants

To state a claim for intentional infliction of emotional distress, a plaintiff must allege: "(1) extreme and outrageous conduct, (2) intent to cause severe emotional distress, (3) a causal connection between the conduct and the injury, and (4) severe emotional distress." *Bender v. City of New York*, 78 F.3d 787, 790 (2d Cir. 1996).  To satisfy the first element, the conduct must have been "so outrageous in character, and so extreme in degree, as to go beyond all bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community."  *Id*. at 790–91 (citing *Murphy v. American Home Prods. Corp*., 461 N.Y.S.2d 232, 236 (1983)) (internal quotation marks omitted).  Plaintiff has failed to allege any facts constituting extreme and outrageous conduct beyond all bounds of decency.  He also fails to allege any emotional distress.  Accordingly, Plaintiff's intentional infliction of emotional distress claim is dismissed without prejudice.

### d.  Negligent Retention and Hiring against Westchester and Aramark

"To state a prima facie claim of negligent retention and hiring, a plaintiff must demonstrate the standard elements of negligence in addition to the following: (1) that the tort-feasor and the defendant were in an employee-employer relationship, (2) that the employer knew or should have known of the employee's propensity for the conduct which caused the injury prior to the injury's occurrence, and (3) that the tort was committed on the employer's premises or with the employer's chattels." *Smith v. City of Mt. Vernon*, 08 Civ. 7690 (SCR), 2010 WL 11712673, at *4 (S.D.N.Y. Jan. 7, 2010) (citing *Ehrens v. Lutheran Church*, 385 F.3d 232, 235 (2d Cir. 2004)).

While Plaintiff may have alleged negligence on behalf of the Defendants involved in the wheelchair incident, there are no facts alleging those Defendants had any propensity for any specific kind of conduct, nor are there facts alleging Westchester or Aramark were aware of such propensity.  Accordingly, Plaintiff's negligent retention and hiring claim is dismissed without prejudice.

## CONCLUSION

For the foregoing reasons, the Aramark Defendants' motion is GRANTED, and the Westchester Defendants' motion is GRANTED in part and DENIED in part.  The surviving claims include the First Amendment retaliation claims against Defendants Roberts, MacDonald, and Delgrosso.  Plaintiff is granted leave to file a Second Amended Complaint as to any claims that have not been dismissed with prejudice.  If he chooses to do so, Plaintiff will have until November 29, 2021 to file a Second Amended Complaint consistent with this order.  Plaintiff is advised that the Second Amended Complaint will replace not supplement the Amended Complaint so any claims he wants to pursue must be included in or attached to the Second Amended Complaint.  Plaintiff is not required to reattach his exhibits or affirmation documents to the Second Amended Complaint; however, he may attach documents not previously provided to the Court.  An Amended Civil Rights Complaint form is attached to this Order.  Defendants are then directed to answer or otherwise respond by December 20, 2021.

If Plaintiff fails to file a Second Amended Complaint within the time allowed, and he cannot show good cause to excuse such failure, those claims dismissed without prejudice by this order will be deemed dismissed with prejudice.  If no Second Amended Complaint is timely filed, Defendants Roberts, MacDonald, and Delgrosso must answer the remaining claims against them on or before December 20, 2021.

The Clerk of Court is respectfully directed to terminate the motions at ECF Nos. 93 & 95. The Clerk is also respectfully directed to mail a copy of this Opinion and Order to Plaintiff at the address listed on ECF, and to show service on the docket.


Dated: September 28, 2021                              SO ORDERED:

      White Plains, New York

                                   NELSON S. ROMÁN

                               United States District Judge

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

_____

_____

Write the full name of each plaintiff.

-against-

_____

_____

_____

Write the full name of each defendant. If you cannot fit the
names of all of the defendants in the space provided, please
write "see attached" in the space above and attach an
additional sheet of paper with the full list of names. The
names listed above must be identical to those contained in
Section IV.

_____CV_____
(Include case number if one has been
assigned)

**COMPLAINT**
(Prisoner)

Do you want a jury trial?
☐ Yes    ☐ No

---

**NOTICE**

The public can access electronic court files. For privacy and security reasons, papers filed
with the court should therefore *not* contain: an individual's full social security number or full
birth date; the full name of a person known to be a minor; or a complete financial account
number. A filing may include *only*: the last four digits of a social security number; the year of
an individual's birth; a minor's initials; and the last four digits of a financial account number.
See Federal Rule of Civil Procedure 5.2.

---

## I.      LEGAL BASIS FOR CLAIM

State below the federal legal basis for your claim, if known. This form is designed primarily for prisoners challenging the constitutionality of their conditions of confinement; those claims are often brought under 42 U.S.C. § 1983 (against state, county, or municipal defendants) or in a "*Bivens*" action (against federal defendants).

☐   Violation of my federal constitutional rights

☐   Other: _____

## II.     PLAINTIFF INFORMATION

Each plaintiff must provide the following information. Attach additional pages if necessary.

First Name                    Middle Initial                  Last Name

State any other names (or different forms of your name) you have ever used, including any name you have used in previously filing a lawsuit.

Prisoner ID # (if you have previously been in another agency's custody, please specify each agency and the ID number (such as your DIN or NYSID) under which you were held)

Current Place of Detention

Institutional Address

County, City                                  State                        Zip Code

## III.    PRISONER STATUS

Indicate below whether you are a prisoner or other confined person:

☐   Pretrial detainee
☐   Civilly committed detainee
☐   Immigration detainee
☐   Convicted and sentenced prisoner
☐   Other: _____

## IV.    DEFENDANT INFORMATION

To the best of your ability, provide the following information for each defendant. If the correct information is not provided, it could delay or prevent service of the complaint on the defendant. Make sure that the defendants listed below are identical to those listed in the caption. Attach additional pages as necessary.

Defendant 1:

First Name            Last Name                    Shield #

Current Job Title (or other identifying information)

Current Work Address

County, City                        State              Zip Code

Defendant 2:

First Name            Last Name                    Shield #

Current Job Title (or other identifying information)

Current Work Address

County, City                        State              Zip Code

Defendant 3:

First Name            Last Name                    Shield #

Current Job Title (or other identifying information)

Current Work Address

County, City                        State              Zip Code

Defendant 4:

First Name            Last Name                    Shield #

Current Job Title (or other identifying information)

Current Work Address

County, City                        State              Zip Code

## V.      STATEMENT OF CLAIM

Place(s) of occurrence: _____

Date(s) of occurrence: _____

**FACTS:**

State here briefly the FACTS that support your case. Describe what happened, how you were harmed, and how each defendant was personally involved in the alleged wrongful actions. Attach additional pages as necessary.

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

**INJURIES:**

If you were injured as a result of these actions, describe your injuries and what medical treatment, if any, you required and received.

_____

_____

_____

_____

_____

## VI.    RELIEF

State briefly what money damages or other relief you want the court to order.

_____

_____

_____

_____

_____

_____

_____

## VII.   PLAINTIFF'S CERTIFICATION AND WARNINGS

By signing below, I certify to the best of my knowledge, information, and belief that: (1) the complaint is not being presented for an improper purpose (such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation); (2) the claims are supported by existing law or by a nonfrivolous argument to change existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Federal Rule of Civil Procedure 11.

I understand that if I file three or more cases while I am a prisoner that are dismissed as frivolous, malicious, or for failure to state a claim, I may be denied *in forma pauperis* status in future cases.

I also understand that prisoners must exhaust administrative procedures before filing an action in federal court about prison conditions, 42 U.S.C. § 1997e(a), and that my case may be dismissed if I have not exhausted administrative remedies as required.

I agree to provide the Clerk's Office with any changes to my address. I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.


Each Plaintiff must sign and date the complaint. Attach additional pages if necessary. If seeking to proceed without prepayment of fees, each plaintiff must also submit an IFP application.


| Dated | | Plaintiff's Signature |
| --- | --- | --- |
| First Name | Middle Initial | Last Name |
| Prison Address | | |
| County, City | State | Zip Code |

Date on which I am delivering this complaint to prison authorities for mailing: _____